NORTON & ASSOCIATES, LLC
Michael E. Norton (MN 1796)
551 Fifth Avenue, 27th Floor
New York, NY 10176-2701
Telephone: (212)-297-0100

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------x

GERARD PLANT,

          Plaintiff,

     -against-

DEUTSCHE BANK SECURITIES, INC.,

          Defendant.

-----------------------------------------------------x

CASE NO. 07 CV 3498

**COMPLAINT**

**JURY TRIAL DEMANDED**

     Plaintiff GERARD PLANT by and through his undersigned attorneys, for his Complaint against Defendant DEUTSCHE BANK SECURITIES, INC., alleges and avers as follows:

PARTIES

     1.     Plaintiff Gerard Plant ("Plant" or "Plaintiff") is an individual who has resided at all relevant times in the State of New York.

     2.     Defendant Deutsche Bank Securities, Inc. ("DBSI" or "Defendant") is, upon information and belief, a foreign business corporation organized and existing under the laws of the State of Delaware having its principal place of business and corporate headquarters located at 60 Wall Street, New York, New York 10005. DBSI is one of a group of inter-related financial, banking and securities firms, companies and entities

1

comprising one of the world's largest financial institutions, owned and controlled ultimately by Deutsche Bank AG, a German corporation, one of the world's largest banks.

3. Defendant was employed by DBSI and its predecessors-in-interest during the period commencing on December 3, 1996 through and including January 31, 2005 when Defendant was unilaterally discharged and terminated without cause by DBSI.

4. Plaintiff was notified by Defendant of his discharge and termination on January 19, 2005.

5. As of the date of his discharge and termination of employment by DBSI, Plaintiff was fifty-seven (57) years of age.

6. At all times relevant to this Complaint, Defendant was an employer in an industry affecting commerce within the definition of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621, et seq. (the "ADEA") and within the definition of the New York State Human Rights Law, N.Y. Executive Law §§ 290, et seq. ("NYHRL") and pursuant to said statutes was prohibited from discriminating on the basis of age in the employment, terms of employment, and termination of employment or discharge of employees. At all said times Plaintiff was an employee within the meaning and entitled to the protections of the aforesaid statutes and laws.

7. At all relevant times DBSI was a securities, investment banking and brokerage firm engaged in the securities industry. Defendant was a registered broker-dealer and a member of the New York Stock Exchange and other stock exchanges.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1331 in that the action arises under laws of the United States, to wit, under the ADEA, and the Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the pendant New York State claims arising under the NYHRL in that such claims are so related to claims in the action within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the Constitution.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) in that Defendant resides in this District and a substantial part of the events or omissions giving rise to the claim occurred in this District.

## FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

10. Commencing in December 1996 when he was first employed by DBSI, and at all times thereafter through and including the date of his discharge and termination from employment by Defendant on January 31, 2005, Plaintiff was employed as and held the title of Vice President for DBSI.

11. During the years of his employment by DBSI Plaintiff was assigned to and engaged in a supervisory and managerial position and role in the securities brokerage operational areas of the firm.

12. Plaintiff was as of the date of his employment by DBSI in December 1996 and at all times thereafter highly qualified and experienced in the business, functions and practices of securities brokerage operations and in all aspects of his job assignments as an employee of Defendant. At all relevant times Plaintiff fully met all of DBSI's legitimate performance expectations.

13. As of the date of his discharge and termination from employment by DBSI, Plaintiff had been exclusively engaged in the securities brokerage operations areas of firms in the securities industry for his entire professional career spanning over 36 years. At all relevant times Plaintiff was fully qualified to perform all of his assignments at DBSI.

14. During 1998 through 2000, using his experience, knowledge and expertise gained from many years of work in the securities industry in New York City, Plaintiff provided insight and direction toward the creation of a prime brokerage services group at DBSI which could be competitive with the top echelon of other Wall Street investment banking firms.

15. During 1998 through 2000 Plaintiff organized and led the efforts to put in place the functionality and ability, in DBSI's brokerage operations area, to service DBSI's customers in daily trade processing, trade clearances, customer documentation, prime brokerage agreement documentation and commission invoice verification and processing.

