# EXHIBIT B

# EXHIBIT B

# EXHIBIT B

UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

-and-

NEW YORK STATE DIVISION ON HUMAN RIGHTS
-------------------------------------------x

GERARD PLANT,

          Complainant,

CHARGE NO._____

-against-

DEUTSCHE BANK SECURITIES, INC.,

          Respondent.

CHARGE OF DISCRIMINATION
(AGE)

-------------------------------------------x

Before the New York State Division on Human Rights and the EEOC:

COMPLAINANT:

Name: Gerard Plant

Address: 944 Old Albany Post Road
        Garrison, New York 10524

[Stamp: JUN 20 2005 EEOC ENFORCEMENT]

Telephone: 212-297-0100

RESPONDENT (EMPLOYER WHO DISCRIMINATED):

Name: Deutsche Bank Securities, Inc.

Address: 60 Wall Street
        New York, NY 10005

DISCRIMINATION BASED ON AGE

DATE DISCRIMINATION TOOK PLACE

Latest Date: January 31, 2005

1

## STATEMENT OF PARTICULARS

1. Complainant Gerard Plant ("Plant" or "Complainant") is an individual who has resided at all relevant times in the State of New York.

2. Respondent Deutsche Bank Securities, Inc. ("DBSI" or "Respondent") is, upon information and belief, a foreign business corporation organized and existing under the laws of the State of Delaware having its principal place of business and corporate headquarters located at 60 Wall Street, New York, New York 10005. DBSI is one of a group of inter-related financial, banking and securities firms, companies and entities comprising one of the world's largest financial institutions, owned and controlled ultimately by Deutsche Bank AG, a German corporation, one of the world's largest banks.

3. Complainant was employed by DBSI and its predecessors-in-interest during the period commencing on December 3, 1996 through and including January 31, 2005 when Complainant was unilaterally discharged and terminated without cause by DBSI.

4. Respondent notified Complainant of his discharge and termination on January 19, 2005.

5. As of the date of his discharge and termination of employment by Respondent, Complainant was fifty-seven (57) years of age.

6. At all times mentioned in this Charge, Respondent was an employer within the meaning of the ADEA and the New York State Human Rights Law and pursuant to said statutes was prohibited from discriminating on the basis of age in the employment, terms of employment, and termination of employment or discharge of employees. At all

2.

said times Complainant was an employee within the meaning and entitled to the protections of the aforesaid statutes and laws.

7. At all relevant times DBSI was a securities, investment banking and brokerage firm engaged in the securities industry. Respondent was a registered broker-dealer and a member of the New York Stock Exchange and other stock exchanges. Respondent was subject to regulation by the Securities and Exchange Commission, the New York Stock Exchange, the NASD and various other stock exchanges where it conducted trades for its customers.

8. Commencing in December 1996 when he was first employed by Respondent, and at all times thereafter through and including the date of his discharge and termination from employment by Respondent on January 31, 2005, Complainant was employed as and held the title of Vice President for DBSI.

9. During the years of his employment by DBSI Complainant was assigned to and engaged in a supervisory and managerial position and role in the securities brokerage operational areas of the firm.

10. Complainant was as of the date of his employment by DBSI in December 1996 and at all times thereafter highly qualified and experienced in the business, functions and practices of securities brokerage operations.

11. As of the date of his discharge and termination from employment by DBSI, Complainant had been exclusively engaged in the securities brokerage operations areas of firms in the securities industry for his entire professional career spanning over 36 years.

12. During 1998 through 2000, using his experience, knowledge and expertise gained from many years of work in the securities industry in New York City, Complainant provided insight and direction toward the creation of a prime brokerage services group at DBSI which could be competitive with the top echelon of other Wall Street investment banking firms.

13. During 1998 through 2000 Complainant organized and led the efforts to put in place the functionality and ability, in DBSI's brokerage operations area, to service DBSI's customers in daily trade processing, trade clearances, customer documentation, prime brokerage agreement documentation and commission invoice verification and processing.

