UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

GERARD PLANT,

                                    Case No. 07 CV 3498 (AKH)

                Plaintiff,

    -against-

DEUTSCHE BANK SECURITIES, INC.,

                Defendant.

-----------------------------------------------------------x

## **PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL DISMISSAL OF THE COMPLAINT**

NORTON & ASSOCIATES, LLC
Michael E. Norton (MN 1796)
551 Fifth Avenue, 27th Floor
New York, NY 10176
Telephone: (212)-297-0100

*Attorneys for Plaintiff Gerard Plant*

**TABLE OF CONTENTS**

                                                                    Page


TABLE OF AUTHORITIES                                                  i

PRELIMINARY STATEMENT                                                1

THE COMPLAINT                                                        2

ARGUMENT                                                            7

A.    THE COMPLAINT ALLEGES A CONTINUING
      VIOLATION                                                     7

B.    DEFENDANT'S MOTION FAILS TO MEET
      RULE 12(b) (6) STANDARDS                                      11

C.    PLAINTIFF ENTITLED TO PROVE ALLEGATIONS
      IN COMPLAINT                                                  12

D.    RESERVATION OF RIGHTS TO FILE AMENDED
      COMPLAINT                                                     13

CONCLUSION                                                          13

**TABLE OF CASES**

PAGE

Association Against Discrimination in Employment, Inc. v. City of Bridgeport,
647 F. 2d 256, 274-75 (2d Cir 1981)....................................................10

Bell Atlantic Corporation v. Twombly, 127 S.Ct. 1955 (May 21, 2007)..............11

Blake v. Bronx Lebanon Hospitals, 2003 WL 21910867 at 5 (S.D.N.Y. 2003)......10

Bernheim v. Litt, 79 F. 3d 318, 321 (2d Cir. 1996).....................................11

Conley v. Gibson, 355 U.S. 41, 47 (1957)................................................11

Cornwell v. Robinson, 23 F. 3d 694, 704 (2d Cir. 1994)..............................8, 9

Crossland v. City of New York, 140 F. Supp. 300, 307 (S.D.N.Y. 2001)............8

Egelston v. State University College at Genesco, (2d Cir. 1976)......................12

Farage v. Johnson-McClean Technologies, Inc., 2002 WL 1067824
at 5 (S.D.N.Y. 2002).......................................................................12

Gross v. National Broadcasting, Inc., 232 F. Supp. 2d 58, 68 (S.D.N.Y. 2002).......11

Harris v City of New York, 186 F. 3d 243 (2d Cir. 1999)..............................12

Lambert v. Genesee Hospital, 10 F. 3d 46, 53 (2d Cir.1993) ..........................10

Lightfoot v. Union Carbide Corp., 110 F. 3d 898, 907 (2d Cir. 1997)..................9

National R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002).......................10

Quinn v. Green Tree Credit Corp., 159 F 3d 759, 765 (2d Cir. 1998)..................10

Swierkiewicz v. Sorema, 534 U.S. 506 (2002)...........................................11

Van Zant v. KLM Dutch Airlines, 80 F. 3d 708, 713 (2d Cir. 1996)...................8

Wilson v. New York City Housing Authority, 2007 WL 1032262
(S.D.N.Y. April 7, 2007)....................................................................8

Wood v. Sophie Davis School, 2003 WL 21507579 (S.D.N.Y. 2003).................12

i

Michael E. Norton (MN 1796)
Norton & Associates, LLC
551 Fifth Avenue, 27th Floor
New York, NY 10176
212-297-0100

Attorneys for Plaintiff Gerard Plant

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

GERARD PLANT,

                        Plaintiff,

      -against-

DEUTSCHE BANK SECURITIES, INC.,

                        Defendant.

