Cliff Fonstein (CF-8603)
Joanne Seltzer (JS-2686)
Sidley Austin LLP
787 Seventh Avenue
New York, New York 10019
(212) 839-5300

Attorneys for Defendants
Deutsche Bank Securities Inc.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

|  |  |
|---|---|
| GERARD PLANT, | : |
|  | : 07 Civ. 3498 (AH) |
| Plaintiff, | : |
|  | : |
| - against - | : |
|  | : |
| DEUTSCHE BANK SECURITIES INC. | : |
|  | : |
| Defendant. | : |
|  | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**APPENDIX OF CASES CITED IN THE REPLY MEMORANDUM OF LAW IN FURTHER
SUPPORT OF DEFENDANT'S MOTION FOR PARTIAL DISMISSAL OF PLAINTIFF'S
COMPLAINT**

NY1 6262080v.1

SIDLEY AUSTIN LLP

ATTORNEYS FOR   Defendant
Deutsche Bank Securities Inc.

787 SEVENTH AVENUE
NEW YORK, NEW YORK 10019
(212) 839-5300

Westlaw.

Not Reported in F.Supp.2d                                                                    Page 1

Not Reported in F.Supp.2d, 2003 WL 21910867 (S.D.N.Y.)

**(Cite as: Not Reported in F.Supp.2d)**

**C**

Blake v. Bronx Lebanon Hospt. Center
S.D.N.Y.,2003.
Only the Westlaw citation is currently available.
United States District Court,S.D. New York.
Marvin BLAKE, Ph.D., Plaintiff,
v.
BRONX LEBANON HOSPITAL CENTER,
Defendant.
**No. 02 Civ. 3827(CBM).**

Aug. 11, 2003.

Former employee brought action against former
employer alleging disparate pay and retaliation based
on racial or ethnic identity in violation of § 1981 and
state law. Employer moved for partial dismissal. The
District Court, Motley, J., held that employee failed
to allege an ongoing discriminatory policy as
required to form the basis for a continuing violation.

Motion granted.
West Headnotes
**Limitation of Actions 241 ☞58(1)**

241 Limitation of Actions
    241II Computation of Period of Limitation
        241II(A) Accrual of Right of Action or
Defense
            241k58 Liabilities Created by Statute
                241k58(1) k. In General. Most Cited
Cases
Former employee failed to allege an ongoing
discriminatory policy as required to form the basis
for a continuing violation in lawsuit against employer
alleging disparate pay and retaliation based on race in
violation of § 1981 and state civil rights law;
although employee alleged acts by employer over
years established a pattern and practice of racial
discrimination, invoking words of pattern and
practice were not enough, and allegations of pay
discrimination and discriminatory acts by employer
over employee's nine years of employment were for
discrete acts. 42 U.S.C.A. § 1981; McKinney's
Executive Law § 290 et seq.

Lee Nuwesra, Jerald G. Abrams, Law Offices of Lee
Nuwesra, New York, NY, for Plaintiff.
Ricki E. Roer, Wilson, Elser, Moskowitz, Edelman &

Dicker LLP, New York, NY, for Defendant.

OPINION

MOTLEY, J.

*1 Marvin Blake, Ph.D. (" Blake" or " plaintiff" ),
brings this action against Bronx Lebanon Hospital
Center (the " Hospital," " Bronx Lebanon," or "
defendant" ), where he worked from July 1993 until
his employment was terminated on January 18, 2002.
Plaintiff claims, *inter alia,* that defendant maintains a
regime of disparate salary payment which is
predicated upon the racial or ethnic identities of its
employees. In the complaint, which was filed on May
17, 2002, plaintiff specifically alleges disparate pay
and retaliation in violation of 42 U.S.C. § 1981 ("
Section 1981" ), the New York Executive Law §§
290 et seq. (the " New York State Human Rights
Law" or " NYSHRL" ), and the Administrative Code
of the City of New York § 8-101 et seq. (the " New
York City Human Rights Law" or " NYCHRL" ).
On August 5, 2002, defendant moved pursuant to
Fed.R.Civ.P. 12(b)(6) to dismiss a number of
plaintiff's claims as time-barred. On April 16, 2003,
the case was reassigned from the chambers of the late
U.S. District Judge Allen G. Schwartz to Judge
Deborah A. Batts. On May 22, 2003, the case was
transferred to the undersigned. For the reasons stated
below, defendant's partial motion to dismiss is hereby
GRANTED.

