Westlaw.

Not Reported in F.Supp.2d                                                                                                    Page 1
Not Reported in F.Supp.2d, 2004 WL 736988 (S.D.N.Y.)

(Cite as: Not Reported in F.Supp.2d)

H
Carmellino v. District 20 of New York City Dept. of Educ.
S.D.N.Y.,2004.
Only the Westlaw citation is currently available.
United States District Court,S.D. New York.
Marian CARMELLINO, John Casciato, Jill Goldberg, Robin Kessler, Marie Magaldi, Debora Mauskopf, Sara Lee L. Melendi, C.H.E., Eileen Millares, Arthur Miller, Ellen O'Leary, Josephine Pascucci, Barbara Pocino, Victor Sands, Deborah Schwartz, Marsha Silverstein, Alice Sternberg, Elizabeth De Mairo Stingo, Katherine Weber-Wolf, Mary Yialouris Papasmiris Plaintiffs,
v.
DISTRICT 20 OF THE NEW YORK CITY DEPARTMENT OF EDUCATION, the New York City Department of Education, Vincent Grippo, in his official capacity as Superintendent of District 20 of the New York City Department of Education, Joann Ascuitto, in her official capacity as the Principal of Public School 180K, Howard Mednick, Principal of Public School 180K, Louise Verdemare, in her official capacity as the Principal of Public School 112K, Kathleen Le Donni, in her official capacity as the Principal of Public School 247K, Margaret De Gaeta, in her official capacity as the Principal of Public School 176K, Elizabeth Culkin, in her official eapacity as the Assistant Principal and Acting Interim Principal of Public School 176K, Patrick Marano, in her official capacity as the Principal of Public School 163K, Jo N. Rossieone, in her individual capacity as the Principal of Intermediate School 220K, Marie Di Bella, in her official capacity as the Principal of Public School 104K, Sylvia La Cerra, in her official capacity as the Principal of Public School 200K, Theresa Dovi, in her official capacity as the Principal of Elementary School 102K, Diane Picucci, in her official capacity as the Principal of Public School 48K, Defendants.
No. 03 Civ. 5942(PKC).

April 6, 2004.

*MEMORANDUM AND ORDER*
CASTEL, J.
*1 This action is brought by 19 plaintiffs, each of whom is a present or former teacher employed by the New York City Department of Education (" Department of Education" ). The Complaint alleges that Vincent Grippo (" Grippo" ), the Superintendent of District 20 of the Department of Education, as well as his appointees, engaged in " an explicit pattern and practice of age discrimination" against all of the plaintiffs. (Complaint ¶ 38) Plaintiffs claim that the allegedly discriminatory acts committed by defendants created an intolerable workplace that, for many of them, led to the termination of their jobs, either via formal discharge or constructive discharge. Other plaintiffs claim that they were not offered permanent positions due to defendants' alleged discrimination. All of the plaintiffs bring at least one claim pursuant to the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621-634 (" ADEA" ), or, alternatively, pursuant to 42 U.S.C. § 1983 alleging violation of the Equal Protection Clause, U.S. Const. Amend. XIV. One plaintiff also brings a claim of religious discrimination, and another brings common law tort claims.

As a factual basis for the age discrimination claims, the Complaint quotes a series of remarks allegedly made by Grippo and district officials that disparaged the professional abilities of more senior teachers and expressed a preference for younger teachers. (Complaint ¶¶ 38-55) The Complaint also alleges that " the great majority" of teachers hired by Grippo have been in their 20s, that Grippo has declined to hire qualified older teachers, and that numerous teachers were discharged and/or brought up on charges for discriminatory reasons. (Complaint ¶ 55) In addition to allegations labeled common to all plaintiffs, the Complaint includes allegations pertaining to each plaintiff, involving educational and employment history, and details regarding each plaintiff's encounter with the defendants' alleged discriminatory conduct.

Defendants have moved under Rule 12(b)(6), or, in the alternative, Rule 56(b), Fed.R.Civ.P., to dismiss claims brought by Jill Goldberg, Marie Magaldi, Debora Mauskopf, Arthur Miller, Josephine Pascucci, Victor Sands, Deborah Schwartz, and Alice Sternberg. Defendants assert that, by reason of prior state court dismissals of nearly identical actions, the claims now brought by Goldberg, Miller, Pascucci, Sands and Sternberg are barred by the doctrine of *res judicata.* (Defendants' Memorandum of Law in

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                    Page 2

Not Reported in F.Supp.2d, 2004 WL 736988 (S.D.N.Y.)

**(Cite as: Not Reported in F.Supp.2d)**

Support of their Motion for Dismissal or Summary Judgment (" Def.Mem." ) at 10-13) Defendants argue that, in the alternative, Miller waived his present claims when he signed a stipulation to settle disciplinary charges brought against him. (Def. Mem. at 14-16) Defendants contend that the claims brought by Magaldi and Mauskopf should be dismissed as untimely under the ADEA because any acts of actionable discriminatory conduct occurred more than 300 days prior to charges they filed with the EEOC. (Def. Mem. at 17-18) Lastly, defendants seek the dismissal of Schwartz's claim, arguing that (1) she fails to state an actionable elaim for either age or religious discrimination, and (2) her claims are untimely under both Title VII and the ADEA. (Def. Mem. at 19-21)

*2 For the reasons explained below, defendants' motions are granted in part and denied in part.

*Rule 12(b) and Rule 56*

As an initial matter, I must determine whether defendants' motion should be considered through the lens of Rule 12(b)(6), Fed.R.Civ.P., as a motion to dismiss for failure to state a claim, or pursuant to Rule 56(b), Fed.R.Civ.P., as a motion for summary judgment. Rule 12(b) states in relevant part:

If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

While a Rule 12 motion that relies on factual materials extrinsic to the pleadings will be converted into a Rule 56 motion, courts may take judicial notice of court documents for the purpose of evaluating the *res judicata* effect of previous legal actions without converting the motion into one for summary judgment. *See, e.g., Kramer v. Time Warner Inc., 937 F.2d 767, 774 (2d Cir.1991)* (" [C]ourts routinely take judicial notice of documents filed in other courts, again not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." ).

The defendants frame their present motion as one for either dismissal or summary judgment. (Notice of Motion, October 27, 2003) Thus, the plaintiffs were on notice that defendants' motion could be evaluated as one seeking summary judgment. The plaintiffs' response to defendants' motion incorporated 12 exhibits, including affidavits from individual plaintiffs. Plaintiffs have not argued that further discovery is required pursuant to Rule 56(f). Because plaintiffs were on notice that defendants' motion might be addressed as one seeking summary judgment, and the plaintiffs themselves responded by submitting documents that cannot be judicially noticed and are outside the four corners of their complaint, defendants' motion will be considered under Rule 56.

Summary judgment " shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c). A fact is material if it " might affect the outcome of the suit under the governing law...." *Anderson v. Liberty Lobby, Inc., 477 U.S. 242; 248, 106 S.Ct. 2505, 2510 (1986).* An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* The Court must " view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor, and may grant summary judgment only when no reasonable trier of fact could find in favor of the nonmoving party." *Allen v. Coughlin, 64 F.3d 77, 79 (2d Cir.1995)* (citation and quotation marks omitted); *accord Matsushita Electric Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88, 106 S.Ct. 1348, 1356 (1986).* However, when the moving party has asserted facts to demonstrate that the non-moving party's claim cannot be sustained, the opposing party must " set forth specific facts showing that there is a genuine issue for trial," and cannot rest on " mere allegations or denials" of the facts asserted by the movant. Rule 56(e).

*Res Judicata and Plaintiffs' Section 1983 Claims*

*3 Defendants contend that claims brought by Goldberg, Miller, Pascucci, Sands and Sternberg are barred under the doctrine of *res judicata*. " The policies underlying *res judicata* reflect the sensible goal that where possible all related claims be resolved in one proceeding." *Tarka v. Armstrong, 2002 WL 31778895, at *3 (S .D.N.Y. Dec. 6, 2002),* quoting *Epperson v. Entertainment Express, Inc., 242*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2004 WL 736988 (S.D.N.Y.)

**(Cite as: Not Reported in F.Supp.2d)**

F.3d 100, 109 (2d Cir.2001). Prior to the commencement of this action, each of these five plaintiffs brought actions in the Supreme Court, New York County, alleging state law violations arising out of facts nearly identical to their claims in this litigation. Each of their actions was dismissed on procedural grounds, including dismissals for being time-barred. I begin by summarizing the facts relevant to defendants' *res judicata* contentions.

