Westlaw.

Not Reported in F.Supp.2d                                                                                           Page 1
Not Reported in F.Supp.2d, 2005 WL 1026027 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

C
Idrees v. City of New York Dept. of Parks and Recreation
S.D.N.Y.,2005.
Only the Westlaw citation is currently available.
United States District Court,S.D. New York.
Mohammad IDREES, Plaintiff,
v.
CITY OF NEW YORK DEPARTMENT OF PARKS AND RECREATION Respondent.
No. 04Civ.2197LAKGWG.

May 3, 2005.

*REPORT AND RECOMMENDATION*
GORENSTEIN, Magistrate J.
*1 Mohammad Idrees brings this complaint *pro se* against the City of New York Department of Parks and Recreation (" Parks Department" or " Department" ) alleging that he was discriminated against on the basis of his race, color, national origin, gender, religion, and age in violation of Title VII of the Civil Rights Act (" Title VII" ) and the Age Discrimination in Employment Act (" ADEA" ). Idrees also alleges that the Parks Department retaliated against him for filing a discrimination claim with the Equal Employment Opportunity Commission (" EEOC" ) and that the Parks Department failed to protect him from a physical assault by another employee.

The Parks Department has moved for partial judgment on the pleadings on the grounds that the majority of Idrees's Title VII and ADEA claims are time-barred and his state tort claim is both untimely and fails to comply with New York State's notice of claim requirements. For the reasons stated below, the Department's motion should be granted.

I. *BACKGROUND*

For purposes of this motion, the Court assumes the facts alleged by Idrees to be true.

Idrees was born in Pakistan in 1946 and is now a U.S. citizen. Complaint, filed Mar. 19, 2004 (Docket # 1) (" Compl." ), at 1; [FN1] Complaint Form, dated Mar. 19, 2004 (annexed to Compl.), at 3. He earned Bachelors and Masters degrees in Chemistry from the Government College of Lahore, Pakistan and a Masters in Public Administration from Columbia University. Compl. at 1.

> FN1. Idrees annexed a detailed seven-page supplement to the standard employment discrimination complaint form. Unless otherwise noted, citations herein are to this supplement.

Idrees joined the Parks Department on August 19, 1985 as the Manager of the Engineering Audit Office. *Id.* at 1-2. He was initially offered a yearly salary of $28,000 in writing but, after he resigned from his previous job, he was informed that he would receive $27,383 per year. *Id.* at 2.

From April 28, 1990 to May 19, 1992, Idrees was the Acting Director for the Engineering Audit Office. *Id.* at 1-2. For his work as Acting Director, Idrees was given an outstanding evaluation by his supervisor and awarded a merit increase. *Id.* at 1. However, another person was ultimately appointed Director and Idrees was made Deputy Director. *Id.* After this time, Idrees was unable to obtain any of the promotions he applied for in the Parks Department. *See id.* at 1-2, 5-6.

During the course of his employment with the Parks Department, Idrees was denied over 23 opportunities for a promotion. *Id.* at 1-2.[FN2] He was denied a promotion for the first time when he applied for the position of Director of Fiscal Management on September 20, 1995. *Id.* It appears that Idrees did not apply again for a promotion until May 28, 1999, when he was denied a promotion to be Chief of Recreation in Brooklyn. *Id.* at 2. He was subsequently denied promotions to 14 other positions prior to filing his complaint with the EEOC. *Id.* at 1-2; Pl. Reply at 7-8. While Idrees actually applied for most of these positions, at least six positions were filled without being advertised. *See* Pl. Reply at 7-8. The various jobs were awarded to white men, white women, an Indian male, and an African American male. Compl. at 1-2. Many of the positions were filled by people with less education or experience than Idrees. *See id.*; Pl. Reply at 7-8.

> FN2. The Complaint identifies 23 opportunities and Idrees's brief filed in

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:07-cv-03498-AKH   Document 7-6   Filed 07/02/2007   Page 2 of 6

Not Reported in F.Supp.2d									Page 2
Not Reported in F.Supp.2d, 2005 WL 1026027 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

opposition to the Department's motion for partial summary judgment identifies 26. *See* Response to Defendant's Memorandum of Law in Support of City's Motion for Partial Judgment on Pleadings, filed Nov. 3, 2004 (Docket # 11) (" Pl.Reply" ), at 7-9.