16. As of the early part of 2001 Plaintiff's role and responsibilities encompassed supervisory day-to-day control and management of Defendant's prime brokerage operations and customer services.

17. In or about March 2001 Plaintiff was requested to and did attend a meeting with his two direct supervisors. Plaintiff was led to believe that the purpose of the meeting was to discuss planning for improvements to the operational areas in which Plaintiff was involved and for which he had managerial responsibilities.

18. At the meeting attended by Plaintiff and his two supervisors held in or about March 2001 certain improvement plans for Plaintiff's areas of responsibility were initially discussed. Plaintiff was requested by his supervisors to follow-up by providing further suggestions for consideration by Defendant. However, at some later point in the aforesaid meeting, Plaintiff's number of years in the industry was mentioned. Plaintiff's age was also discussed at this meeting.

19. At the aforesaid meeting in or about March 2001 attended by Plaintiff and his two direct supervisors, following the disclosure and discussion of Plaintiff's age, Plaintiff's supervisors expressed concern and reacted and commented adversely toward Plaintiff in connection with the subject of his age.

20. Following the aforesaid meeting in or about March 2001 between Plaintiff and his two direct supervisors, Plaintiff was deliberately and systematically excluded by Defendant from further involvement in any and all activities relating to future development and planning for Defendant's prime brokerage operations and customer services.

21. Following the aforesaid meeting in or about March 2001 between Plaintiff and his two direct supervisors, any and all suggestions and recommendations made by Plaintiff to Defendant concerning improvements to and development of the prime brokerage operations and customer services were ignored by Defendant and were not implemented or acted upon by Defendant

22. In January 2002, Plaintiff was notified, by one of his direct supervisors who had attended the meeting with Plaintiff in or about March 2001 referenced above in this Complaint, that Plaintiff's bonus was being reduced by over 50%. In fact, Plaintiff's

salary bonus for 2001, which was payable in early 2002 and which comprised a significant portion of his total compensation, was reduced by over 50% from the bonus paid with respect to the year 2000.

23. Upon information and belief, Defendant's decision to remove Plaintiff from any future planning role in connection with the development of prime brokerage operations and customer services at DBSI was motivated by and was the result of, Defendant's unlawful discriminatory bias and prejudice against Plaintiff based upon and due to his age.

24. Upon information and belief, Defendant's decision to ignore and not implement any of Plaintiff's suggestions and recommendations concerning future improvements to and development of the prime brokerage operations and customer services of DBSI was motivated by, and was the result of, Defendant's unlawful discriminatory bias and prejudice against Plaintiff based upon and due to his age.

25. Upon information and belief, Defendant's decision to reduce by over 50% Plaintiff's 2001 salary bonus was motivated by and was the result of Defendant's unlawful discriminatory bias and prejudice against Plaintiff based upon and due to his age.

26. In or about May 2003, Defendant transferred Plaintiff's responsibilities for managing customer documentation functions away from Plaintiff and to another group in DBSI. Defendant at the same time also transferred one full time employee who had been reporting to Plaintiff in connection with customer documentation to the aforesaid group. The group to which the customer documentation functions were

transferred by Defendant was headed by a DBSI employee who was much younger in age than Plaintiff.

27. Defendant's transfer of the customer documentation functions away from Plaintiff's area of responsibility was intended by Defendant to reduce and diminish Plaintiff's position and role at DBSI and was, upon information and belief, motivated and caused by Defendant's unlawful age-based discrimination against Plaintiff and in favor of a much younger DBSI employee.

28. In or about September 2003, Defendant transferred Plaintiff's responsibilities for managing prime broker documentation functions away from Plaintiff and to another group in DBSI. At the same time Defendant also transferred one full time and one part time DBSI employees who had been reporting to Plaintiff in connection with prime broker documentation to the aforesaid other group. The group to which the prime broker documentation functions and employees was transferred by Defendant was headed by a DBSI employee who was much younger in age than Plaintiff.