14. As of the early part of 2001 Complainant's role and responsibilities encompassed supervisory day-to-day control and management of Respondent's prime brokerage operations and customer services.

15. In or about March 2001 Complainant was requested to and did attend a meeting with his two direct supervisors. Complainant was led to believe that the purpose of the meeting was to discuss planning for improvements to the operational areas in which Complainant was involved and for which he had managerial responsibilities.

16. At the meeting attended by Complainant and his two supervisors held in or about March 2001 certain improvement plans for Complainant's areas of responsibility were initially discussed. Complainant was requested by his supervisors to follow-up by providing further suggestions for consideration by Respondent. However, at some later point in the aforesaid meeting, Complainant's number of years in the industry was mentioned. Complainant's age was also discussed at this meeting.

17. At the aforesaid meeting in or about March 2001 attended by Complainant and his two direct supervisors, following the disclosure and discussion of Complainant's age, Complainant's supervisors expressed concern and reacted and commented adversely toward Complainant in connection with the subject of his age.

18. Following the aforesaid meeting in or about March 2001 between Complainant and his two direct supervisors, Complainant was deliberately and systematically excluded by Respondent from further involvement in any and all activities relating to future development and planning for Respondent's prime brokerage operations and customer services.

19. Following the aforesaid meeting in or about March 2001 between Complainant and his two direct supervisors, any and all suggestions and recommendations made by Complainant to Respondent concerning improvements to and development of the prime brokerage operations and customer services were ignored by Respondent and were not implemented or acted upon by Respondent.

20. In January 2002, Complainant was notified, by one of his direct supervisors who had attended the meeting with Complainant in or about March 2001 referenced above in this Charge, that Complainant's bonus was being reduced by Respondent by over 50%. In fact, Complainant's salary bonus for 2001, which was payable in early 2002 and which comprised a significant portion of his total compensation, was reduced by over 50% from the bonus paid by Respondent to Complainant with respect to the year 2000.

21. Upon information and belief, Respondent's decision to remove Complainant from any future planning role in connection with the development of prime

5

brokerage operations and customer services at DBSI was motivated by and was the result of, Respondent's unlawful discriminatory bias and prejudice against Complainant based upon and due to Complainant's age.

22. Upon information and belief, Respondent's decision to ignore and not implement any of Complainant's suggestions and recommendations concerning future improvements to and development of the prime brokerage operations and customer services of DBSI was motivated by, and was the result of, Respondent's unlawful discriminatory bias and prejudice against Complainant based upon and due to Complainant's age.

23. Upon information and belief, Respondent's decision to reduce by over 50% Complainant's 2001 salary bonus was motivated by and was the result of Respondent's unlawful discriminatory bias and prejudice against Complainant based upon and due to his age.

24. In or about May 2003, Respondent transferred Complainant's responsibilities for managing customer documentation functions away from Complainant and to another group in DBSI. Respondent at the same time also transferred one full time employee who had been reporting to Complainant in connection with customer documentation to the aforesaid group. The group to which the customer documentation functions were transferred by Respondent was headed by a DBSI employee who was much younger in age than Complainant.

25. Respondent's transfer of the customer documentation functions away from Complainant's area of responsibility was intended by Respondent to reduce and diminish Complainant's position and role at DBSI and was, upon information and belief,

6

motivated and caused by Respondent's unlawful age-based discrimination against Complainant and in favor of a much younger DBSI employee.

26. In or about September 2003, Respondent transferred Complainant's responsibilities for managing prime broker documentation functions away from Complainant and to another group in DBSI. At the same time Respondent also transferred one full time and one part time DBSI employees who had been reporting to Complainant in connection with prime broker documentation to the aforesaid other group. The group to which the prime broker documentation functions and employees was transferred by Respondent was headed by a DBSI employee who was much younger in age than Complainant.