--------------------------------------------------------x

Case No. 07 CV 3498 (AKH)

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL DISMISSAL OF THE COMPLAINT

Plaintiff Gerard Plant ("Plant" or "Plaintiff") by and through his undersigned attorneys respectfully submits this Memorandum of Law in opposition to the motion of Defendant Deutsche Bank Securities, Inc. ("DBSI" or "Defendant") to dismiss certain allegations contained in Plaintiff's complaint pursuant to Rule 12(b)(6), Fed. R. Civ. P. Defendant's motion should be denied in its entirety.

## PRELIMINARY STATEMENT

Plaintiff, who was 57 years old at the time he was fired from his job at DBSI, brought this action under the Age Discrimination in Employment Act ("ADEA") and the New York State Human Rights Law ("NYSHRL"). In his complaint ("Complaint") Plant

alleges that DBSI's termination of his employment in January 2005 was unlawfully discriminatory in violation of the ADEA and NYSHRL. The Complaint outlines the history of DBSI's unlawfully discriminatory treatment of Plant leading up to and including its termination of his employment in January 2005. The Complaint also alleges that DBSI maintained in effect age conscious policies and practices of unlawful discrimination against older statutorily-protected employees during the time frame covered by the Complaint. It alleges that the unlawful discriminatory actions taken against Plaintiff were the product of DBSI's ongoing ageist policy.

While Defendant admits that Plaintiff's claims based upon DBSI's termination of his employment are timely, it nevertheless seeks to dismissal of claims based on the earlier course of discriminatory conduct which preceded Plant's termination. Defendant's motion should be denied because all incidents alleged in the Complaint were part of a continuing violation resulting from DBSI's ongoing age-conscious discriminatory policy and practices. Moreover, the allegations may not be stricken since, in any event, Plaintiff is entitled to prove each of the earlier incidents as part of the evidence supporting the discriminatory discharge claim even if such incidents would not support independent claims for compensation in their own right.

## THE COMPLAINT

The Complaint alleges that Plaintiff was fired from his employment as a Vice President of DBSI on January 31, 2005 at the age of 57 based on Defendant's policies of age-related discrimination against older employees in violation of the ADEA and the NYSHRL. The Complaint outlines the events leading up to the unlawful discharge and alleges other facts and events establishing Defendant's ongoing discriminatory age-

related policies and practices. A copy of the Complaint is attached to the Fonstein

Affirmation submitted with Defendant's motion papers. Summarizing the Complaint, the

allegations relevant to this motion are as follows:

Plaintiff was employed by DBSI with the title of Vice President commencing in

December, 1996 through and including January 31, 2005 when he was unilaterally

discharged and terminated by DBSI. Complaint, ¶10. As of the date of his termination

Plaintiff had been exclusively engaged in the securities brokerage operations areas of

firms in the securities industry for his entire professional career spanning over 36 years.

At all relevant times Plaintiff was fully qualified to perform all of his assignments at

DBSI. Complaint, ¶13.

As of 2001 Plaintiff's role and responsibilities encompassed supervisory day-to-

day control and management of Defendant's prime brokerage operations and customer

services. Complaint, ¶16. In March 2001 Plaintiff attended a meeting with his two direct

supervisors to discuss planning for improvements to the operational areas in which

Plaintiff was involved and for which he had managerial responsibilities. Complaint, ¶17.

Plaintiff was requested by his supervisors to follow-up by providing further suggestions

for improvements for consideration by Defendant. However, at some later point in the

meeting, Plaintiff's age was discussed. Following disclosure and discussion of Plaintiff's

age, Plaintiff's supervisors expressed concern and reacted and commented adversely

toward Plaintiff in connection with the subject of his age. Complaint, ¶¶18-19.

Following the meeting Plaintiff was deliberately and systematically excluded by

Defendant from further involvement in any and all activities relating to future

development and planning for Defendant's prime brokerage operations and customer

3

services. Complaint, ¶20. Following the meeting, any and all suggestions and recommendations made by Plaintiff concerning improvements to and development of the prime brokerage operations and customer services business were ignored. Complaint, ¶21.