I. BACKGROUND

The facts recited herein are drawn from plaintiff's
complaint and are undisputed for the purposes of this
motion to dismiss under Rule 12(b)(6).

In July 1993, Bronx Lebanon hired plaintiff, an
African American male, as an " Administrator" in its
Pathology Department. Plaintiff claims that during
his tenure at Bronx Lebanon, he observed that the
Hospital maintained a regime of disparate salary
payment based on the racial or ethnic identities of its
employees. In particular, plaintiff alleges that the
Hospital paid white managerial employees higher
salaries than black employees with similar
backgrounds, qualifications and work
responsibilities. Plaintiff alleges that defendant
assigned white employees job titles which reflect
higher status and greater prominence at the Hospital
than those assigned to black employees. Plaintiff

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2003 WL 21910867 (S.D.N.Y.)

**(Cite as: Not Reported in F.Supp.2d)**

makes the uncontroversial assertion that job titles at the Hospital reflect a hierarchy among the workforce. He claims that defendant's allegedly discriminatory job title assignment practices generate a regime in which black managerial employees achieve lower levels of prominence than their white colleagues at the firm. Whereas a given job title in the Hospital's workforce hierarchy correlates with a given level of pay, plaintiff claims that a principal concomitant of the allegedly discriminatory status assignment regime is that black managerial employees receive lower salaries than their white colleagues, notwithstanding the fact that they have similar qualifications, backgrounds and job responsibilities. While decrying the systemic nature of the alleged discriminatory conduct, plaintiff brings this case on behalf of himself alone-this is not a " pattern and practice" class action suit.

**\*2** Plaintiff alleges that when defendant first hired him, the responsibilities which inhered in his position were identical to those of his immediate predecessor, a white male. Whereas plaintiff was assigned the job title of " Laboratory Administrator," however, his predecessor held the position of " Director of Clinical Laboratories." In addition, plaintiff claims that his salary at the time of his hiring ($75,000.00) was approximately half of that of his white predecessor, " despite the fact that Plaintiff's position and responsibilities had been expanded and his qualifications were similar to those of his predecessor." Pl.'s Complt. at 16. Plaintiff claims that after he learned of this difference between his salary and that of his predecessor, he contacted senior management personnel at the Hospital-in particular, a person identified in the complaint as Dr. Choi, the Director of Pathology-and requested an " equitable salary adjustment." *Id.* at 17. In addition, plaintiff requested that his job title and position " be changed to incorporate and represent his qualifications and expanded responsibilities and duties." *Id.* at 18. In particular, plaintiff requested that his job title be changed to one which reflected a status comparable to that of his white male predecessor, the " Director of Clinical Laboratories." Plaintiff's requests were denied. Plaintiff alleges that senior management at the Hospital, specifically Mr. Sheldon Ortsman, Vice President of Administration and Human Resources, repeatedly refused to promote him, change his job title or make what plaintiff considered to be equitable salary adjustments. These personnel decisions, plaintiff claims, were the product of a plan, practice and custom through which defendant discriminated

against black employees.

According to plaintiff, in 1997 he was appointed " to oversee and direct the Pathology and Radiology Departments" at the Hospital. *Id.* at 24. In this capacity, plaintiff was assigned the job title of " Administrative Director of Pathology and Radiology." Plaintiff alleges that with his additional responsibilities, he ought to have been named " Assistant Vice President" and granted a corresponding substantial salary increase. He suggests that but for the fact that he is an African American, he would have been assigned this more impressive title and received the correlating pay increase.

Plaintiff alleges that in June 2001, he was assigned additional duties and responsibilities which were " independent of and not related to his position" as Administrative Director of Pathology and Radiology. *Id.* at 26. Much to plaintiff's consternation, defendant did not assign him a new job title or grant him a salary increase. Plaintiff claims that when he requested that he be promoted, receive a new job title, and receive a salary increase reflective of his new activities-presumably around the time that he was assigned these new duties in June 2001-Mr. Ortsman denied his requests. Indeed, plaintiff claims that defendant denied his requests notwithstanding the recommendations of " independent consultants hired by defendant, concurring with Blake's promotional requests." *Id.* 28.