### A. *Goldberg*

In a complaint dated October 30, 2002, Goldberg brought an action in the Supreme Court, New York County, alleging unlawful age discrimination by the Department of Education and Grippo pursuant to New York State Human Rights Law, Executive Law § 296 (" Human Rights Law" ) and the Administrative Code of the City of New York §§ 8-101 *et seq.* (" Administrative Code" ). (Complaint, *Jill Goldberg v. The New York City Department of Education et al.*, 123708/02 (" *Goldberg* Complaint" ), *attached at* Declaration of Norma A. Cote (" Cote Declaration" ) Ex. A)

Goldberg's complaint in the state court action included factual allegations highly similar to those in this action. Both complaints allege: (1) discriminatory conduct based on age (*Goldberg* Complaint ¶ 1; Complaint ¶ 1); (2) a history of satisfactory performance reviews (*Goldberg* Complaint ¶ 17; Complaint ¶ 99); (3) the issuance of negative false observation reports by Goldberg's principal, defendant Jo Ann Asciutto (" Asciutto" ) (*Goldberg* Complaint ¶¶ 19-20, 22; Complaint ¶¶ 101-102, 104); (4) an age-related question that Asciutto asked of Goldberg (*Goldberg* Complaint ¶ 21; Complaint ¶ 103); (5) the issuance of unwarranted " unsatisfactory" performance reviews arising out of false reports (*Goldberg* Complaint ¶ 24, 28; Complaint ¶ 108, 119); (6) identical quotations from Elise Feldman, a district official and non-party who complimented Goldberg on her skills and experience (*Goldberg* Complaint ¶ 25; Complaint ¶ 112); (7) uniquely harsh scrutiny by Asciutto of Goldberg's classroom and bulletin boards (*Goldberg* Complaint ¶ 27; Complaint ¶ 115); and (8) Asciutto's failure to provide extra assistance to Goldberg, a practice typical of teachers who receive an unsatisfactory review. (*Goldberg* Complaint ¶ 31; Complaint ¶ 117)

The defendants in Goldberg's state court action filed a motion to dismiss the complaint because it was time-barred and because Goldberg failed to comply with state notice of claim provisions. (Notice of Motion, *Goldberg v. The New York City Department of Education et al.*, *attached at* Cote Declaration Ex. B) The motion was unopposed, and the New York Supreme Court, New York County, granted the defendants' motion to dismiss. (Order, *Goldberg v. The New York City Department of Education et al.*, *attached at* Cote Declaration Ex. C) Defendants assert that Goldberg did not appeal the order of dismissal in her state action, a representation that Goldberg does not dispute. (Defendants' Local Rule 56.1 Statement of Undisputed Facts (" Defendants' Rule 56.1 Statement" ) ¶ 6)

### B. *Miller*

*4 In a complaint dated October 24, 2002, Miller filed suit in the New York Supreme Court alleging unlawful age discrimination under the Human Rights Law and the Administrative Code by the Department of Education, Grippo, and Jo N. Rossicone (" Rossicone" ). (Complaint, *Miller v. The New York City Department of Education, et al.* (" *Miller* Complaint" ), Index No. 123707/02, Supreme Court, New York County, *attached at* Cote Declaration Ex. G)

Miller's complaint in the state court action contained allegations highly similar to those in this action. Both complaints allege: (1) discriminatory conduct based on age (*Miller* Complaint ¶ 1; Complaint ¶ 1); (2) that on at least fifteen occasions, Rossicone told Miller, " It's the older teachers that hold me back here" (*Miller* Complaint ¶ 26; Complaint ¶ 250); (3) that through Miller's role as a chapter leader of the United Federation of Teachers, he witnessed discriminatory actions by Rossicone (*Miller* Complaint ¶ 27; Complaint ¶ 251); (4) that Rossicone falsely accused Miller of shoving a school secretary, which led to his arrest (*Miller* Complaint ¶ 28; Complaint ¶ 252); (5) that Grippo did not adequately investigate the factual bases of charges brought against Miller (*Miller* Complaint ¶¶ 30-32; Complaint ¶¶ 255-56); and (6) that Miller wrongfully received an unsatisfactory rating and was precluded from teaching for 18 months. (*Miller* Complaint ¶¶ 36-37; Complaint ¶ 253)

The defendants moved to dismiss the *Miller* complaint, claiming that it was time-barred, and asserting waiver and release estoppel, and equitable

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:07-cv-03498-AKH  Document 7-3  Filed 07/02/2007  Page 4 of 17

Not Reported in F.Supp.2d                                                                                           Page 4
Not Reported in F.Supp.2d, 2004 WL 736988 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

estoppel. (Notice of Motion, *Miller v. The New York City Department of Education, et al.*, attached at Cote Declaration Ex. H) The motion to dismiss was granted without opposition. (Order, *Miller v. The New York City Department of Education, et al.*, attached at Cote Declaration Ex. I) Defendants assert that Miller did not appeal the dismissal, a contention that Miller does not dispute. (Defendants' Rule 56.1 Statement ¶ 18)

C. *Pascucci*

In a complaint dated December 5, 2002, Pascucci filed suit in the New York Supreme Court pursuant to the Human Rights Law and the Administrative Code, alleging unlawful age discrimination by the Department of Education, Grippo, and Sylvia La Cerra (" La Cerra" ), an assistant principal at Pascucci's school. (Complaint, *Pascucci v. Department of Education of the City of New York et al.*, 126657/02 (" *Pascucci* Complaint" ), Supreme Court, New York County, *attached at* Cote Declaration Ex. J)

Pascucci's complaint in the state court action contained allegations highly similar to those in this action. Both complaints allege: (1) discriminatory conduct based on age (*Pascucci* Complaint ¶ 1; Complaint ¶ 1); (2) that starting in October, 1999, defendant La Cerra began a pattern of discrimination against Pascucci (*Pascucci* Complaint ¶ 21; Complaint ¶ 279); (3) that La Cerra issued negative letters regarding Pascucci (*Pascucci* Complaint ¶ 21; Complaint ¶ 282); (4) that La Cerra's negative letters caused Pascucci to receive an unwarranted rating of unsatisfactory (*Pascucci* Complaint ¶ 21; Complaint ¶¶ 281, 283); and (5) that ongoing discriminatory treatment caused Pascucci to go on a leave of absence at the conclusion of the 2001 school year. (*Pascucci* Complaint ¶ 24; Complaint ¶ 293)

*5 The defendants in the state court action moved to dismiss the complaint, claiming that Pascucci failed to timely commence the action, and that her claims also were barred by doctrines of compromise and settlement, waiver and release, and equitable estoppel. (Notice of Motion, *Pascucci v. Department of Education of the City of New York et al.*, attached at Cote Declaration Ex. K) By order dated March 24, 2003, the action was dismissed without opposition. (Order, *Pascucci v. Department of Education of the City of New York et al.*, attached at Cote Declaration Ex. L) Defendants assert that Pascucci did not appeal the dismissal, a contention that Pascucci does not dispute. (Defendants' Rule 56.1 Statement ¶ 24)

D. *Sands*

In a complaint dated October 24, 2002, Sands brought suit in the New York Supreme Court against the Department of Education, Rossicone and Grippo, alleging age discrimination under the Human Rights Law and the Administrative Code. (Complaint, *Sands v. The New York City Department of Education et al.*, 123706/02 (" *Sands* Complaint" ), attached at Cote Declaration Ex. M)

The *Sands* Complaint contained allegations highly similar to those in this action. Both complaints allege: (1) discriminatory conduct based on age (*Sands* Complaint ¶ 1; Complaint ¶ 1); (2) that Rossicone began a pattern of harassment against Sands in 1999 (*Sands* Complaint ¶ 21; Complaint ¶ 322); (3) that Rossicone made false allegations based on her classroom observations, leading to a negative letter placed in his file (*Sands* Complaint ¶ 22; Complaint ¶ 323); (4) that from September, 2000 through June, 2001, three additional negative letters were placed in Sands's file (*Sands* Complaint ¶ 27; Complaint ¶ 326); (5) that Rossicone singled out Sands for allegedly not teaching from " bell to bell" (*Sands* Complaint ¶¶ 25-26; Complaint ¶ 325); (6) that Sands ultimately was given an unsatisfactory rating (*Sands* Complaint ¶ 31; Complaint ¶ 327); and (7) the cumulative effect of the discrimination prompted Sands to retire. (*Sands* Complaint ¶ 32; Complaint ¶ 328) The present action also includes allegations pertaining to abuse of process and false arrest (Complaint ¶¶ 330-40; 486-93) that were not alleged in the state-court action. Defendants have not moved to dismiss the abuse of process and false arrest claims.

The defendants in the state court action filed a motion to dismiss, on the basis that Sands had failed to comply with applicable notice of claim requirements, and failed to timely commence his action. (Notice of Motion, *Sands v. The New York City Department of Education et al.*, attached at Cote Declaration Ex. N) The action was subsequently dismissed without opposition. (Order, *Sands v. The New York City Department of Education et al.*, attached at Cote Declaration Ex. O) Defendants assert that the dismissal was not appealed, a contention Sands does not dispute. (Defendants' Rule 56.1 Statement ¶ 30)

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

### E. *Sternberg*

*6 Sternberg filed a complaint in New York Supreme Court dated October 24, 2002, alleging age discrimination by the Department of Education, Grippo, and defendant Kathleen Le Donni ("Le Donni"), principal of public school 247K, under the Human Rights Law and the Administrative Code. (Complaint, *Sternberg v. Department of Education of the City of New York et al.*, 124177/02, ("*Sternberg* Complaint"), attached at Cote Declaration Ex. Q)