**\*2** On October 28, 1993, Idrees was physically assaulted by a subordinate, Gabriel Preda, who hit him while yelling, " I will kill you fucking [M]uslim." Compl. at 3. Idrees filed charges against Preda with the Bias Bureau of the Queens Criminal Court, although his supervisor at the time, Dennis Platt, urged him not to pursue the case. *See* id.; Pl. Reply at 2. Preda was fired, and brought an arbitration proceeding to regain his job. Compl. at 3. Although Platt tried to influence witnesses and told the arbitrator that Preda was welcome back to his old position at the Parks Department, Preda ultimately lost in arbitration. *See id.*

Idrees also alleges that he was subjected to harassment by supervisors Platt, Mary Pazan, and Mel Fox. *See id.* at 3-5. Prior to the assault, Idrees described Platt's behavior and comments as " demeaning" and, following the arbitration with Preda, Platt became " more insulting." *See id.* at 3. When Idrees asked Platt why he supported Preda in the arbitration hearing, Platt responded, " you Pakistanis are not equal to us." *Id.* At one point, Idrees became ill from the harassment and took a week of leave from work. *Id.* When he returned, the harassment increased " tremendously." *Id.* After Idrees passed two tests for higher level positions in April 1995, Platt told Idrees that he should leave the Parks Department, asking him, " why [do] you think important positions should be given to Pakistani [M]uslims[?]" *Id* . On May 1, 1995, Platt had Idrees transferred to the Management Services Division, where he was demoted to a " clerk/laborer." *Id* . at 1, 3.

In his new position in the Management Services Division, Idrees worked for Mary Pazan. *Id.* at 3. Idrees claims he was " constantly ... harassed, insulted, and humiliated" by Pazan. *Id* . at 4. Idrees sent written requests to Pazan and the Director of Personnel on September 17 and September 28, 1999 asking to be transferred to Manhattan, but did not receive a response. *Id.*

On October 1, 1999, Idrees was transferred to Contract Administration. *Id.* at 5. He informed the director that he wished to be transferred to Manhattan but was told, " Why don't you leave. I will fire you. I will transfer you to Staten Island." *Id* . In this new department, Idrees was required to report to Assistant Director Mel Fox, who made derogatory comments about Muslims to Idrees, including, " Ismael was a bastard! You [M]uslim people are very nasty." *Id.* On January 5, 2001, " out of [the] clear blue sky," Fox attempted to hit Idrees on the head with a stapler. *Id.* Idrees reported this incident to the Inspector General's Office, but Fox was never removed as Idrees's supervisor and remained at the Parks Department until he retired. *Id.*

In October 2001, Idrees passed the Associate Staff Analyst (" ASA" ) civil service exam. *Id.* He submitted the results of the exam to his director in order to be considered for a promotional title and a salary increase. *Id.* He received a letter dated January 25, 2002 from the Parks Department notifying him that the New York City Department of Citywide Services had certified his eligibility for an appointment to an ASA position at a salary increase and Idrees was interviewed for a possible promotion. *Id.* On April 24, 2002, Idrees received a letter from the Personnel Director of the Parks Department notifying him that another candidate had been selected for a promotion to an ASA title. *Id.;* Letter from David Terhune to Mohammad Idrees, dated Apr. 16, 2002 (reproduced as Ex. 14 to Compl.). Of the 15 people who also took the ASA exam, 13 were promoted to ASA positions by April 7, 2002. Compl. at 6. These individuals included people with less education than Idrees. *Id.* Idrees filed a complaint with the Department's Equal Employment Office on May 16, 2002. *Id.* As a result of this complaint, Idrees was eventually awarded an ASA title on November 25, 2002, a promotion that took effect on December 22, 2002. *Id.*

**\*3** Idrees filed a complaint with the EEOC on February 7, 2003 alleging discrimination based on race, color, religion, national origin, and age and also alleging retaliation. *Id.;* Charge of Discrimination, dated Feb. 7, 2003 (reproduced as Ex. 20 to Compl.). On December 31, 2003, the EEOC informed him that most of his allegations were time-barred. *See* Letter from Marjorie Scilken-Freidman to Mohammad Idrees, dated Dec. 31, 2003 (reproduced as Ex. 24 to Compl.) (" Dismissal Letter" ). The EEOC found that the allegation related to the initial failure to receive a promotion to ASA was timely, but determined that the problem was remedied because Idrees was

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d    Page 3
Not Reported in F.Supp.2d, 2005 WL 1026027 (S.D.N.Y.)