29. In or about March 2004, Defendant transferred most of Plaintiff's remaining responsibilities for prime brokerage operations and customer service away from Plaintiff and to other areas in DBSI. The group to which certain of Plaintiff's functions were transferred was headed by a DBSI employee who was much younger in age than Plaintiff.

30. Defendant's transfer in March 2004 of most of Plaintiff's remaining responsibilities was intended to reduce and diminish Plaintiff's position and role at DBSI, to make his continued employment at DBSI untenable and unworkable, and was, upon

information and belief, motivated by Defendant's unlawful age-based bias and discrimination against Plaintiff and in favor of younger employees.

31.  Following Defendant's transfer of Plaintiff's responsibilities in March, 2004, Plaintiff's remaining responsibilities and job functions had been whittled down to include only work and documentation relating to option commissions.

32.  On January 19, 2005, upon his arrival at work, Plaintiff was notified by Defendant that he was being discharged and terminated from his employment. Defendant admitted to Plaintiff that his termination was not the result of unsatisfactory job performance.

33.  On January 19, 2005, after notifying him for the first time on that day that he was being discharged and terminated without cause, Defendant told Plaintiff that he must immediately and without further ado remove himself from Defendant's premises.

34.  Following its discharge and termination of Plaintiff, Defendant transferred his remaining responsibilities for option commissions to a much younger employee, a recent college graduate who had minimal experience.

35.  On January 31, 2005, Plaintiff's termination of employment became effective and permanent.

36.  Defendant's discharge and unilateral termination of Plaintiff was, upon information and belief, motivated by and was the result of unlawful discrimination against Plaintiff based on Plaintiff age.

37.  Defendant's termination of Plaintiff occurred as part of a larger number of employee terminations conducted by Defendant at and around the same time. Upon

information and belief, the terminations were directed disproportionately against statutorily protected employees of age 40 years old and older.

38. Upon information and belief, Defendant conducts periodic terminations and "reductions in force" which are deliberately aimed disproportionately at employees of the age of 40 years old and older for the purpose, among others, of maintaining a "youthful" work force.

39. Upon information and belief, Defendant's business practices are ageist and are based upon the deliberate and rapid replacement of older more experienced employees with younger employees as soon as such younger employees have developed the minimal experience necessary to fill the roles and functions performed by the older employees.

40. In or about August 2001 Mr. Anshu Jain ("Jain") a member of the senior management of DBSI publicly endorsed for DBSI the age-discriminatory business practices of DBSI. Jain held the position of Managing Director and Head of Global Markets, Deutsche Bank. Jain was also a member of the Executive Committee which runs and has authority over the Corporate and Investment Banking Divisions of Defendant. Disparaging any benefit to DBSI of retaining experienced older employees, he stated "The whole "gray hair premium" in this business is zero. I was making presentations to CFOs when I was 23 and I see no reason why you can't do that." Jain also stated that "One of the reasons that we've been such a fertile ground for graduates is that young people benefit tremendously from our rapid growth culture. Our culture has been pretty much "recruit, recruit, recruit" from our competitors and business schools and we give them rapid opportunities whenever we can. . . . My personal

philosophy is that no matter how good an organization is, it has 5-10% of people that need to think about moving on. Replacing those people with bright talent coming out of business schools is just very value creating."

41. Jain made the foregoing statements concerning the "ethos" and business practices of DBSI publicly in an interview with the Wharton Journal News. Jain was clearly identified in the Wharton Journal News as a high level representative of DBSI who was speaking authoritatively on behalf of Defendant. The Wharton Journal is an important business publication that is widely read and is available on the internet. Upon information and belief, Jain's comments were widely publicized inside DBSI and are viewed as authoritative statements of Defendant's attitudes and practices.

42. At the time of Plaintiff's firing, Jain continued to hold his high executive positions in DBSI.

## PROCEDURAL REQUIREMENTS

43. Plaintiff filed a timely charge with the Equal Employment Opportunity Commission and received a notice of his right to sue in the United States District Court pursuant to 42 U.S.C. § 2000e permitting Plaintiff to bring this action. The Right to Sue Letter is attached hereto as Exhibit "A" and is incorporated herein by reference. Plaintiff has therefore exhausted all available and required administrative remedies and has timely filed this action seeking relief in this Court.