27. Respondent's transfer of the prime broker documentation functions away from Complainant's area of responsibility was intended by Respondent to reduce and diminish Complainant's position and role at DBSI and was, upon information and belief, motivated by Respondent's unlawful age-based discrimination against Complainant and in favor of a much younger DBSI employee.

28. In or about the early part of 2004, Respondent transferred most of Complainant's remaining responsibilities for prime brokerage operations and customer service away from Complainant and to other areas in DBSI. The group to which certain of Complainant's functions were transferred by Responded was headed by a DBSI employee who was much younger in age than Complainant.

29. Respondent's transfer in or about the early part of 2004 of most of Complainant's remaining responsibilities away from Complainant was intended by Respondent to reduce and diminish Complainant's position and role at DBSI, to make his

continued employment at DBSI untenable and unworkable, and was, upon information and belief, motivated by Respondent's unlawful age-based bias and discrimination against Respondent and in favor of younger employees.

30. Following Respondent's transfer of Complainant's responsibilities in or about the early part of 2004, Complainant's remaining responsibilities and job functions had been whittled down to include only work and documentation relating to option commissions.

31. On January 19, 2005, upon his arrival at work, Complainant was notified by Respondent that he was being discharged and terminated from his employment. Respondent admitted to Complainant that his termination was not the result of unsatisfactory job performance by Complainant or due to any legitimate "cause" which Respondent would be able to articulate.

32. On January 19, 2005, after notifying him for the first time on that day that he was being discharged and terminated without cause, Respondent told Complainant that he must immediately and without further ado remove himself from Respondent's premises.

33. Following its discharge and termination of Complainant, Respondent transferred Complainant's responsibilities for option commissions away from Complainant and put them in the hands of a much younger employee, a recent college graduate who had minimal experience.

34. Respondent's transfer of the remaining option commissions business away from Complainant to the recent college graduate was, on information and belief,

motivated by Respondent's unlawful age-based bias, prejudice and discrimination against Complainant based upon Complainant's age.

35. On January 31, 2005, Complainant's termination of employment by Respondent became effective and permanent.

36. Respondent's discharge and unilateral termination of Complainant was, upon information and belief, motivated by and was the result of unlawful discrimination against Complainant based on age.

37. Upon notification to Complainant of Respondent's termination of his employment, Respondent proffered $52,596.15 of so-called "severance" payment to Complainant but conditioned its offer of payment of said amount upon Complainant's signature on and pursuant to an extensive and detailed legal document prepared by Respondent's lawyers under which Complainant was required to waive and release all of his rights under any and all applicable Federal, State and local age discrimination laws and statutes.

38. In order to receive from Respondent the "severance" payment offered in connection with Respondent's firing Complainant without cause after over eight years of employment, Complainant would be required to waive and give up his right to seek redress for Respondent's unlawful age discrimination.

39. Upon information and belief, Respondent has engaged in a pattern and practice of, and, during the periods referred to in this Charge, has engaged in unlawful

9

discrimination against older employees based upon age.

Dated: New York, New York
June 14, 2005

NORTON & ASSOCIATES, LLC
551 Fifth Avenue, 27th Floor
New York, New York 10176-2701
Tel.: (212) - 297-0100

By: *[signature]*
Michael E. Norton (MN 1796)

Attorneys for Complainant Gerard Plant

## COMPLAINANT'S VERIFICATION

Gerard Plant, being duly sworn, deposes and says:

I am the Complainant. I swear and affirm that I have read the herein Charge of Discrimination and that it is true to the best of my knowledge, information and belief.

I respectfully request that the herein Charge be filed with both the EEOC and the New York State Division on Human Rights simultaneously. I agree to notify through my counsel of any change of address and will cooperate fully.

*[signature]*
GERARD PLANT  368 88 3070

Sworn to before me this 14th day of June, 2005

*[signature]*
Notary Public

JAMES R. CIALLELA, JR.
Notary Public - State of New York
No. 01CI6088026
Qualified in Dutchess County
Commission Expires 03/03/2007

10