In January 2002, Plaintiff was notified by one of his direct supervisors who had attended the meeting in March 2001 that Plaintiff's bonus was being reduced by over 50%. Plaintiff's salary bonus for 2001, which was payable in early 2002 and which comprised a significant portion of his total compensation, was reduced by over 50% from the bonus paid with respect to the year 2000. Complaint, ¶22. Defendant's decision to remove Plaintiff from any future planning role in connection with the development of prime brokerage operations and customer services at DBSI, to ignore Plaintiff's suggestions and recommendations concerning improvements to the business and to reduce his bonus by over 50% was motivated by Defendant's unlawful discriminatory bias and prejudice against Plaintiff based upon and due to his age. Complaint, ¶¶23-25.

In May 2003, Defendant transferred Plaintiff's responsibilities for managing customer documentation functions away from Plaintiff to another group in DBSI. Defendant at the same time also transferred one full time employee who had been reporting to Plaintiff in connection with customer documentation to the aforesaid group. The group to which the customer documentation functions were transferred was headed by an employee who was much younger in age than Plaintiff. Complaint, ¶26. In September 2003, Defendant transferred Plaintiff's responsibilities for managing prime broker documentation functions away from Plaintiff and to another group in DBSI. At the same time Defendant also transferred one full time and one part time DBSI

employees who had been reporting to Plaintiff in connection with prime broker documentation to the aforesaid other group.  The group to which the prime broker documentation functions and employees was transferred by Defendant was headed by a DBSI employee who was much younger in age than Plaintiff.  Complaint, ¶28.  In March 2004, Defendant transferred most of Plaintiff's remaining responsibilities for prime brokerage operations and customer service away from Plaintiff to other areas in DBSI.  The group to which certain of Plaintiff's functions were transferred was headed by a DBSI employee who was much younger in age than Plaintiff.  Complaint, ¶29.  Defendant's transfers of Plaintiff's responsibilities was intended to reduce and diminish Plaintiff's position and role at DBSI, to make his continued employment at DBSI untenable and unworkable, and was motivated by Defendant's unlawful age-based bias and discrimination against Plaintiff and in favor of younger employees.  Complaint, ¶¶27, 30.

Following Defendant's transfer of Plaintiff's responsibilities to groups headed by younger employees,  Plaintiff's remaining responsibilities and job functions had been whittled down to include only work and documentation relating to option commissions.  Complaint, ¶31.  On January 19, 2005, Plaintiff was notified by Defendant that he was being discharged and terminated from his employment.  Defendant admitted to Plaintiff that his termination was not the result of unsatisfactory job performance.  Complaint, ¶32.  Following its discharge and termination of Plaintiff, Defendant transferred his remaining responsibilities for option commissions to a much younger employee, a recent college graduate who had minimal experience.  Complaint, ¶34.  On January 31, 2005, Plaintiff's termination of employment became effective and permanent.  Complaint, ¶35.

### *Allegations in Complaint of Defendant's Discriminatory Policies and Practices*

Not discussed anywhere in Defendant's motion are the allegations set forth in the Complaint concerning the unlawful age-conscious employment practices and policies of DBSI. The Complaint alleges that Defendant's termination of Plaintiff's employment occurred as part of a larger number of employee terminations conducted by Defendant at or around the same time of Plaintiff's termination and that these terminations were intentionally directed disproportionately against Defendant's older, statutorily protected employees. Complaint, ¶37. Further, the Complaint alleges that Defendant conducts periodic terminations and "reductions in force" which are deliberately aimed disproportionately at employees of the age of 40 years old and older and conducted for the purpose of maintaining a "youthful" work force. Complaint, ¶38. The Complaint also alleges that Defendant's business practices (which would include its periodic, so-called, "reductions in force") are based upon its policy of deliberate and rapid replacement of older more experienced employees with younger employees as soon as such younger employees have developed the minimal experience necessary to fill the roles and functions performed by the older employees. Complaint, ¶39.