**\*3** Plaintiff claims that thereafter he again complained to defendant's senior management about what he perceived as defendant's preferential treatment of white managers. Plaintiff claims that after he made this complaint-in retaliation for making this and other complaints regarding race-based discrimination with reference to promotions, assignment of job titles, and salary levels-Mr. Ortsman terminated his employment at the Hospital. Plaintiff claims that Mr. Ortsman told him that his termination was not based upon his job performance, which he characterized as " outstanding." *Id* . at 31. Rather, Mr. Ortsman informed him that the position of " Administrative Director of Pathology and Radiology," which plaintiff held, was being eliminated. Plaintiff requested that, in light of his seniority and qualifications, he be granted the opportunity to assume the administrative position of Pathology " Manager." Plaintiff asserts that this request is " consistent with defendant's Human

Not Reported in F.Supp.2d                                                                            Page 3

Not Reported in F.Supp.2d, 2003 WL 21910867 (S.D.N.Y.)

**(Cite as: Not Reported in F.Supp.2d)**

Resources Policy and past practices of non-union staff reduction." *Id.* at 32. Plaintiff claims that his request was denied. He asserts that the person in the position of " Manager," a white male with less seniority than plaintiff, was not as qualified as plaintiff for the position.

Plaintiff believes that his termination was rooted in defendant's regime of race-based discrimination in hiring, promoting, and paying managerial employees. Plaintiff believes that his employment was terminated in retaliation for his complaints about race-based status and pay disparities and in retaliation for his repeated requests to be given the same job title and salary as his white colleagues, with whom he believes he was similarly situated in all relevant respects. *Id.* at 63.

## II. STANDARD OF REVIEW

A court may dismiss an action pursuant to Fed.R.Civ.P. 12(b)(6) only if " ' it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle him to relief." ' *Cohen v. Koenig,* 25 F.3d 1168, 1172 (2d Cir.1994) (quoting *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). In considering the sufficiency of the pleadings, the court " must accept the factual allegations of the complaint as true and must draw all reasonable inferences in favor of the plaintiff." *Bernheim v. Litt,* 79 F.3d 318, 321 (2d Cir.1996). The issue to be resolved by the court at this stage is " whether or not the plaintiff is entitled to present evidence in support of the allegations in his or her complaint." *Bernstein v. MONY Group, Inc.,* 228 F.Supp.2d 415, 417 (S.D.N.Y.2002) (citing *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)).

" [A]n employment discrimination complaint ... must contain only a ' short and plain statement of the claim showing the pleader is entitled to relief." ' *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 122 S.Ct. 992, 998, 152 L.Ed.2d 1 (2002) (quoting Fed.R.Civ.P. 8(a)(2)). In order to survive a motion to dismiss, " [a]n employment discrimination plaintiff need not plead a prima facie case of discrimination," *id.* at 999, 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1, and must only " ' give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." ' *Id.* (quoting *Conley,* 355 U.S. at 47, 78 S.Ct. 99, 2 L.Ed.2d 80).

## III. Analysis

**\*4** Defendant moves pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss as time-barred claims in plaintiff's complaint which are premised upon acts which occurred prior to May 20, 1999. In New York, Section 1981 claims are subject to a three-year statute of limitations. *See, e.g., Wilson v. Fairchild Republic Co., Inc.,* 143 F.3d 733, 738 n. 5 (2d Cir.1998) (statute of limitations of federal civil rights cases is three years, including Section 1981 claims); *Bailey v. Colgate-Palmolive,* 2003 WL 21108325 at \*10 (S.D.N.Y. May 14, 2003). The claims brought under the New York Executive Law and the New York City Administrative Code are likewise subject to a three-year statute of limitations. *See Charles v. New York City Police Dept.,* 1999 WL 717300 (S.D.N.Y. Sept.15, 1999) (citing *Lambert v. Genesee Hosp.,* 10 F.3d 46, 59 (2d Cir.1993)); *Lightfoot v. Union Carbide Corp., 110 F.3d 898,* 906 (2d Cir.1997). Whereas plaintiff filed the complaint in this case on May 20, 2002, defendant argues that any claims premised upon acts which occurred prior to May 20, 1999 are untimely and must be dismissed.