Sternberg's complaint in the state court action contained allegations highly similar to those in this action. Both complaints allege: (1) discriminatory conduct based on age (*Sternberg* Complaint ¶ 1; Complaint ¶ 1); (2) that in November, 2000, Le Donni, began to discriminate against Sternberg, which included the bringing of allegedly false corporal punishment allegations against Sternberg (*Sternberg* Complaint ¶¶ 21-22; Complaint ¶ 402); (3) that in December, 2000, Le Donni made false allegations that Sternberg threatened the safety and well-being of a student (*Sternberg* Complaint ¶¶ 23-24; Complaint ¶ 403); (4) that in February, 2001, Le Donni made false allegations that Sternberg failed to communicate with parents when she referred a student for "CPSE evaluation" (*Sternberg* Complaint ¶ 25; Complaint ¶ 404); (5) that Le Donni told Sternberg she would receive an unsatisfactory performance rating (*Sternberg* Complaint ¶ 27; Complaint ¶ 406); and (6) that Le Donni's actions prompted Sternberg to retire in 2001. (*Sternberg* Complaint ¶ 29; Complaint ¶ 407)

The defendants in the state court action filed a motion to dismiss, on the basis that Sternberg failed to comply with notice of claim requirements, and failed to timely commence the action. (Notice of Motion, *Sternberg v. Department of Education of the City of New York et al.*, attached at Cote Declaration Ex. R) The action was dismissed without opposition. (Order, *Sternberg v. Department of Education of the City of New York et al.*, attached at Cote Declaration Ex. S) Defendants state that the dismissal was not appealed, a contention that Sternberg does not dispute. (Defendants' Rule 56.1 Statement ¶ 37)

### F. *Application of Res Judicata to Plaintiffs' Claims*

There are four prongs to the application of *res judicata:* (1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action. *Corbett v. MacDonald Moving Services, Inc.*, 124 F.3d 82, 87-88 (2d Cir.1997), citing *In re Teltronic Services, Inc.*, 762 F.2d 185, 190 (2d Cir.1985).

I first look to whether the state courts' dismissals of actions brought by Goldberg, Miller, Pascucci, Sands, and Sternberg constituted "final judgments on the merits." A federal court is required to give a state court judgment the same preclusive effect that it would have in a state court. 28 U.S.C. § 1738; *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984). Regarding the first prong, under New York law, a dismissal based on non-compliance with a statute of limitations functions as a judgment on the merits for *res judicata* purposes. *See EFCO Corp. v. U.W. Marx, Inc.*, 124 F.3d 394, 397 (2d Cir.1997); *Bray v. New York Life Ins.*, 851 F.2d 60, 64 (2d Cir.1988); *Cold Harbor Area Civic Ass'n v. Bd. of Zoning Appeals of Town of Huntington*, 305 A.D.2d 444, 445, 762 N.Y.S.2d 392, 393 (1st Dep't 2003); *Karmel v. Delfino*, 293 A.D.2d 473, 740 N.Y.S.2d 373, 374 (2d Dep't 2002) ("A dismissal on statute of limitations grounds is considered a dismissal on the merits for claim preclusion purposes and bars a second action."). "New York Courts view such a dismissal as 'on the merits' because a statute of limitations is a legislative limit on a party's ability to bring an action, and a dismissal based on a statute of limitations constitutes a final resolution of the party's remedy in that it bars the remedy sought to be enforced and terminates the right of access to the courts for enforcement of the existing right." *EFCO*, 124 F.3d at 398 (internal citation and quotation marks omitted) citing *U.S. v. Kubrick*, 444 U.S. 111, 117 (1979), *Consolidated Rail v. Primary Indus. Corp.*, 868 F.Supp. 566, 576 (S.D.N.Y.1994). Plaintiffs, therefore, are incorrect in their contention that a dismissal predicated on statute of limitations grounds does not qualify as a final judgment on the merits. (Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Dismissal or Summary Judgment ("Plaintiffs' Mem.") at 2-3)

*7 Regarding the second prong, there is no dispute between the parties that the Supreme Court, New York County, is a court of competent jurisdiction for the purpose of hearing claims under the New York State Human Rights Law and the New York City Administrative Code. (Plaintiffs' Mem. at 4 n. 3; Def. Mem. at 10)

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 736988 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

Page 6

On the third factor of *res judicata*, plaintiffs dispute that the same parties or their privies were involved in each of the two actions. Plaintiffs point out that 19 plaintiffs bring this action, more than the number of plaintiffs who sued in state court. (Plaintiffs' Mem. at 4) Plaintiffs also argue that, collectively, the words and acts of *all* defendants in this action form a basis of their claims, as opposed to the state court actions, which focused on more discrete interactions between the parties. (Plaintiffs' Mem. at 4)

Plaintiffs' arguments are unavailing, and run counter to the basic tenets of *res judicata*. A party may not avoid the preclusion of a second action merely because that action includes a larger number of plaintiffs and/or defendants. *See, e.g., Cameron v. Church,* 253 F.Supp.2d 611, 623 (S.D.N.Y.2003) ("*Res judicata* operates to preclude claims, rather than particular configurations of parties; Plaintiff's addition of new defendants, in the context of allegations of their involvement in the series of alleged deprivations, does not entitle him to revive the previously-dismissed claims."). If such were the case, any unsuccessful plaintiff could resurrect a claim *ad infinitum* by filing subsequent complaints, each with an incrementally larger number of co-plaintiffs. Plaintiffs offer no legal support for their novel interpretation of *res judicata*.

Moreover, I note that 19 individual plaintiffs bring this action. Each of them brings factual allegations specific to his or her experiences; undertook (or attempted to undertake) administrative measures to make these actions timely and procedurally adequate; and will be required to satisfy burdens of proof at trial. The 19 plaintiffs do not constitute a single party. By way of example only, Rule 42(b), Fed.R.Civ.P., would permit me to separate the plaintiffs' claims if administrative efficiency or prejudice concerns so warranted. *See, e.g., Grayson v. K-Mart Corp.,* 849 F.Supp. 785, 790-91 (N.D.Ga.1995) (severing plaintiff group's pattern-and-practice ADEA claims into trials for each individual plaintiff). The mere fact that these five plaintiffs bring their claims in concert with 14 others does not eclipse the necessities for stating a claim or the proofs needed to establish defendants' liability. [FN1] The admissibility *vel non* of acts directed at other alleged victims ought not stand or fall on the other victims' status as a co-plaintiff.

> FN1. Had these five plaintiffs filed timely state court actions, they presumably would have undertaken discovery in the state court, and learned of the experiences of their co-plaintiffs in this action. I also note that the ADEA plaintiffs' EEOC charges, as well as the state court actions brought by Goldberg, Miller, Pascucci, Sands, and Sternberg, all were handled by the same legal counsel. While not determinative, this common representation suggests that the accumulated factual allegations available to the section 1983 plaintiffs at the commencement of this action would have been available to them in their state court actions.

Also, as defendants point out, Grippo, Rossicone, Le Cerra, and Le Donni each were sued in their official capacities in the relevant state court actions. In the present action, all defendants but Rossicone are sued in their official capacity.[FN2] Defendants are correct in arguing that suits brought against an individual in his or her official capacity " ' generally represent only another way of pleading an action against an entity of which an officer is an agent .' " *Kentucky v. Graham,* 473 U.S. 159, 165-66, 105 S.Ct. 3099, 3105 (1985), quoting *Monell v. New York City Dep't of Soc. Services,* 436 U.S. 658, 690 n. 55 (1978). As such, plaintiffs have no basis for their contention that the two actions lack common identity because the Department of Education, Grippo, Rossicone, Le Cerra and Le Donni all were defendants in the first actions. *See e .g., Peros v. Castano,* 2002 WL 603042, at *3 (E.D.N.Y. Mar. 22, 2002) (prior judgment in action against municipality precludes action against defendant in his official capacity); *Patton v. Dumpson,* 498 F.Supp. 933, 943 (S.D.N.Y.1980) (municipal corporations and their officers have a relationship of privity, and a judgment against one functions as a judgment against the other).

> FN2. In the present action, plaintiffs sue Rossicone in her individual capacity in relation to Sands's tort claims. In the section 1983 claims, plaintiffs sue Rossicone only in her official capacity.

*8 The final issue is whether the present action and the state court actions involved the same causes of action. Goldberg, Miller, Pascucci, Sands, and Sternberg all bring their claims pursuant to 42 U.S.C. § 1983, and the Equal Protection Clause, U.S. Const. Amend. XIV. Defendants argue that plaintiffs' state law actions, which arose under state statute, preclude the present section 1983 claims. Plaintiffs respond

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:07-cv-03498-AKH    Document 7-3    Filed 07/02/2007    Page 7 of 17

Not Reported in F.Supp.2d                                          Page 7
Not Reported in F.Supp.2d, 2004 WL 736988 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

that the state court actions involved alleged discrimination that each of them alone suffered, whereas the present action implicates a " wider set of transactions and/or connected series of transactions" , inasmuch as the plaintiffs in this action collectively show an " invidious pattern, policy and custom of discrimination" . (Plaintiffs' Mem. at pp. 4-5, 10) Goldberg, Miller, Pascucci, Sands, and Sternberg each submit affidavits discussing the allegedly discriminatory conduct pursued by the defendants. (*Attached at* Affirmation of Joseph A. Turco, Esq. in Opposition to Defendants' Motion to Dismiss (" Turco Affirmation" ) Exs. A, C, D, E, F) They further contend that the state court actions implicated the elements of a *prima facie* case of age discrimination, whereas the present action reflects official policy responsible for a deprivation of rights protected by the Constitution. (Plaintiffs' Mem. at 11, *citing Monell v. Dep't of Soc. Services of the City of New York*, 436 U.S. 658, 98 S.Ct. 2018 (1978))

New York adopts a transactional approach to *res judicata*. " Under this analysis, a variation in the facts alleged, legal theories asserted, or relief sought in the new pleadings generally will not affect the result, because separately stated causes of action ' may nevertheless be grounded on the same gravamen of the wrong upon which the action is brought." ' *Tri-State Sol-Aire Corp. v. Gold & Wachtel, Esqs.*, 241 A.D.2d 457, 458, 659 N.Y.S.2d 509, 510 (2d Dep't 1997), *quoting Matter of Reilly v. Reid*, 45 N.Y.2d 24, 29, 379 N.E.2d 172, 175, 407 N.Y.S.2d 645, 648 (N.Y.1978). *Accord Yoon v. Fordham Univ. Faculty & Admin. Ret. Plan*, 263 F.3d 196, 200 (2d Cir.2001); *Cold Harbor Spring Civic Area Ass'n*, 305 A.D.2d at 445, 762 N.Y.S.2d at 393, (2d Dep't 2003); *Marinelli Associates v. Helmsley-Noyes Co.*, 265 A.D.2d 1, 5, 705 N.Y.S.2d 571, 574 (1st Dep't 2000).