**(Cite as: Not Reported in F.Supp.2d)**

awarded back-pay to compensate him for the delay in receiving the title. *See id.* Accordingly, the EEOC issued Idrees a Right to Sue Notice. *See* Dismissal and Notice of Rights, dated Dec. 31, 2003 (reproduced as Ex. 25 to Compl.) (" Dismissal" ).

Idrees alleges that he was denied ten other promotional opportunities after he filed his EEOC complaint. *See* Compl. at 6. He received denial letters for seven positions on June 17, 2003, and a denial letter for one position on August 8, 2003. *Id.*

Idrees filed the present complaint on March 19, 2004. *See* Compl. The Parks Department submitted an Answer, *see* Answer, filed July 2, 2004 (Docket # 8), and subsequently filed the instant motion for partial judgment on the pleadings. *See* Motion for Partial Judgment on the Pleadings, filed Sept. 3, 2004 (Docket # 10); Memorandum of Law in Support of Defendant's Motion for a Partial Judgment on the Pleadings, filed Sept. 3, 2004 (Docket # 10, Att. 1) (" Def.Mem." ). Idrees responded to the Department's motion on November 3, 2004, *see* Pl. Reply, and the Parks Department filed a reply brief, *see* Reply Memorandum of Law in Further Support of Defendant's Motion for a Partial Judgment on the Pleadings, filed Nov. 17, 2004 (Docket # 12).

## II. *APPLICABLE LEGAL PRINCIPLES*

### A. *Motion for Judgment on the Pleadings*

The standard for resolving a motion for judgment on the pleadings under Fed.R.Civ.P. 12(c) is the same standard used for a motion to dismiss for failure to state a claim under Fed R. Civ. P. 12(b)(6). *See, e.g., Burnette v. Carothers,* 192 F.3d 52, 56 (2d Cir.1999), *cert. denied,* 531 U.S. 1052 (2000). Accordingly, the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See, e.g., id.; Freedom Holdings, Inc. v. Spitzer,* 357 F.3d 205, 216 (2d Cir.2004) (citing *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.1994)). A complaint need only include a short and plain statement of the claim that gives " the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests," *Swierkiewicz v. Sorema N .A.,* 534 U.S. 506, 512 (2002) (internal quotation marks and citation omitted), and should not be dismissed " unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957). In making this determination, complaints drafted by *pro se* plaintiffs are held " ' to less stringent standards than formal pleadings drafted by lawyers," ' *Boddie v. Schnieder,* 105 F.3d 857, 860 (2d Cir.1997) (quoting *Haines v. Kerner,* 404 U.S. 519, 520 (1972) (per curiam)), and they should be interpreted " ' to raise the strongest arguments that they suggest," ' *Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996) (quoting *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994)).

*4 For purposes of this motion, a party's pleading " is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir.1991), *cert. denied,* 503 U.S. 960 (1992); *accord Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152 (2d Cir.2002).

### B. *Timeliness of Employment Discrimination Claims*

A complainant bringing suit under Title VII or the ADEA must first file a charge with the EEOC and receive a right-to-sue letter. *See* 42 U.S.C. § 2000e-5(e); *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.,* 274 F.3d 683, 686 (2d Cir.2001) (per curiam) (citing cases). A charge must ordinarily be brought within 180 days after the alleged unlawful employment practice occurred. *See* 42 U.S.C. § 2000e-5(e). In states such as New York, however, where a state or local agency has jurisdiction to consider claims of employment discrimination, the time to file an employment discrimination claim may be extended to 300 days. *See, e.g., id.; Torrico v. Int'l Bus. Mach. Corp.,* 319 F.Supp.2d 390, 403 (S.D.N.Y.2004); *Valentine v. Standard & Poor's,* 50 F.Supp.2d 262, 281 (S.D.N.Y.1999), *aff'd,* 205 F.3d 1327 (2d Cir.2000).