## AS AND FOR A FIRST CAUSE OF ACTION

(Violation of the Age Discrimination in Employment Act)

44. Plaintiff hereby repeats and realleges the allegations contained in paragraphs 1 through 43 of this Complaint in this paragraph 44.

45. Plaintiff has been unlawfully discriminated against by Defendant in his employment in violation of the Age Discrimination in Employment Act by Defendant's course of conduct described in this Complaint, including Defendant's unilateral termination of Plaintiff's employment in January 2005. Employees not in a protected class were treated more favorably than Plaintiff. The Defendant's unlawful actions were willful and reckless and constituted a willful violation of the ADEA.

46. As of the date of this Complaint Plaintiff remains unemployed, having been unable, despite reasonable efforts, to find comparable employment.

47. As a proximate result of Defendant's unlawful actions, Plaintiff has been denied employment, has lost salary, wages, benefits, promotional opportunities and bonuses, and has incurred substantial damages.

## AS AND FOR A SECOND CAUSE OF ACTION

(Violation of the New York Human Rights Law)

48. Plaintiff hereby repeats and realleges the allegations contained in paragraphs 1 through 47 of this Complaint in this paragraph 48.

49. Plaintiff has been unlawfully discriminated against by Defendant in his employment in violation of the New York Human Rights Law by Defendant's course of conduct described in this Complaint, including Defendant's unilateral termination of Plaintiff's employment in January 2005.

50. As of the date of this Complaint Plaintiff remains unemployed, having been unable, despite reasonable efforts, to find comparable employment.

51.     As a proximate result of Defendant's unlawful actions, Plaintiff has been denied employment, has lost salary, wages, benefits, promotional opportunities and bonuses, and has incurred substantial damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court grant judgment to him containing the following relief:

A.     An award to Plaintiff of compensatory damages in an amount to be determined at trial for lost wages, salary and bonuses, and for the value of lost benefits, back pay through the date of judgment, compensatory damages for the loss of promotional opportunities, and an award of front pay compensating Plaintiff for the loss of future salary, bonuses and benefits;

B.     An award to Plaintiff of double his actual damages in an amount to be determined at trial as liquidated damages under 29 U.S.C. § 626(b);

C.     An award of prejudgment and post judgment interest;

D.     An award to Plaintiff of the costs of this action, together with reasonable attorneys' fees; and

E.     Such other and further relief as the Court finds just and proper.

## JURY TRIAL DEMAND

52.  Plaintiff demands a jury trial of this action.

Dated:  New York, New York
        May 1, 2007

                                         NORTON & ASSOCIATES, LLC
                                         551 Fifth Avenue, 27th Floor
                                         New York, New York 10176-2701
                                         Tel.: (212) - 297-0100

                                     By: _____
                                            Michael E. Norton (MN 1796)

                                       Attorneys for Plaintiff

# EXHIBIT A

EEOC Form 161-B (10/96)        U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

To: Gerard Plant  
944 Old Albany Post Road  
Garrison, NY 10524

From: Equal Employment Opportunity Commission  
New York District Office  
33 Whitehall Street, 5th Floor  
New York, New York 10004-2112

[ ]  *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR § 1601.7(a))*

| Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 161-2005-00621 | E. Yourke | 212 336 3751 |

*(See also the additional information attached to this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964 and/or the Americans with Disabilities Act (ADA):** This is your Notice of Right to Sue, issued under Title VII and/or the ADA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII or the ADA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

[ x ]  More than 180 days have passed since the filing of this charge.

[ ]  Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of the charge.

[ ]  The EEOC is terminating its processing of this charge.

[ ]  The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[ x ]  The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ]  The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of your charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

If you file suit based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*(signature)*    1-29-07

Enclosure(s)    Spencer H. Lewis, Jr., District Director    *(Date Mailed)*

cc: Respondent(s): Clliff Fonstein Esq.  
Sidley Austin  
787 Seventh Ave.  
New York, NY 10019

Michael Norton Esq.  
Norton & Associates LLC  
551 Fifth Ave.  
New York, NY 10176