Finally, as set forth in the Complaint but, again, entirely ignored in Defendant's motion papers, DBSI's top management has made no secret of the company's age conscious business policies and practices. As set forth at paragraph 40 of the Complaint, in August 2001 Mr. Anshu Jain ("Jain") a member of the senior management of DBSI publicly endorsed the age-discriminatory business practices of DBSI. Jain held the position of Managing Director and Head of Global Markets, Deutsche Bank. Jain was also a member of the Executive Committee which runs and has authority over the

6

Corporate and Investment Banking Divisions of Defendant. Disparaging any benefit to DBSI of retaining experienced older employees, Jain stated "The whole "gray hair premium" in this business is zero. I was making presentations to CFOs when I was 23 and I see no reason why you can't do that." Complaint, ¶40.

Jain also stated that "One of the reasons that we've been such a fertile ground for graduates is that young people benefit tremendously from our rapid growth culture. Our culture has been pretty much "recruit, recruit, recruit" from our competitors and business schools and we give them rapid opportunities whenever we can. . . . My personal philosophy is that no matter how good an organization is, it has 5-10% of people that need to think about moving on. Replacing those people with bright talent coming out of business schools is just very value creating." Id.

Jain made the foregoing statements concerning the "ethos" and business practices of DBSI publicly in an interview with the Wharton Journal News. Jain was clearly identified in the Wharton Journal News as a high level representative of DBSI who was speaking authoritatively on behalf of Defendant. The Wharton Journal is an important business publication that is widely read and is available on the internet. Jain's comments were widely publicized inside DBSI and are viewed as authoritative statements of Defendant's attitudes and practices. Complaint, ¶41. At the time of Plaintiff's firing, Jain continued to hold his high executive positions in DBSI. Complaint, ¶42.

## ARGUMENT

A.    THE COMPLAINT ALLEGES A CONTINUING VIOLATION

Defendant requests that "all of Plant's ADEA claims arising out of events occurring before August 24, 2004" be dismissed, arguing that since Plaintiff filed his

EEOC charge of discrimination on June 25, 2005, "discriminatory incidents" which occurred prior to 300 days before the filing *(i.e.,* before August 24, 2004) are "time-barred." Defendant's Memorandum of Law ("D's Br.") at 4-5. Similarly, citing the three-year statute of limitations for claims brought under the NYSHRL, Defendant requests that any claims of discriminatory treatment based on events pre-dating May 2, 2004 be dismissed as untimely. D's Br. at 6-7.

First, it is important to note that Defendant does not contend that Plaintiff's claims of unlawful discrimination based upon Defendant's termination of his employment in January 2005 are untimely under either the ADEA or the NYSHRL. Defendant's motion only seeks to bar claims based on certain other "incidents" which led up to Plaintiff's termination and which occurred on dates earlier than May 2, 2004 and August 24, 2004 under the NYSHRL and the ADEA, respectively. However, as alleged in the Complaint, the earlier discriminatory acts were in furtherance of an ongoing policy of unlawful, age-conscious employment discrimination followed by DBSI. Since the claims based upon the culmination of DBSI's discriminatory actions and policy as regards Plaintiff -- namely, Plaintiff's termination in January 2005-- are admittedly timely, all claims of discrimination under that ongoing policy will also be timely. See Van Zant v. KLM Dutch Airlines, 80 F. 3d 708, 713 (2d Cir. 1996); Cornwell v. Robinson, 23 F. 3d 694, 704 (2d Cir. 1994). This principle, well established in this Circuit, applies where, as in this case, there are shown to be specific discriminatory policies and practices engaged in by the employer. See, Crossland v. City of New York, 140 F. Supp. 300, 307 (S.D.N.Y. 2001); Wilson v. New York City Housing Authority, 2007 WL 1032262 (S.D.N.Y. April 7, 2007).