Considering the complaint in a light most favorable to plaintiff, it appears that he was aware of actions which are the basis of some his claims as early as 1993 and certainly by 1997. Indeed, plaintiff requested that his first job title, " Laboratory Administrator," be changed to include the word " Director" (and that he receive an appropriate pay increase) sometime after he was hired in 1993 and before he became " Administrative Director" in 1997. In June 2001, plaintiff was given additional duties and responsibilities, but not an accompanying pay increase. He requested a promotion sometime thereafter; the request was denied.

" The timeliness of a discrimination claim is to be measured from the date the claimant had notice of the allegedly discriminatory action." *Van Zant v. KLM Royal Dutch Airlines,* 80 F.3d 708, 713 (2d Cir.1996) (citing *Morse v. University of Vermont,* 973 F.2d 122, 125 (2d Cir.1992)). Conscious of this limitation, plaintiff asserts that the retaliation and disparate pay and status assignment regime of which he complains were products of an ongoing " pattern or practice" of discrimination at the Hospital. *See* Pl.'s Mem. of Law at 2. He concludes that all the actions of which he complains, including those which occurred before May 20, 1999, are within the relevant statute of limitations because " pattern and practice claims can

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                        Page 4
Not Reported in F.Supp.2d, 2003 WL 21910867 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

still form the basis of a continuing violation." *Id.*

To begin, the court notes that neither plaintiff nor defendant directly addresses the issue of the applicability of the continuing violations doctrine, which has existed in this Circuit in the context of *Title VII* claims, to plaintiff's Section 1981 and state and city law claims. Without explanation or citation, plaintiff assumes that the doctrine applies to Section 1981 claims. Defendant, without explanation or citation, assumes that the Supreme Court's analysis in *National R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002)-a case that addressed, *inter alia,* the issue of time bar in the context of a *Title VII claim*-applies to plaintiff's Section 1981 claim. In order to address the parties' arguments, the court should touch upon the issue of the intersection of the Court's decision in *Morgan* and plaintiff's claims.

**\*5** In the context of a Title VII claim, courts in this Circuit have previously recognized a narrow exception to the limitations period when an otherwise time-barred claim is part of a " continuing violation." *See Lambert,* 10 F.3d at 53. The doctrine has generally been limited to situations where a specific discriminatory policy or mechanism has been alleged. *See Van Zant,* 80 F.3d at 713. Plaintiffs could invoke the continuing violation doctrine if they could provide " proof of specific or ongoing policies or practices or ... specific and related instances of discrimination [which] are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice." *Cornwell v. Robinson,* 23 F.3d 694, 704 (2d Cir.1994). If a continuing violation is established, " all claims of discrimination under [the discriminatory policy] will be timely even if they would be untimely standing alone." *Lambert,* 10 F.3d at 53. As " a general rule, courts in the Second Circuit have viewed continuing violation arguments with disfavor." *Curtis et. al. v. Airborne Freight Corp.,* 87 F.Supp.2d 234, 244 (S.D.N.Y.2000) (citing *Rose v. Port Auth. of N.Y. and N.J.,* 13 F.Supp.2d 516, 520 (S.D.N.Y.1998)).

The Supreme Court recently explained in *Morgan,* with reference to a claim under Title VII, that " discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act.... Each incident of discrimination and each retaliatory adverse employment decision constitutes a

separate actionable ' unlawful employment practice." ' *Morgan,* 122 S.Ct. at 2072-73. " Termination, failure to promote, denial of transfer, or refusal to hire" are all discrete acts. *Id.* at 2072. The Court did not address " pattern or practice" claims, which " presumably can still form the basis of a continuing violation." *Gross v. National Broadcasting Company, Inc.,* 232 F.Supp.2d 58, 68 (S.D.N.Y.2002) (citing *Morgan,* 122 S.Ct. at 2073 n. 9). The court in *Gross* observed, though, that the Supreme Court made clear that " there is no indication that the term " practice" as used in Title VII ' converts related discrete acts into a single unlawful practice for the purposes of timely filing." ' *Id.* (quoting *Morgan,* 122 S .Ct. at 2071).