In *Migra v. Warren City School District Board of Education*, 465 U.S. 75, 104 S.Ct. 892 (1984), the Supreme Court evaluated the preclusive effect of a state court judgment in the context of a subsequent section 1983 suit brought in federal court. The plaintiff, a public school employee, first filed an action in Ohio state court based on breach of contract and wrongful interference. *See* 465 U.S. at 78-79, 104 S.Ct. at 894-95. Plaintiff succeeded on her contract claim, but her tort claim was dismissed without prejudice. *See* 465 U.S. at 78-79, 104 S.Ct. at 895. Plaintiff's subsequent section 1983 and 1985 action, filed in federal district court, alleged that defendants had fired her in violation of her First, Fifth, and Fourteenth Amendment rights, and that her firing was motivated by defendants' hostility toward plaintiff's proposed plan for desegregating district elementary schools. *See* 465 U.S. at 79-80, 104 S.Ct. at 895. Citing to 28 U.S.C. section 1738 and the Full Faith and Credit Clause, U.S. Const. Art. IV § I, the Supreme Court observed that " [i]t is now settled that a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." 465 U.S at 81, 104 S.Ct. at 896. Plaintiff argued that state court judgment should preclude section 1983 suits " only as to issues actually litigated in state court." 465 U.S at 83, 104 S.Ct. at 897. The Supreme Court noted:

\*9 [Section 1983] embodies the view that it is more important to give full faith and credit to state-court judgments than to ensure separate forums for federal and state claims. This reflects a variety of concerns, including notions of comity, the need to prevent vexatious litigation, and a desire to conserve judicial resources.... Section 1983 ... does not override state preclusion law and guarantee petitioner a right to proceed to judgment in state court on her state claims and then turn to federal court for adjudication of her federal claims. We hold, therefore, that petitioner's state-court judgment in this litigation has the same preclusive effect in federal courts that the judgment would have in the Ohio state court.

465 U.S. at 84, 85, 104 S.Ct. at 898.

The Second Circuit has twice applied *res judicata* to employment discrimination claims that New York state courts dismissed as time barred. In *Bray v. New York Life Insurance*, 851 F.2d 60, 62 (2d Cir.1988), the Second Circuit affirmed Judge Duffy's dismissal of the plaintiff's claims under Title VII and 42 U .S.C. § 1981, on the basis that a prior dismissal by the New York Supreme Court required the application of *res judicata*. Plaintiff's state court action was dismissed as untimely by a one-day margin. *See id.* at 61-62. The Second Circuit agreed with the district court that the state court's dismissal had preclusive effect in New York courts, and therefore barred the subsequent federal action. *See id.* at 62. The Second Circuit observed:

Because New York treats a dismissal on statute of limitations grounds as a final judgment on the merits for *res judicata* purposes, [plaintiff] is precluded from relitigating her sex and race discrimination claims in federal court. We recognize the unfairness of precluding Bray from having a court reach the

Not Reported in F.Supp.2d                                                                                                      Page 8
Not Reported in F.Supp.2d, 2004 WL 736988 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

merits of her claim, but there is no principled basis upon which to distinguish her case from the governing New York law.... Once a plaintiff has entered the state court system, she is bound by the preclusion rules governing that system, and the federal courts in turn must respect the finality of the judgments that issue from the state courts.

*Id.* at 64. Likewise, in *Kirkland v. City of Peekskill,* 828 F.2d 104, 109 (2d Cir.1987), the Second Circuit viewed, *inter alia,* dismissals of the plaintiff's claims in the New York court system as " in effect dismissals on the merits", which precluded the plaintiff's subsequent federal action alleging violations of 42 U.S.C. §§ 1981, 1983, 1985, 1986, and assorted state laws. In *Kirkland,* the plaintiff's state court dismissals arose in part because the plaintiff's claims were time barred. *See id. Cf. EFCO Corp. v. U.W. Marx, Inc.,* 124 F.3d 394, 397-98 (2d Cir.1997) (applying *res judicata* to federal action when New York court dismissed similar common-law claims on statute of limitations grounds); *Plaut v. Spendthrift Farm, Inc.,* 514 U.S. 211, 228, 115 S.Ct. 1447, 1457 (1995) (" The rules of finality, both statutory and judge made, treat a dismissal on statute-of-limitations grounds the same way they treat a dismissal for failure to state a claim, for failure to prove substantive liability, or for failure to prosecute: as a judgment on the merits." ).

*10 There is no genuine question of material fact that plaintiffs Goldberg, Miller, Pascucci, Sands, and Sternberg brought causes of action in the New York Supreme Court seeking money damages for the allegedly discriminatory conduct of the defendants in this action. As noted above, each of the complaints was dismissed without opposition from the plaintiffs. Plaintiffs' effort to distinguish the factual allegations in the present lawsuit from the state court actions is unavailing. Plaintiffs argue that the claims brought by Goldberg, Miller, Pascucci, Sands, and Sternberg should be viewed within a larger series of allegedly discriminatory transactions. (Plaintiffs' Mem. at 9-10, 11-12) However, as noted above, the presence of additional plaintiffs, and even a different theory of liability, is insufficient to avoid the " transactional approach" of New York's law of *res judicata.* Additionally, plaintiffs' argument that their section 1983 claims must be distinguished from the state claims because the present action seeks to hold defendants liable for official policy or custom contradicts *res judicata'* s teachings that a second action cannot stand solely because it is based on a different legal theory. Nor can plaintiffs distinguish the present action from their state lawsuits on the basis of current punitive damages claims. (Plaintiffs' Mem. at 14-15) Each of the plaintiffs in question sought punitive damages in their state court actions. (*Goldberg* Complaint subparagraph f, *Miller* Complaint subparagraph f, *Pascucci* Complaint subparagraph f, *Sands* Complaint subparagraph f; *Sternberg* Complaint subparagraph f) Punitive damages are available under the Administrative Code, though they are unavailable for Human Rights Law claims. *See, e.g.,* N.Y. City Admin. Code § 8-502(a); *Umansky v. Masterpiece Int'l, Ltd.,* 276 A.D.2d 692, 693, 715 N.Y.S.2d 638, 639 (2d Dep't 2000), citing *Hirschfeld v. Institutional Investor, Inc.,* 208 A.D.2d 380, 617 N.Y.S.2d 11 (1st Dep't 1994); *see also Farias v. Instructional Sys., Inc.,* 259 F.3d 91, 101 (2d Cir.2001). I also reject plaintiffs' argument that section 1983 actions are exempt from the standard *res judicata* bar, as *Migra* clearly shows. Lastly, I reject plaintiffs' contention that even if *res judicata* applies, Goldberg, Miller, Pascucci, Sands, and Sternberg should remain in this action " based on the supporting facts of the fourteen other plaintiffs joined and other persons not party to the action." (Plaintiffs' Mem. at 13) Without viable causes of action, these plaintiffs may not pursue claims based on the injuries of other plaintiffs.

As noted *supra,* New York courts treat a dismissal on statute of limitations grounds as a dismissal on the merits. Because of the preclusive effect of the state court dismissals, all other claims between the parties or their privies arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy. The holding of *Migra, supra,* and its application in *Bray* and *Kirkland* require that the section 1983 claims brought by Goldberg, Miller, Pascucci, Sands, and Sternberg be dismissed. Because Miller's claims are dismissed on *res judicata* grounds, I do not need to address defendants' arguments regarding Miller's waiver of claims. Lastly, because Pascucci's claim is dismissed, defendant La Cerra also is dismissed from this action, because La Cerra was a defendant based only on Pascucci's allegations.

*Compliance with Statutory and Administrative Requirements*

*11 Defendants contend that the claims of defendants Magaldi, Mauskopf, and Schwartz are untimely under the ADEA, and that they should therefore be

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:07-cv-03498-AKH   Document 7-3   Filed 07/02/2007   Page 9 of 17

Not Reported in F.Supp.2d                                                                                              Page 9
Not Reported in F.Supp.2d, 2004 WL 736988 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

dismissed from this action.