The statutory time period to file a charge with the EEOC may also be extended if a plaintiff has suffered a " continuing violation." This doctrine " extends the limitations period for all claims of discriminatory acts committed *under an ongoing policy of discrimination* even if those acts, standing alone, would have been barred by the statute of limitations." *Quinn v. Green Tree Credit Corp.,* 159 F.3d 759, 765 (2d Cir.1998) (internal citation and quotation marks omitted) (emphasis in original). A series of separate acts may be characterized as a continuing violation if the separate acts " ' collectively constitute one unlawful employment

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                           Page 4
Not Reported in F.Supp.2d, 2005 WL 1026027 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

practice." ' *Washington v. County of Rockland,* 373 F.3d 310, 318 (2d Cir.2004) (quoting *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 117 (2002)). Specifically, the continuing violation doctrine may be invoked where an employee is challenging " specific discriminatory policies or mechanisms," *Lambert v. Genesee Hosp.,* 10 F.3d 46, 53 (2d Cir.1993); *accord Heins v. Potter,* 271 F.Supp.2d 545, 556 (S.D.N.Y.2003), or " where there have been specific and related instances of discrimination, and the employer has permitted them to continue unremedied for so long that its inaction may reasonably be viewed as tantamount to a policy or practice of tolerating such discrimination," *Fitzgerald v. Henderson,* 251 F.3d 345, 362 (2d Cir.2001); *accord Heins,* 271 F.Supp.2d at 556. Thus, " ' if a plaintiff has experienced a continuous practice and policy of discrimination, ... the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it." ' *Washington,* 373 F.3d at 317 (quoting *Fitzgerald,* 251 F.3d at 359) (omission in original).

### III. DISCUSSION

*5 The Parks Department has moved for partial judgment on the pleadings on the ground that Idrees failed to file his Title VII and ADEA claims with the EEOC within 300 days of the occurrence of many of the discriminatory actions. *See* Def. Mem. at 3. The Department argues that any claims brought under these statutes based on events prior to April 13, 2002- 300 days prior to the date the charges were filed with the EEOC-are time-barred. *Id.* They also argue that the state tort claims are barred for failure to comply with state law exhaustion requirements. *Id.* at 4-5.

#### A. *Promotion Claims*

##### 1. *Promotions Prior to April 13, 2002*

Idrees alleges that the first time he was denied a promotion was on September 20, 1995 when he was not selected for the position of Director of Fiscal Management in Queens. *See* Compl. at 1; Pl. Reply at 7. Idrees was subsequently denied promotions on 16 other occasions between 1995 and 2001. *See* Compl. at 1-2; Pl. Reply at 7-8. Idrees lists every position that he applied for, as well as positions that were never advertised. *See* Compl. at 1-2; Pl. Reply at 7. Idrees mentions that he was also denied a promotion to the position of Deputy Director of Contracts Administration in 2002, but he does not specify the date on which he was denied the promotion. *See* Pl. Reply at 8.

Idrees's claims that he was not promoted for discriminatory reasons prior to April 13, 2002 are untimely as they fall outside the statutory time period for filing a charge with the EEOC. Moreover, none of the claims alleging discriminatory failure to promote can be saved by the operation of the continuing violation doctrine. The Supreme Court has expressly held that the failure to promote is a discrete discriminatory act that cannot extend the applicable filing period under the continuing violation doctrine. *See Morgan,* 536 U.S. at 114 (" Discrete acts such as termination, *failure to promote,* denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable ' unlawful employment practice." ' ) (emphasis added). " The holding in *Morgan* is in accord with Second Circuit law which states that alleged failures to compensate adequately, transfers, job assignments and promotions cannot form the basis for a continuing violation claim." *Gross v. Nat. Broad. Co.,* 232 F.Supp.2d 58, 68-69 (S.D.N.Y.2002). Accordingly, untimely failure to promote claims cannot be brought within the ambit of the continuing violation doctrine and must be dismissed. *See, e.g., Hnot v. Willis Group Holdings Ltd.,* 2005 WL 831665, at *3 (S.D.N.Y. Apr. 8, 2005) (plaintiff's " claims of discriminatory failure to promote and retaliatory termination are considered discrete, separately-actionable practices that occur on specific ascertainable dates, and are not continuous violations" ); *Milani v. Int'l Bus. Mach. Corp.,* 322 F.Supp.2d 434, 452 (S.D.N.Y.2004) (argument that discrete incidents of discrimination including failure to promote could constitute a continuing violation " foreclosed" by *Morgan* ); *Perez v. Int'l Bhd. of Teamsters, AFL-CIO,* 2004 WL 1824100, at *8 (S.D.N.Y. Aug. 16, 2004) (untimely failure to promote claims do not " present a basis for taking refuge in the continuing violation doctrine" ).

*6 Idrees contends that his claims should nonetheless be deemed timely because they show a pattern or practice of discrimination by the Parks Department. *See* Pl. Reply at 10 (" [T]he conclusion is that there is a pattern of discrimination, retaliation including physical abuses. And hence the time factor should not be considered in my case." ). While *Morgan* makes clear that it does not purport to rule on " pattern-or-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

practice" claims, see *Morgan,* 536 U.S. at 115 n. 9 (" We have no occasion here to consider the timely filing question with respect to ' pattern-or-practice' claims ...." ), that doctrine cannot save Idrees's time-barred claims.