8

Here, Plaintiff has alleged that DBSI has at all relevant times had an unlawful policy and practices of age discrimination adhered to and engaged in by DBSI during the entire period of time covered by the Complaint. Included as part of the discriminatory policy alleged in the Complaint is Defendant's practice of periodic and regular, so-called "reductions in force" which are deliberately designed to weed out older, statutorily protected workers in order to replace them with "young people" fresh out of business school. Plaintiff's termination was effected under one of these recurring "reductions in force." As alleged in the Complaint, DBSI's policy of continuous replacement of existing employees with "value creating" "bright talent coming out of business schools" was in fact publicly and proudly proclaimed to the business world by DBSI's top management in August 2001.

Further, the Complaint alleges that all of the discriminatory incidents taken against Plaintiff up to and including the termination of his employment were the direct product and result of Defendant's unlawful policy.

Actions taken by DBSI in furtherance of its established policy of unlawful age discrimination constitute a continuing violation and are all actionable given the circumstances of this case. See Lightfoot v. Union Carbide Corp., 110 F. 3d 898, 907 (2d Cir. 1997); Cornwell v. Robinson, 23 F. 3d 694, 704 (2d Cir. 1994). Plaintiffs can invoke the continuing violation doctrine if they provide "proof of specific or ongoing policies or practices or . . . specific and related instances of discrimination [which] are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice." Cornwell v. Robinson, supra, 23 F. 3d at 704. If a continuing violation is established, "all claims of discrimination under the [discriminatory policy] will be timely

9

even if they be untimely standing alone." Lambert v. Genesee Hospital, 10 F. 3d 46, 53

(2d Cir.1993) ("The continuing violation exception applies where there is evidence of

specific discriminatory practices, such as the repeated use of discriminatory seniority lists

or employment tests."). See Quinn v. Green Tree Credit Corp., 159 F 3d 759, 765 (2d

Cir. 1998) (under continuing violation principle the limitations period is extended "for all

claims of discriminatory acts committed under an ongoing policy of discrimination even

if those acts, standing alone, would have been barred by the statute of limitations."). See

Association Against Discrimination in Employment, Inc. v. City of Bridgeport, 647 F. 2d

256, 274-75 (2d Cir 1981).

The Supreme Court in National R.R. Passenger Corp. v. Morgan, 536 U.S. 101

(2002) did limit the application of the continuing violation doctrine with respect to

discrete discriminatory acts. It held that the doctrine does not apply where only a series

of discrete discriminatory acts are shown to exist. "Discrete discriminatory acts are not

actionable if time-barred; even when they are related to acts alleged in timely filed

charges." Morgan, supra, 536 U.S. at 113.

While not completely defining "discrete discriminatory acts" the Court referred to

such incidents as termination, failure to promote, denial of transfer or refusal to hire,

calling such events "easy to identify." Id. However, the Court did not address the

Second Circuit's test for continuing violation; much less did it overturn the continuing

violation doctrine as has been developed over the years in the Second Circuit. Unlike the

allegations in the Complaint in the instant case, in Morgan the plaintiff had not shown

any ongoing policy or practice of discrimination; all that was demonstrated was only a

series of discrete discriminatory and retaliatory acts. See Blake v. Bronx Lebanon

10

Hospitals, 2003 WL 21910867 at 5 (S.D.N.Y. 2003) ("The [Morgan] Court did not address 'pattern or practice' claims which presumably can still form the basis of a continuing violation"). See Gross v. National Broadcasting, Inc., 232 F. Supp. 2d 58, 68 (S.D.N.Y. 2002).