Defendant, assuming that the Court's pronouncements in *Morgan* with respect to Title VII apply in this matter, concludes that each incident of which plaintiff complains is a discrete act which cannot contribute to a continuing violation. Accordingly, defendant contends that claims premised on acts which occurred before May 20, 1999 are time barred. By contrast, plaintiff contends that the disparate pay which resulted from the allegedly discriminatory status assignment regime was part of an ongoing " pattern and practice" of discrimination. While plaintiff uses the words " pattern and practice" in its complaint, the court is not convinced that plaintiff has truly pleaded a " pattern and practice" claim which might still form the basis of a continuing violation after *Morgan.* Indeed, the court doubts that a plaintiff can bring a " pattern and practice" claim in a non-class action complaint. *See, e.g., Foster-Bey v. Henderson,* 2000 WL 6203311 at *1 n. 1 (D.Conn. April 7, 2000); *Calebritto v. Dillon,* 920 F.Supp. 370, 378 (E.D.N.Y.1996); *Babrocky v. Jewel Food Co.,* 773 F.2d 857, 866 n. 6 (7th Cir.1985) (pattern and practice argument seems to be misplaced in non-class suits); *N.A.A .C.P. Labor Committee of Front Royal, Va. v. Laborers Intern.,* 902 F.Supp. 688, 611-12 (W.D.Va.) (suggesting that pattern or practice theory is not appropriate in private, non-class action). In any event, a plaintiff does not properly allege an ongoing discriminatory policy simply by invoking the magic words " pattern" or " practice." *See Gross,* 232 F.Supp.2d at 68 (citing *Morgan* at 2071).

**\*6** In *Staff v. Pall Corp.,* 233 F.Supp.2d 516, 526 (S.D.N.Y.2002), Judge Harth observes that " [t]he parties' failure to distinguish between the various statutes notwithstanding, there is ample justification

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 5

Not Reported in F.Supp.2d, 2003 WL 21910867 (S.D.N.Y.)

(Cite as: Not Reported in F.Supp.2d)

to extend the reasoning of *Morgan* to Plaintiff's §
1981 and state law claims." The court agrees. The
Supreme Court and the Second Circuit have
addressed in identical fashion substantive issues
arising under Title VII and Section 1981. *Id.* at 527
(citing *Patterson v. McLean Credit Union,* 491 U.S.
164, 186, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989);
*Hawkins v. 115 Legal Service Care,* 163 F.3e 684,
693 (2d Cir.1998)). *See also Everson v. New York
City Transit Auth.,* 216 F.Supp.2d 71, 79
(E.D.N.Y.2002) (continuing violation doctrine
applies to both Title VII and Section 1981). "
Because the primary difference between the two
statutes pertains to the breadth of protected classes,
employees covered, and the statutes of limitations,
rather than to the substantive elements of a claim ... it
follows that the distinction drawn in *Morgan* between
hostile work environment claims and claims of
discrete acts" applies in the context of a Section
1981 claim. *Staff,* 233 F.Supp.2d at 527.

Moreover, as the court observes in *Staff,* the
similarity between the New York State Human
Rights Laws and the federal employment
discrimination laws suggests that " the reasoning of
*Morgan* with respect to the continuing violation
exception should apply to claims brought under the
NYSHRL as well." *Id.* at 528. The court finds the
reasoning in *Staff* to be persuasive and equally
applicable to the City Human Rights Laws.
Accordingly, the court likewise concludes that the
Court's reasoning with respect to the time-bar issue in
*Morgan* is applicable to the Section 1981 and state
and city law claims in this case.

The Second Circuit has noted that
a claim of discriminatory pay is fundamentally unlike
other claims of ongoing discriminatory treatment
because it involves a series of discrete, individual
wrongs rather than a single and indivisible course of
wrongful action. As the Supreme Court explained in
*Bazemore v. Friday* [478 U.S. 385, 395-96 (1986) ],
characterizing the harm imposed by a racially
discriminatory pay scale, " Each week's paycheck
that delivers less to a [disadvantaged class member]
than to a similarly situated [favored class member] is
a wrong under Title VII, regardless of the fact that
the pattern was begun prior to the effective date" of
limitation.