The ADEA requires that before a plaintiff brings suit under that statute, he or she must file a charge with the Equal Employment Opportunity Commission (" EEOC" ). 29 U.S.C. § 626(d). In New York, the EEOC charge must be filed within 300 days of the allegedly discriminatory incident. 29 U.S.C. §§ 626(d)(2), 633(b). This is because under the ADEA's statutory scheme, New York is a so-called " deferral state" , one that maintains its own agency for remedying age discrimination claims. *See Hodge v. New York Coll. of Podiatric Med.,* 157 F.3d 164, 166 (2d Cir.1998).

In addition to timeliness, defendants also argue that Mauskopf failed to administratively exhaust aspects of her claim, that Schwartz fails to produce issues of fact sufficient to survive summary judgment, and that Schwartz failed to place the EEOC on proper notice of her religious discrimination claim.

### A. *Magaldi*

In a stipulation and settlement that Magaldi signed on March 28, 2001, she " agree[d] to retire from her employment" with the Board of Education, effective October 16, 2001. (Marie Magaldi, Post-Charge Stipulation of Settlement ¶ 1 (" Stipulation" ), *attached at* Cote Declaration Ex. D) The Complaint alleges that stress and subsequent health problems caused by defendants' discrimination forced her to retire. (Complaint ¶ 154) In essence, Magaldi frames her retirement as a matter of constructive discharge.

The law of this Circuit holds that where, as here, an employee alleges constructive discharge, the time bar on an employment discrimination claim begins to accrue when the employee gives formal notice of retirement. In *Flaherty v. Metromail Corp.,* 235 F.3d 133, 138 (2d Cir.2000), the Second Circuit held that only an employee can determine the point in time " when the atmosphere has been made so intolerable by the discrimination-motivated employer that the employee must leave." In *Flaherty,* the plaintiff stated on June 12, 1997 that she would retire on November 1 that year. *See id.* at 139. The Second Circuit considered the June 12 date controlling for the purposes of the accrual date for plaintiff's EEOC filing deadline. *See id.*

Hence, under *Flaherty,* Magaldi's 300-day accrual window may have begun to toll on March 28, 2001, a date that would bar Magaldi from bringing a claim related to her termination, because she filed her EEOC charge of discrimination on August 29, 2002, well more than 300 days after she signed the Stipulation. (Marie Magaldi, Charge of Discrimination (" Magaldi EEOC Charge" ), *attached at* Cote Declaration Ex. E)

Plaintiffs make two arguments in opposition to calculating the governing date from March 28, 2001: first, plaintiffs argue that the defendants' conduct constituted a continuing violation through Magaldi's retirement date on November 16, 2001, specifically including a comment made on November 13, 2001. (Plaintiffs' Mem. at 17; Affidavit of Marie Magaldi (" Magaldi Affidavit" ) ¶ 25, *attached at* Turco Affirmation Ex. G) Second, plaintiffs argue that Magaldi's retirement agreement is invalid because it does not satisfy the elements to effectuate waiver under the Older Worker Benefits Protection Act (" OWBPA" ), 29 U.S.C. § 626(f)(1), which sets forth eight factors necessary to waive any right or claim under the ADEA. (Plaintiffs' Mem. at 18-19)

*12 I address these contentions in turn.

#### *1. Timeliness of Magaldi's EEOC Charge*

Plaintiffs argue that " adverse actions by defendants occurred on or after November 2, 2001 (the 300-day mark) ..." , which postdate Magaldi's March 28, 2001 notice, and, they argue, push back the triggering date of the 300-day window for filing the EEOC charge. (Plaintiffs' Mem. at 19) Magaldi's affidavit states that through November 16, 2001, she was denied teaching assignments, assigned to a roach-infested office, and given " the most menial" clerical tasks. (Magaldi Affidavit ¶ 20) Magaldi claims that through November 16, 2001, she " was ostracized and treated like an outcast," and that she consistently continued to seek a classroom teaching position, without success. (Magaldi Affidavit ¶ 24) She asserts that on November 13, 2001, she heard Grippo's secretary make a comment hostile to hiring job applicants older than 40. (Magaldi Affidavit ¶ 25) Magaldi also states that on November 16, 2001, she was told that she would be ineligible for employment by the Department of Education because her profile contained an " unsatisfactory" rating, even though the March stipulation and settlement required that the " unsatisfactory" rating would be withdrawn. (Magaldi Affidavit ¶ 31)

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                              Page 10
Not Reported in F.Supp.2d, 2004 WL 736988 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

In *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002), the Supreme Court ruled that, for purposes of assessing whether a claim is time-barred under Title VII, 42 U.S.C. § 2000e *et seq.*, " [e]ach discrete discriminatory act starts a new clock for filing charges alleging that act. The charge, therefore, must be filed within the 180- or 300-day time period after the discrete discriminatory act occurred." The Supreme Court determined that incidents that occurred within the 300 days before plaintiff filed his EEOC charge were actionable, but that all prior discrete discriminatory acts were untimely filed, and therefore not actionable. *See id.* at 114-15. Although *Morgan* based its determination on the statutory language of Title VII, Judge Koeltl in *Coffey v. Cushman & Wakefield, Inc.,* 2002 WL 1610913 at *3 (S.D.N.Y. July 22, 2002), ruled that the *Morgan* criteria for determining the timeliness of Title VII claims also applies to ADEA claims, *citing Flaherty,* 235 F.3d at 137 n. 1. *Accord Bailey v. Synthes,* 295 F.Supp.2d 344, 353 (S.D.N.Y.2003) (Swain, J.); *Marinelli v. Chao,* 222 F.Supp.2d 402, 415 (S.D.N.Y.2002) (Marrero, J.) (noting in dictum that *Morgan'*s approach " would seem to apply equally to ADEA and Rehabilitation Act claims" ).

*Morgan* also addressed an argument made in plaintiffs' response to defendants' motion: that defendants' actions implicate a " continuing violation" of Magaldi's rights. As set forth by *Morgan,* 536 U.S. at 115-121, to assert a continuing violation of the ADEA, separate incidents must be part of one unlawful employment practice, and any act that occurs within 300 days of the EEOC charge will implicate acts otherwise outside of the mandatory filing deadlines. *See id.* at 117-18. " ' [C]ompleted acts such as a termination through discharge or resignation, a job transfer or discontinuance of a particular job assignment, are not acts of a ' continuing' nature.... Nor can a continuing violation be established merely because the claimant continues to feel the effects of a time-barred discriminatory act or merely because the claimant continues his or her employment...." ' *Marinelli,* 222 F.Supp.2d at 413 (S.D.N.Y.2002), *quoting Little v. Nat'l Broad. Co.,* 210 F.Supp.2d 330, 366 (S.D.N.Y.2002); *see also Morgan,* 536 U.S. at 114 (categorizing " termination, failure to promote, denial of transfer, [and] refusal to hire" as discrete acts, which are different in kind from hostile environment claims that implicate the continuing violation doctrine). " [A] continuing violation may be found where there is proof of specific ongoing discriminatory policies or practices, or ' where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice." ' *Quinn v. Golden Tree Credit Corp,* 159 F.3d 759, 766 (2d Cir.1998), *quoting Cornwell v. Robinson,* 23 F.3d 694, 704 (2d Cir.1994). " The courts of this Circuit have generally been loath to invoke the continuing violation doctrine and will apply it only upon a showing of ' compelling circumstances." ' *Falinski v. Kuntz,* 38 F.Supp.2d 250, 257 (S.D.N.Y.1999).

*13 Magaldi's claims in this action are of a variety that falls under the banner of discrete discriminatory acts, each of which begins the accrual of a separate 300-day window. Her reassignment to the Personnel Office of District 20 in December, 2000 (Complaint ¶¶ 145, 151), the allegedly false charges brought in February, 2001 (Complaint ¶ 153), the retirement that she noticed in March, 2001 (Complaint ¶ 154; Stipulation ¶ 1), and the " unsatisfactory" ratings that she received (Complaint ¶¶ 143-144) are the type of " discrete events" that require separate grievances and cannot be classified as continuing violations. *See, e.g., Hernandez,* 2003 WL 22309326 at *15 (unlawful termination, discriminatory job assignments, and inadequate pay are discrete incidents that must be grieved separately; unwarranted evaluations held discontinuous in time and not part of a " continuous violation" ); *Bailey,* 295 F.Supp.2d at 353 (unwarranted criticisms and crude sexist comments " are discrete acts that cannot be lumped together to form a ' continuing violation" ' ).

Moreover, a continuing violation must be " clearly asserted both in the EEOC filing and in the complaint." *Miller v. Int'l Telephone & Telegraph Corp.,* 755 F.2d 20, 25 (2d Cir.), *cert. denied,* 474 U.S. 851 (1985); *accord White v. Whitman,* 2002 WL 776589 at *16 (S.D.N.Y. Apr. 26, 2002). The cover sheet of Magaldi's EEOC charge requested that she indicate whether the defendants' alleged discrimination was of a continuing nature. She made no such indication. Reviewing Magaldi's EEOC charge in the light most favorable to her, I conclude that it does not allege a continuing violation. Rather, in its narrative of the underlying events, the charge alleges " discriminatory actions" specific to her that include " four false charges," reassignment to a personnel office, two allegedly discriminatory comments, and being " forced to retire." (Magaldi

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:07-cv-03498-AKH   Document 7-3   Filed 07/02/2007   Page 11 of 17

Not Reported in F.Supp.2d	Page 11
Not Reported in F.Supp.2d, 2004 WL 736988 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

EEOC Charge Schedule A) Plaintiff's EEOC charge references the allegedly discriminatory experiences of other teachers, but they are not described as part of a continuing violation. Indeed, neither these nor Magaldi's own injuries are " clearly asserted" , *Miller, supra,* as part of a continuing violation. Additionally, plaintiffs have not pointed to any text in the Complaint that clearly asserts a continuing violation, nor did I find any such indications during my own review of the Complaint.