First, it is not even clear that a plaintiff may bring a pattern-or-practice claim outside of a class action suit. See *Blake v. Bronx Lebanon Hosp. Ctr.,* 2003 WL 21910867, at *5 (S.D.N.Y. Aug. 11, 2003) (" [T]he court doubts that a plaintiff can bring a ' pattern and practice' claim in a non-class action complaint ." ) (citing cases suggesting that pattern-or-practice claims are not appropriate in non-class actions). Second, the ruling in *Morgan* suggests that " courts should not readily allow plaintiffs to allege pattern or practice claims based on a series of discriminatory acts." *Timothy v. Our Lady of Mercy Med. Ctr.,* 2004 WL 503760, at *4 (S.D.N.Y.2004). One court has concluded that *Morgan* made clear " that there is no indication that the term ' practice' as used in Title VII ' converts related discrete acts into a single unlawful practice for the purposes of timely filing." ' *Gross,* 232 F.Supp.2d at 68 (quoting *Morgan,* 536 U.S. at 111).

" To succeed on a pattern-or-practice claim, plaintiffs must prove more than sporadic acts of discrimination; rather, they must establish that intentional discrimination was the defendant's ' standard operating procedure." ' *Robinson v. Metro-North Commuter R.R. Co.,* 267 F.3d 147, 158 (2d Cir.2001) (quoting *Int'l Bhd. of Teamsters v. United States,* 431 U.S. 324, 336 (1977)); *accord Milani,* 322 F.Supp.2d at 452-53. Accordingly, generalized allegations that discrete discriminatory acts constitute a pattern or practice of unlawful discrimination are insufficient. See *Blake,* 2003 WL 21910867, at *5 (" [A] plaintiff does not properly allege an ongoing discriminatory policy simply by invoking the magic words ' pattern' or ' practice." ' ); *accord Gross,* 232 F.Supp.2d at 68; *Timothy,* 2004 WL 503760, at *3. Rather, a plaintiff must identify a policy or practice that underlies the discrete acts of discrimination. See *Milani,* 322 F.Supp.2d at 453 (discrete acts of failure to promote, failure to be compensated adequately, and denials of preferred job assignments could not be found to constitute a pattern or practice of discrimination absent any evidence of an underlying discriminatory policy or practice). In *Timothy,* 2004 WL 503760, at *3-*4, the court found that the plaintiff's allegation that her demotion and unfavorable work assignments were " based upon systematic discrimination against minority employees and child-rearing women" was insufficient to state a pattern-or-practice claim and thus each discrete discriminatory act was time-barred. Similarly, in *Blake,* 2003 WL 21910867, at *5, the court was " not convinced that plaintiff has truly pleaded a ' pattern and practice' claim which might still form the basis of a continuing violation after *Morgan,* " even where the plaintiff argued that he was receiving disparate pay as a result of a discriminatory status assignment regime.

*7 In the present case, Idrees has made only conclusory allegations that his treatment was the result of a systematic discriminatory policy. Merely stating that " DPR is known to discriminate" and citing to pending discrimination lawsuits against the Parks Department, Pl. Reply at 9, does not sufficiently allege a pattern-or-practice claim. Accordingly, his claims cannot be deemed timely under a pattern-or-practice theory.

Finally, we note that the deadline for filing an EEOC charge is subject to the doctrines of equitable tolling and equitable estoppel. See *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393 (1982). To excuse an otherwise untimely charge under these doctrines, a plaintiff must either be unaware of his claim and/or show that some " conduct" by the defendant " caused him to delay bringing his [claim]." *Dillman v. Combustion Eng'g, Inc.,* 784 F .2d 57, 60-61 (2d Cir.1986) (citation and quotation marks omitted). Neither circumstance has been alleged here and there are no grounds for finding that either equitable tolling or equitable estoppel applies.