B.    DEFENDANT'S MOTION FAILS TO MEET RULE 12(b) (6) STANDARDS

Defendant has brought the instant motion under Rule 12 (b) (6) and thus must meet a very high hurdle to be entitled to the relief it seeks. "Any Rule 12(b) (6) movant for dismissal faces a difficult (although not insurmountable) hurdle". Harris v. City of New York, 186 F. 3d 243 (2d Cir. 1999). In particular, "an employment discrimination complaint . . . must contain only a 'short and plain statement of the claim showing the pleader is entitled to relief.'" Swierkiewicz v. Sorema, 534 U.S. 506 (2002). In ruling on a motion to dismiss, the court "must accept the factual allegations of the complaint as true and must draw all reasonable inferences in favor of the plaintiff." Bernheim v. Litt, 79 F. 3d 318, 321 (2d Cir. 1996).

In the Supreme Court's recent decision, Bell Atlantic Corporation v. Twombly, 127 S.Ct. 1955 (May 21, 2007) the Court confirmed that under Rule 8(a) (2) a complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests", citing, Conley v. Gibson, 355 U.S. 41, 47 (1957). Quoting from the well-known treatise by Wright & Miller, 5 C. Wright & A. Miller Federal Practice & Procedure §1216 (3d ed. 2004) the Court stated that "[f]actual allegations must be enough to raise a right to relief above the speculative level." Contrary to the veiled suggestion of Defendant (D's Br. at 3-4), the Court did not claim in Bell Atlantic

11

to be creating any significant change to established pleading standards for purposes of

Rule 12(b) (6). The Court sought only to clarify linguistically the existing standard.

Thus it "retired" what it considered the "puzzling" "no set of facts" terminology from the

Conley case, calling it a "phrase . . . best forgotten as an incomplete, negative gloss on an

accepted pleading standard." Thus while certain terminology has been adjusted, the

Court's decision in Bell Atlantic does not purport to change the established standards

under Rule 12(b) (6). Here, it is respectfully submitted, Plaintiff has sufficiently stated a

claim for continuing violation under established pleading standards sufficient to

withstand Defendant's motion to dismiss under Rule 12 (b) (6). See, e.g., Harris v City

of New York, 186 F. 3d 243 (2d Cir. 1999); Egelston v. State University College at

Genesco, (2d Cir. 1976); Wood v. Sophie Davis School, 2003 WL 21507579 (S.D.N.Y.

2003).

C.    PLAINTIFF ENTITILED TO PROVE ALLEGATIONS IN COMPLAINT

Defendant's motion to dismiss certain allegations in the Complaint must be denied

for the separate reason that, even if the challenged earlier incidents would be untimely

and could not serve as a basis for a compensatory demand in their own right, Plaintiff is

entitled to use these prior acts as evidence to support his admittedly timely claims for

damages for discriminatory discharge. National R.R. Passenger Corp. v. Morgan, 536

U.S. 101, 113 (2002) ("Nor does the statute bar an employee from using the prior acts as

background evidence in support of timely claims."). Farage v. Johnson-McClean

Technologies, Inc., 2002 WL 1067824 at 5 (S.D.N.Y. 2002) ("That does not mean that

the acts may not be used as evidence to support her discrimination claims.").

12

Since Plaintiff is entitled to prove these earlier incidents as part of his evidentiary case on the discriminatory discharge, he is entitled to allege them in his Complaint.

D.    RESERVATION OF RIGHTS TO FILE AMENDED COMPLAINT

While Plaintiff believes that Defendant's motion should be denied, in the event the Court determines to dismiss any part of the Complaint, Plaintiff respectfully requests leave of the Court to file an amended complaint in accordance with the Court's ruling.

## CONCLUSION

Defendant's motion to partially dismiss the Complaint pursuant to Rule 12(b) (6) should be denied in all respects.

Dated:  New York, New York

June 22, 2007

NORTON & ASSOCIATES, LLC
551 Fifth Avenue, 27th Floor
New York, NY 10176
Telephone: (212)-297-0100

By:_____
Michael E. Norton (MN 1796)

Attorneys for Plaintiff Gerard Plant

13