*Pollis v. New Sch. for Social Research,* 132 F.3d 115,
119 (2d Cir.1997) (quoting *Bazemore v. Friday,* 478

U.S. 385, 395-96, 106 S.Ct. 3000, 92 L.Ed.2d 315
(1986)). *See also Meckenberg v. New York City Off-
Track Betting,* 42 F.Supp.2d 359, 371
(S.D.N.Y.1999) (" recurring pay discrimination does
not constitute a continuing violation, as each receipt
of a paycheck is the basis for a separate cause of
action for which suit must be brought within the
limitations period" ); *Quarless v. Bronx-Lebanon
Hosp. Ctr.,* 228 F.Supp.2d 377, 383 n. 2
(S.D.N.Y.2002) (holding that, in light of *Morgan,
Pollis* applies to Title VII claims); *Gross,* 232
F.Supp. at 67 (noting that *Morgan,* " which states that
alleged failures to compensate adequately ... cannot
form the basis for a continuing violation claim," is in
accord with *Pollis* ).

*7 Here, plaintiff claims that he was paid less and
received less impressive job titles than his
predecessor and other similarly situated white
managerial employees at the Hospital. Again, in
*Morgan,* the Court identified the following discrete
employment actions which are not subject to the
continuing violation exception: termination, failure to
promote, denial of transfer, or refusal to hire. *See
Morgan,* 122 S.Ct. 2072-73. As Judge Scheindlin
observes in *Gross,* the holding in *Morgan* is in accord
with Second Circuit law " which states that alleged
failures to compensate adequately, transfers, job
assignments, and promotions cannot form the basis
for a continuing violation claim." 232 F.Supp. at 68
(citing, e.g., *Pollis,* 132 F.3d 115, 119 (2d Cir.1997)).
*See also Crosland v. City of New York,* 140
F.Supp.2d 300, 308 (S.D.N.Y.2001) (" It is well-
settled that transfers, demotions, failure to
compensate adequately, and failure to promote are
discrete acts which do not constitute a continuing
violation" ). Similarly, the Second Circuit has held
that the denial of an increased pay grade does not
amount to a continuing violation. *Lambert,* 10 F.3d at
53. *See also Quarless,* 228 F.Supp.2d at 382
(rejecting argument that disparate pay was part of an
ongoing pattern and practice of discrimination,
observing that " [b]ecause each paycheck that the
Plaintiff received was an (alleged) immediate and
individual wrong which gave rise to a separate
disparate pay claim, the plaintiff cannot use the
continuing violation doctrine" ). Plaintiff cannot avail
himself of the continuing violation doctrine in order
to render timely any disparate pay allegations which
occurred outside of the three year statute of
limitations. *Id.* (citing *Morgan,* 122 S.Ct. at 2072). In
light of the foregoing, plaintiff's promotion and salary
claims brought after May 20, 1999 are time-barred.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2003 WL 21910867 (S.D.N.Y.)

**(Cite as: Not Reported in F.Supp.2d)**

Similarly, the discrete acts of retaliation alleged in the complaint cannot be saved by the continuing violation exception. *See Morgan,* 122 S.Ct. at 2073 (" [e]ach incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable ' unlawful employment practice" 'which must be alleged in a claim filed " within the appropriate time period" ); *Coffey v. Cushman & Wakefield,* 2002 WL 1610913 (S.D.N.Y.2002) (Koetl, J.) (the " statute of limitations ... begins to run when each discrete and retaliatory act occurs, including each unlawful termination, denial of transfer ... or other related acts that discriminate" ). Accordingly, retaliation claims brought after the applicable statute of limitations are time-barred.

In light of the foregoing, defendant's partial motion to dismiss is hereby GRANTED.
SO ORDERED.

S.D.N.Y.,2003.
Blake v. Bronx Lebanon Hospt. Center
Not Reported in F.Supp.2d, 2003 WL 21910867 (S.D.N.Y.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.