Hence, Magaldi's August 29, 2002 charge with the EEOC applies to discrete discriminatory acts that occurred within the 300 days prior to her EEOC filing. Defendants argue that the factual allegations that fall within that 300-day window-that is, events that occurred after November 2, 2001-are insufficient to show materially adverse changes under the ADEA. As stated, however, in *Terry v. Ashcroft,* 336 F.3d 128, 138 (2d Cir.2003), materially adverse changes " include ' termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices ... unique to a particular situation," ' quoting *Galabya v. New York City Bd. of Educ.,* 202 F.3d 636, 640 (2d Cir.2000). In light of the facts put forth in the Magaldi Affidavit, and drawing all reasonable inferences in her favor, I conclude that there are genuine questions of material fact as to whether she suffered from actionable discriminatory conduct within the 300 days prior to her EEOC charge, and whether they are sufficient to satisfy *Terry'* s criteria. I conclude that Magaldi survives summary judgment for the purpose of maintaining her action for discrete acts of discrimination that occurred subsequent to November 2, 2001 EEOC charge, and that defendants' motion is therefore granted in part and denied in part.

### 2. The OWBPA and the Parties' Performance Under Magaldi's Stipulation

*14 Plaintiffs also argue that the March 28, 2001 notice of retirement is not operative because it was contained in an agreement that failed to comply with the requirements of the OWBPA, 29 U.S.C. § 626(f)(1).[FN3] Although strict compliance with the OWBPA is essential to the validity of an ADEA waiver, see *Oubre v. Entergy Operations, Inc.,* 522 U.S. 422, 427 (1998), the issue in dispute here is not the validity of Magaldi's waiver of claim, but the notice of retirement contained within the stipulation. The OWBPA " provides minimum conditions under which a waiver of rights under the ADEA will be considered knowing and voluntary ..." *Branker v. Pfizer, Inc.,* 981 F.Supp. 862, 867 (S.D.N.Y.1997). In their reply brief, the defendants acknowledge that the agreement does not comport with the OWBPA, but argue that any deficiencies under the OWBPA go to Magaldi's ability to be bound by her waiver, and do not affect the date at which her claim of constructive discharge began to accrue. (Defendants' Reply Memorandum of Law in Further Support of their Motion for Dismissal or Summary Judgment (" Reply Mem." ) at 8)

> FN3. Plaintiff argues that the stipulation violated five of the OWBPA's requirements, insofar as the OWBPA requires that: (1) the release agreement refers to rights or claims under the ADEA; (2) the employee waives her rights or claims in exchange for consideration in addition to anything of value to which the individual already is entitled; (3) the employee must be advised in writing that she must consult with an attorney prior to executing the agreement; (4) the employee must be given 21 days (or sometimes up to 45 days) to consider the agreement; and (5) the agreement must allow 7 days for the employee to revoke it. (Plaintiffs' Mem. at 18)

While failure to comply with the statutory mandate of the OWBPA negates the effectiveness of an ADEA waiver, waivers are generally creatures of contract. Without evaluating the effect of the ineffective ADEA waiver on the remaining terms of the contract, I conclude that there are disputed issues of material fact sufficient to preclude summary judgment concerning Magaldi's retirement notice, and that further discovery could be helpful to determine the nature and effect of her notice. The Stipulation provided that Magaldi would retire on October 16, 2001, and that " [i]n satisfaction" of that act, Grippo would, *inter alia,* change the unsatisfactory rating in Magaldi's personnel file to a rating of satisfactory. (Stipulation ¶¶ 1, 4) Magaldi states that she signed the Stipulation based on the Department of Education's promise that the " unsatisfactory" rating would be expunged from her work file, but alleges that the " unsatisfactory" rating was not, in fact, expunged, and remained there as of December 9, 2003. (Magaldi Affidavit ¶¶ 27-28, 31-32, 34, 40) The defendants' failure to remove the unsatisfactory

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:07-cv-03498-AKH   Document 7-3   Filed 07/02/2007   Page 12 of 17

Not Reported in F.Supp.2d                                                                                          Page 12
Not Reported in F.Supp.2d, 2004 WL 736988 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

rating, if true, raises questions of material fact as to whether the parties have performed under the Stipulation.

The Stipulation made clear that Magaldi's resignation was " effective *only if this Stipulation is fully executed.*" (Stipulation ¶ 1) An executed contract has been defined as both: " 1. A contract that has been fully performed by both parties. 2. A signed contract." Black's Law Dictionary 321 (7th Ed.1999). If the Stipulation's use of the word " executed" implicates the parties' adherence to the Stipulation, defendants' alleged failure to remove the " unsatisfactory" rating from her work file may militate against the effectiveness of her retirement notice.

Moreover, the Stipulation stated that Magaldi's retirement would commence on October 16, 2001. (Stipulation ¶ 1; Stipulation Ex. A) The Complaint, however makes reference to Magaldi continuing work for the Department of Education through *November* 16, 2001. (Complaint ¶ 154) Magaldi's affidavit recounts specific conversations that allegedly occurred in the workplace on November 13 and 16, 2001 (Magaldi Affidavit ¶¶ 25, 30) and she submits to the Court a pay stub from the City of New York for the pay period of 11/1/01 through 11/15/01, with the words " Last Check" handwritten on it. (Turco Affirmation Ex. K) Apparently, the extended term arose after a May 18, 2001 letter in which Magaldi contacted Grippo seeking a one-month extension of her retirement date. (Reply Mem. at 7 n. 4)

*15 The apparent inconsistencies between the Stipulation's terms and the parties' conduct thereunder warrant factual development that could illuminate the parties' performance of the Stipulation, and the consequential validity of Magaldi's retirement notice. Further factual development will help determine whether the Stipulation constituted an effective communication of Magaldi's intention to resign, or perhaps something less. As summary judgment as pertaining to Magaldi's termination is denied because of questions regarding the parties' compliance with the Stipulation, I do not decide whether failure to comply with OWBPA affects the retirement notice contained therein.

Defendants' summary judgment motion against Magaldi is granted as to incidents that occurred more than 300 days prior to the filing of Magaldi's EEOC charge, but is denied as to discrete incidents that occurred within 300 days before the filing of Magaldi's EEOC charge. Summary judgment is denied for claims related to the termination of Magaldi's employment.

B. *Mauskopf*

Defendants argue that Mauskopf's claims must be dismissed as untimely. According to the Complaint, Mauskopf went on a sabbatical leave of absence from 1998 to 2002. (Complaint ¶¶ 184-85) The Complaint states that in June, 2002, Mauskopf informed defendants that she was prepared to return to work. (Complaint ¶ 189) That June, the Complaint alleges, Mauskopf was given notice for the first time that she had been terminated as of September, 1999. (Complaint ¶ 189; Mauskopf Affidavit ¶ 35, *attached at* Turco Affirmation Ex. H) Mauskopf filed a charge of discrimination with the EEOC on August 29, 2002. (Mauskopf Charge of Discrimination (" Mauskopf EEOC Charge" ) *attached at* Cote Declaration Ex. F)

Defendants argue that Mauskopf's August, 2002 EEOC charge is time-barred because it was filed more than 300 days after the allegedly discriminatory firing in 1999. In addition, defendants argue that the August, 2002 EEOC charge did not include mention of Mauskopf's termination, which precludes that termination from being considered in the present action.

*1. Timeliness of Mauskopf's EEOC Charge*

The defendants' argument that Mauskopf's claim began to accrue in 1999 is unavailing. Unlike Magaldi's claims, which involved allegations of constructive discharge from employment, Mauskopf received definite notice of termination. In a discriminatory discharge case in which the employer informs the employee of a decision to terminate, the limitations period begins to run on the date that the employer gives definite notice of that decision to the employee, not upon the formal date of the employee's discharge. *See, e.g., Chardon v. Fernandez,* 454 U.S. 6, 8, 102 S.Ct. 28, 29 (1981) (per curiam); *Miller,* 755 F.2d at 23. Defendants have made no representation that Mauskopf was previously made aware of her allegedly discriminatory termination, as was the case in, for example, *Delaware State College v. Ricks,* 449 U.S. 250, 101 S.Ct. 498 (1980). For the purposes of this motion, the timeliness Mauskopf's

Case 1:07-cv-03498-AKH   Document 7-3   Filed 07/02/2007   Page 13 of 17

Not Reported in F.Supp.2d                                                                                                          Page 13
Not Reported in F.Supp.2d, 2004 WL 736988 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

EEOC charge, as pertaining to her termination, is calculated from June, 2002.