2. *Promotions After April 13, 2002*

Idrees avers that he has been rejected from additional promotional opportunities since filing his complaint with the EEOC on February 7, 2003. See Pl. Reply at 9-10. As noted, Title VII and ADEA claims must be brought before the EEOC as a precondition to bringing them in federal court. See 42 U.S.C. § 2000e-5(e). An exception exists, however, if the claims filed for the first time in federal court " are ' reasonably related' to those that were filed with the agency." *Shah v. New York State Dep't of Civ. Serv.,* 168 F.3d 610, 614 (2d Cir.1999). Courts have recognized that claims alleging retaliation against an employee for filing a discrimination claim will be considered reasonably related, as well as allegations of " ' further incidents of discrimination carried out

Not Reported in F.Supp.2d                                                                                              Page 6
Not Reported in F.Supp.2d, 2005 WL 1026027 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

in precisely the same manner alleged in the EEOC charge," ' *Alfano v. Costello,* 294 F.3d 365, 381 (2d Cir.2002) (quoting *Butts v. City of N.Y. Dep't of Hous. Pres. and Dev.,* 990 F.2d 1397, 1402-03 (2d Cir.1993)).

In the present case, Idrees's complaint includes claims that he was denied promotions after he filed his complaint with the EEOC, and that the jobs he sought were given to younger, non-Muslim employees. *See* Compl. at 6, Pl. Reply at 9-10. Idrees also appears to suggest that he was denied these opportunities, in part, in retaliation for filing a complaint with the EEOC. *See* Pl. Reply at 10. At this stage of the litigation, these allegations are sufficient to conclude that Idrees's unexhausted claims of failure to promote are reasonably related to the filing of the original EEOC complaint and should be allowed to stand. *See Legnani,* 274 F .3d at 686-87; *Nakis v. Potter,* 2004 WL 2903718, at *13 (S.D.N.Y. Dec. 15, 2004). In any event, the defendant does not seek dismissal of these claims.

### B. *State Tort Claim*

**\*8** Idrees also claims that the Parks Department failed to protect him from being " physical[lly] abuse[d]." Compl. at 7; *accord* Pl. Reply at 10. This claim relates to Preda's attack on Idrees. Defendants argue that this claim must be dismissed because it is time-barred and because Idrees failed to file a notice of claim as required by state law. Def. Mem. at 4-5.

New York General Municipal Law § 50-i requires that tort claims against a municipal corporation must be commenced a year and 90 days after the event on which the claim is based. The law also requires an individual to serve a notice of claim before filing an action for damages. N.Y. Gen. Mun. L. §§ 50-e and 50-i. There is no dispute that Idrees failed to serve a notice of claim. *See* Pl. Reply at 13. He argues instead that he did not file because he feared being terminated. *Id.*

State notice-of-claim requirements apply to state law claims when the state law claims are brought in federal court. *See Felder v. Casey,* 487 U.S. 131, 151 (1988); *Hardy v. New York City Health and Hosp. Corp.,* 164 F.3d 789, 793 (2d Cir.1999). " The purpose of the notice of claim requirement is to afford the municipality an adequate opportunity to investigate the claim in a timely and efficient manner and, where appropriate, to settle claims without the expense and risks of litigation." *Fincher v. County of Westchester,* 979 F.Supp. 989, 1002 (S.D.N.Y.1997) (citing *Brown v. New York City Transit Auth.,* 172 A.D.2d 178, 1780 (1st Dep't 1991)). Because Idrees's failure to protect claim falls under state law and " [t]he notice of claim requirements apply equally to state tort claims brought as pendent claims in a federal civil rights action" as to state law claims brought in state court. *Id.* (citing *Russell Pipe & Foundry Co. v. City of New York,* 1997 WL 80601, at *15 (S.D.N.Y. Feb. 25, 1997); *McNeil v. Aguilos,* 831 F.Supp. 1079, 1085 (S.D.N.Y.1993)). As Idrees's fear of termination cannot excuse compliance with these statutory requirements, this claim is barred under New York law.

### *Conclusion*

For the foregoing reasons, the Department's motion for partial judgment on the pleadings should be granted with respect to Idrees's claims based on events that occurred before April 13, 2002, and with respect to his tort claim under state law.

### *PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION*

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have ten (10) days from service of this Report and Recommendation to serve and file any objections. *See also* Fed.R.Civ.P. 6(a), (e). Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with copies sent to the Hon. Lewis A. Kaplan, 500 Pearl Street, New York, New York 10007, and to the undersigned at 40 Centre Street, New York, New York 10007. Any request for an extension of time to file objections must be directed to Judge Kaplan. If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985).

S.D.N.Y.,2005.
Idrees v. City of New York Dept. of Parks and Recreation
Not Reported in F.Supp.2d, 2005 WL 1026027 (S.D.N.Y.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.