*16 The EEOC charge alleges acts of discrimination occurring from 1995 through April, 2002, but it includes no mention of the allegedly discriminatory discharge, of which Mauskopf states she was informed in June, 2002. (Mauskopf EEOC Charge Schedule A) In Mauskopf's EEOC charge, the only occurrences that clearly fall within the 300-day statutory timeframe involve a March 20, 2002 hearing in which Mauskopf appealed a rating of "unsatisfactory," and a subsequent decision on that hearing that was issued April 24, 2002. (Mauskopf EEOC Charge Schedule A) [FN4] Magaldi also states in her affidavit that defendants falsified various documents pertaining to the March, 2002 hearing. (Mauskopf Affidavit ¶ 33) As noted in the preceding discussion of Magaldi's claims, under the approach of *Morgan*, 536 U.S. at 113, as applied to the ADEA by *Coffey*, 2002 WL 1610913 at *3, and other rulings in this district, Mauskopf had a 300-day period following each discrete discriminatory incident to file a charge with the EEOC. Once those 300-day periods lapsed, the claims became time barred. *See Morgan* at 113-14.

> FN4. In her EEOC charge, Mauskopf checked boxes indicating that she believed she had been discriminated against on the basis of religion, age, retaliation, and national origin. (Mauskopf EEOC Charge). Mauskopf also alleged in her EEOC charge that, among other things, she received derogatory letters from her principal, Barbara Jeby; that she was brought up on serious charges, including corporal punishment; that she was exonerated from those charges; that classroom materials she ordered were "sabotaged" and sometimes distributed to other classes; that she was the target of "impromptu" classroom visits and "ridiculous" observation reports; and that the cumulative effect of these incidents affected her health to such a degree that a doctor advised her to discontinue working. (Mauskopf EEOC Charge Schedule A). Mauskopf's EEOC charge also alleges discrimination because she was not of Italian heritage or a Roman Catholic. (Mauskopf EEOC Charge Schedule A).

As with Magaldi, Mauskopf's invocation of the continuing violation doctrine is unavailing. The Complaint's allegations include, *inter alia*, retaliatory actions by school officials (Complaint ¶ 160, 164, 170), suspension from teaching and job reassignment (Complaint ¶¶ 162, 166), discriminatory performance reviews (Complaint ¶¶ 165), and the filing of false charges. (Complaint ¶¶ 168, 179-181) Such incidents are typically discrete acts of discrimination. The actions continued through October 20, 1998, at which point Mauskopf applied for a sabbatical leave. (Complaint ¶ 184) While on sabbatical, Mauskopf was on leave without pay, and provided relevant documentation regarding unpaid leave. (Complaint ¶ 185) The Complaint-as well as the EEOC charge, which is vague as to the timing of the incidents alleged-does not allege any further meaningful interaction between the parties until March, 2002, when Mauskopf observed in a hearing to reverse her "Unsatisfactory" rating that Defendants had falsified documents in her personnel file. (Complaint ¶ 188) Unlike Magaldi, Mauskopf's EEOC charge *did* include a check mark in the appropriate box indicating that the alleged discrimination was of a continuing nature. (Mauskopf EEOC Charge) That check mark is not conclusive, however. Even assuming, *arguendo*, that the events from 1993-1998 constituted a "continuing violation", that violation lapsed in the roughly 3 1/2 years that intervened from when Mauskopf commenced her sabbatical until the time of the March, 2002 hearing. *See, e.g., Quinn*, 159 F.3d at 766 (2d Cir.1998) (continuing violation not found when incidents occurred at varying intervals over a five-year time span); *Oshinsky v. New York City Hous. Auth.*, 2000 WL 218395 at *9 (S.D.N.Y. Feb. 23, 2000) (two-year lapse between allegedly discriminatory incidents precluded application of continuing violation doctrine; "Having failed to meet the standard for applying the continuing violation doctrine, plaintiff cannot now require defendants to defend claims arising from employment practices that are long past. The continuing violation doctrine does not exist to give an employee who allowed a legitimate claim to lapse a second chance to file the claim.") (internal quotation marks omitted). Plaintiff cannot claim a "continuing violation" when a lapse of roughly 3 1/2 years existed between alleged discriminatory conduct. Mauskopf raises no triable issues of fact that would somehow bridge the gap between these acts of discrimination.

*17 Viewing the facts alleged in the light most favorable to the non-moving party, I assume as fact

Not Reported in F.Supp.2d                                                                                                                Page 14
Not Reported in F.Supp.2d, 2004 WL 736988 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

Mauskopf's allegation that she was informed of her discharge in June, 2002. (Complaint ¶ 189; Mauskopf Affidavit ¶ 35) Mauskopf's August 29, 2002 charge with the EEOC clearly was filed within the 300-day statutory limit. The key question is whether the failure to set forth the allegedly discriminatory termination in the EEOC filing is fatal to Mauskopf's action insofar as it involves termination for allegedly discriminatory reasons.

*2. Administrative Exhaustion and the "Reasonable Relatedness" Concept*

As a prerequisite to bringing suit under the ADEA, a plaintiff must file a charge with the EEOC or a state agency capable of granting relief from the allegedly discriminatory practice. *See Holtz v. Rockefeller & Co.,* 258 F.3d 62, 82-83 (2d Cir.2001), citing 29 U.S.C. §§ 626(d), 633(b). " Exhaustion of remedies is a precondition to suit, and a plaintiff may raise in a district court complaint only those claims that either were included in or are ' reasonably related to' the allegations contained in her EEOC charge." *Id.* at 83 (internal citation omitted). A claim raised for the first time in district court is " reasonably related" to allegations in an EEOC charge where, among other things, " the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Id.*[FN5] The Second Circuit has described this as " essentially an allowance of loose pleading." *Id., quoting Butts,* 990 F.2d at 1402.

> FN5. The Second Circuit also has held it appropriate for courts to consider actions not incorporated in an EEOC charge when a complaint alleges employer retaliation for the EEOC charge, or where the complaint alleges further incidents of discrimination carried out in precisely the manner alleged in the EEOC charge. *Butts v. New York Dep't of Housing Preservation & Development,* 990 F.2d 1397, 1402 (2d Cir.1993).

There is no readily apparent explanation as to why notice of Mauskopf's allegedly discriminatory termination was not included in her EEOC charge. Nevertheless, I do not find it sufficient to bar Mauskopf's claim for a lack of administrative exhaustion, and believe that it is " reasonably related" to the allegations in her EEOC charge. The discharge would fall within the scope of the EEOC investigation growing out of Mauskopf's charge, inasmuch as the discharge occurred prior to the EEOC filing, and could be considered reasonably related to the March, 2002 hearing that evaluated Mauskopf's employee rating. *See, e.g., Coffey v. Cushman & Wakefield,* 2002 WL 1610913, at *6 (S.D.N.Y. July 22, 2002) (although plaintiff's EEOC charge did not allege constructive discharge, the source of discrimination that caused constructive discharge involved same type of discrimination as alleged in EEOC charge, and thus could reasonably be expected to grow out of EEOC investigation); *Sklar v. New York Life Ins. Co.,* 2001 WL 984724, at *4 (S.D.N.Y. Aug. 27, 2001), aff'd, 34 Fed. Appx. 403 (2d Cir.2002), cert. denied, 537 U.S. 1126 (2003) (plaintiff's claim regarding employer's failure to issue him group life insurance reasonably related to EEOC charge stating he had been discharged due to age discrimination); *Pellei v. Int'l Planned Parenthood Federation/Western Hemisphere Region, Inc.,* 1999 WL 787753, at *5 (S.D.N.Y. Sept. 30, 1999) (plaintiff's claims regarding employment evaluations, promotions, and assignments deemed reasonably related to EEOC charge involving denial of plaintiff's opportunity to improve his station with the employer); *Peterson v. Ins. Co. of North America,* 884 F.Supp. 107, 111 (S.D.N.Y.1995) (plaintiff's claims of promotion denials reasonably related to EEOC charge alleging constructive discharge because promotion issues would have surfaced during course of discharge.[FN6]

> FN6. Defendants are correct in noting that conflicting authority exists in this district as to whether an incident must occur subsequent to an EEOC charge in order to be deemed " reasonably related" to the issues presented in an EEOC charge. *Compare Hall v. City of New York,* 2002 WL 472057 at *4 (S.D.N.Y. Mar. 27, 2002) (Lynch, J.) (" [T]he ' reasonably related' doctrine does not excuse a failure to include in an administrative complaint allegations about discriminatory acts that had already occurred at the time the complaint is filed." ) *with Coffey,* 2002 WL 1610913 at *6 (indicating that termination claim in a lawsuit could be considered reasonably related to EEOC charge in part because " plaintiff had also been terminated before she filed her EEOC Charge." ). Though, as *Hall* notes, the Second Circuit has made observations regarding the administrative

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:07-cv-03498-AKH   Document 7-3   Filed 07/02/2007   Page 15 of 17

Not Reported in F.Supp.2d                                                                                                  Page 15
Not Reported in F.Supp.2d, 2004 WL 736988 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

efficiency of considering post-charge incidents as reasonably related to claims made in an earlier charge, *see Butts,* 990 F.2d at 1401, *Malarkey v. Texaco, Inc.,* 983 F.2d 1204, 1208 (2d Cir.1993), this Court is unaware of any Second Circuit holding that an incident can be " reasonably related" to an EEOC charge only if it occurred subsequent to the charge's filing. Such a position would seem to run counter to *Butts'* s axiom that the reasonable relatedness concept is " essentially an allowance of loose pleading." 990 F.2d at 1401.

*18 Those portions of Mauskopf's claims that fall outside the 300-day window are dismissed as time barred. Defendants' motion for summary judgment is denied as to discrete incidents of discrimination that arose within 300 days prior to the filing of Mauskopf's EEOC charge, specifically including Mauskopf's termination.

### C. *Schwartz*

Schwartz brings one claim under Title VII alleging that she was discriminated against on the basis of her religion. (Complaint ¶¶ 476-79) She also brings two claims pursuant to the ADEA, alleging retaliation and age discrimination. (Complaint ¶¶ 468-75) Defendants argue that Schwartz's claims should be dismissed because she fails to state a claim alleging disparate treatment based on religion, or, in the alternative, that her claims should be dismissed because they are untimely pursuant to Title VII and the ADEA.

On September 18, 2002, Schwartz filed an EEOC charge alleging discrimination on the basis of religion, age, retaliation, and national origin. (Schwartz Charge of Discrimination (" Schwartz EEOC Charge" ), *attached at* Cote Declaration Ex. P) The charge detailed that, among other things, she was the " victim[ ] of a conscious scheme of discrimination against aging teachers" and that she was injured by the preferential treatment of teachers of Italian descent and Roman Catholic religious persuasion. (Schwartz EEOC Charge, Schedule A) She claimed that when she protested her treatment, she experienced further discrimination. (Schwartz EEOC Charge, Schedule A)

In the Complaint, Schwartz alleges a series of actions that occurred between 1989 and January 11, 2002. (Complaint ¶¶ 342-59) The incident of January 11, 2002 involved a meeting between Schwartz and Grippo. (Complaint ¶ 359) At that meeting, Grippo greeted Schwartz by her maiden name, " Ms. Pacella." (Complaint ¶ 359) The complaint alleges that Grippo's use of her Italian-sounding maiden name instead of her actual name, Schwartz, fell within a pattern of district officials refusing to use her married name because of discriminatory animus based on religion. (Complaint ¶¶ 349-50, 358-59) She alleges that Grippo made her a target of harassment because she was Jewish. (Complaint ¶¶ 348, 356-59) The gist of the claim, reading it liberally, was that Grippo's use of her maiden name evidenced an unlawful preference to interact with her as a " Pacella," *i.e.* a presumed Italian-American Roman Catholic, but not as a Jew named " Schwartz." By way of contrast, Schwartz argues, district officials immediately began to reference a Catholic teacher by her married name in spring, 2002. (Schwartz Affidavit ¶ 21)

Under *Morgan,* Grippo's comment of January 11, 2002 is the only one of defendants' actions that falls within the 300-day time limit established by the ADEA for the filing of an EEOC charge alleging age discrimination. Grippo's comment is an insufficient basis for her ADEA claims, because being greeted by her maiden name, even assuming the presence of religious bias, has no relation to Schwartz's age discrimination claims. Hence, her ADEA claims are dismissed.

*19 Schwartz's only timely claim of religious discrimination is based upon district officials' insistence upon using her maiden name, Pacella. Assuming *arguendo* that the religious discrimination alleged in her EEOC charge is " reasonably related" to these incidents, overcoming the timeliness hurdle does not address whether she has an actionable Title VII claim. In opposition to the motion, Schwartz has not come forward with timely facts sufficient to raise a triable issue of religious discrimination. At most, Schwartz has put forth evidence of isolated incidents and comments of a nature that have been held to be insufficient to maintain a viable Title VII claim. *See Faragher v. City of Boca Raton,* 524 U.S. 775, 788 (1998) (" [S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the ' terms and conditions of employment." ' ) (internal citations omitted); *Quinn,* 159 F.3d at 768 (" As a general matter, ' isolated remarks or occasional episodes of

harassment will not merit relief under Title VII; in order to be actionable, the incidents of harassment must occur in concert or with a regularity that can reasonably be termed pervasive." ' ), *quoting Tomka v. Seiler Corp.,* 66 F.3d 1295, 1305 n. 5 (2d Cir.1995); *Danzer v. Norden Sys. Inc.,* 151 F.3d 50, 56 (2d Cir.1998) ( " ' stray remarks' alone do not support a discrimination suit." ); *Snell v. Suffolk County,* 782 F.2d 1094, 1103 (2d Cir.1986) (" Casual comments, or accidental or sporadic conversation, will not trigger equitable relief pursuant to the statute." ); *Satterfield v. United Parcel Service, Inc.,* 2003 WL 22251314 at *8 (S.D.N.Y. Sept. 30, 2003) (five incidents between November 1998 and April 1999, even if subjectively offensive to plaintiff, were under the category of " isolated remarks or occasional episodes" and thus did not merit relief under Title VII); *cf. Mateen v. Connecticut Transit,* 550 F.Supp. 52, 55 (D.Conn.1982) (" [M]ispronunciation of plaintiff's name by a single supervising manager hardly represents a consistent plan or scheme on defendant's part to harass the plaintiff." ).[FN7] There is no evidence presented by way of affidavit, deposition, interrogatory response, admission, document, or otherwise, of any timely fact or circumstance other than the single conversation with Grippo on January 11, 2002. Standing alone, this does not survive summary judgment.

> FN7. The " continuing violation" doctrine cannot apply to Schwartz's Title VII claim. Her EEOC charge did not include a check mark in the box indicating that defendants' actions were of a continuing nature, and while it alleged religious discrimination, it did not place the EEOC on notice that any religious discrimination Schwartz allegedly suffered constituted a " continuing violation." Indeed, the narrative in Schwartz's EEOC charge offers scant detail concerning the religious discrimination she alleges to have experienced.

Similarly, plaintiffs' memorandum in opposition also argues that Schwartz was not permitted to leave early to observe the Sabbath, although Catholic teachers were permitted to arrive at school later on Ash Wednesday, and that such incidents occurred within 300 days of the filing of her EEOC charge. (Plaintiffs' Mem. at 23) The Complaint and the Schwartz Affidavit, however, do not provide a range of dates that would make these matters timely under her EEOC charge. The Complaint implies that issues related to Schwartz's early departure for Sabbath transpired in autumn, 2001. (Complaint ¶ 356-57) The Schwartz Affidavit states that incidents regarding Schwartz's Sabbath departures occurred from 1999 through September, 2001, and indicates that Schwartz received " a minor accommodation" regarding the issue in September, 2001. (Schwartz Affidavit ¶¶ 13, 17) The unsworn statement in the memorandum of law unsupported by the Schwartz Affidavit or any other evidentiary materials is insufficient to raise a genuine issue of material fact.

*20 Finally, plaintiffs argue that on August 17, 2003, Schwartz learned that she had been terminated. (Plaintiffs' Mem. at 23-24; Schwartz Affidavit ¶ 19, *attached at* Turco Affirmation Ex. I) Plaintiff argues that this is an example of a materially adverse change, occurring within the limitations period, that demonstrates continued discrimination and retaliation against Schwartz. (Plaintiffs' Mem. at 23-24) The Complaint in this action was filed on August 7, 2003; obviously, it pre-dates the events of August 17, 2003, and therefore contains no allegations of Schwartz's termination or any related administrative history. Schwartz cannot maintain a cause of action anchored on an allegation that is not fairly raised in the existing Complaint.

*Plaintiffs' Request to Amend the Complaint*

Plaintiffs' memorandum of law concludes with a request for leave to file an amended complaint. Within fourteen (14) days of entry of this Order, plaintiff may move to amend the Complaint, annexing the proposed new pleading.

*Conclusion*

The defendants' motions are disposed of as follows:

1. Defendants' motion for summary judgment is granted as to the claims brought by Goldberg, Miller, Pascucci and Sternberg on the basis of *res judicata,* and their claims are dismissed. Sands's section 1983 claim alleging Equal Protection violations is also dismissed on *res judicata* grounds.

2. Defendants' motion for summary judgment is granted as to those of Magaldi's allegations that occurred more than 300 days before the filing of the August 29, 2002 EEOC charge, but denied as to those that occurred within 300 days of the EEOC charge. Defendants' motion is denied insofar as it seeks

Not Reported in F.Supp.2d, 2004 WL 736988 (S.D.N.Y.)

**(Cite as: Not Reported in F.Supp.2d)**

dismissal of Magaldi's any claim implicating Magaldi's discharge.

3. Defendants' motion for summary judgment is granted as to those of Mauskopf's claims that occurred more than 300 days prior to her August 29, 2002 EEOC charge, but denied as to those claims that occurred within 300 days of the EEOC charge, including the termination of her employment with the Department of Education.

4. Defendants' motion for summary judgment is granted as to Schwartz's ADEA and Title VII claims, which are dismissed as untimely under the ADEA, and for failing to raise a genuine question of material fact pertaining to her Title VII religious discrimination claim.

5. Lastly, plaintiffs may move for leave to amend their complaint within fourteen (14) days hereof, annexing the proposed pleading.

SO ORDERED.

S.D.N.Y.,2004.
Carmellino v. District 20 of New York City Dept. of Educ.
Not Reported in F.Supp.2d, 2004 WL 736988 (S.D.N.Y.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.