Westlaw.

Not Reported in F.Supp.2d                                                                                          Page 1
Not Reported in F.Supp.2d, 2004 WL 2848536 (S.D.N.Y.), 94 Fair Empl.Prac.Cas. (BNA) 1825

**(Cite as: Not Reported in F.Supp.2d)**

H
Lloyd v. Bear Stearns & Co., Inc.
S.D.N.Y.,2004.

United States District Court,S.D. New York.
Joy E. LLOYD, Plaintiff,
v.
BEAR STEARNS & CO., INC., Defendant.
No. 99 Civ. 3323(GBD).

Dec. 9, 2004.

*MEMORANDUM OPINION & ORDER*
DANIELS, J.
**\*1** Plaintiff brings this action against her former employer, Bear Stearns & Co., Inc., (" Bear Stearns" ), alleging violations of Title VII, Section 1981 of the Civil Rights Act of 1866, and New York State and City Law. Defendant moves for summary judgment pursuant to Fed.R.Civ.P. 56. For the reasons stated below, defendant's motion is granted and plaintiff's claim is dismissed.

*BACKGROUND*

Plaintiff Joy Lloyd, a black female, was employed by Bear Stearns from 1989 through January 9, 1998. Plaintiff was originally hired as a System Administrator in the firm's computer department. In her complaint, plaintiff broadly alleges that soon after she began to work for Bear Stearns, she noticed that " [a]reas which were conducive to advancement were dominated by Caucasians while Minorities were placed into low-level technical areas." Complaint p .3, ¶ 14. She also alleges, generally, that " minorities, particularly African-Americans, were not given adequate amount of work, were given menial assignments which did not correspond with their levels of expertise and experience, [and] were left out of projects despite seniority and adequate experience levels." *Id.* at 3, ¶ 15. She further broadly asserts that she " was routinely denied well-deserved promotions or advancements in her area of expertise, was not given work assignments commensurate with her skills, and suffered diminished earning capacity as a result." *Id* . at 3, ¶ 16.

Plaintiff's complaint is replete with unsupported allegations of her discriminatory claims. First, she claims that she was forced to work the night shift and that she was denied the right to take a car service home. Next, she claims that the firm asked her to work at another location that required her to walk further than she was accustomed and was forced to do so late at night. With regards to these allegations, her sole discriminatory claim seems to be that the night shift group " consisted entirely of minorities." *Id.* at 4, ¶ 19.

Next, plaintiff alleges that in 1990, despite her seniority, Department Managers promoted two of her white co-workers to higher-ranking positions in the computer department. She does not allege that she was more qualified than the promoted co-workers nor that she was denied the promotion solely because she was black. Plaintiff claims that after she questioned her Department Manager about this promotion decision, she was moved, in retaliation, " from her prior desk location to a location in the hallway near an area designated for ' computer garbage." ' *Id.* at 4, ¶ 23.

Plaintiff next claims that in 1991, after accepting a new position as a Documentation Librarian in the " IS Documentation Group," she was discriminated against when her manager refused to allow his employees to work overtime, only relenting when a black employee resigned and was replaced with a white employee. Plaintiff alleges that after the white employee was hired, they were all allowed to work overtime. Plaintiff further claims, without any factual support, that her white co-worker received larger bonuses than she and her black co-worker.

**\*2** Plaintiff's further alleges that contrary to Bear Stearns' policy regarding new mothers that was applied to " Jewish moms," she was not permitted to work from home following the birth of her child in 1995. Transcript of Deposition of Joy Lloyd (" Lloyd Tr." ), p. 67-68. Plaintiff further alleges that Bear Stearn's practice of keeping a kosher pantry for the use of its observant Jewish employees constituted racial discrimination, because " the White Jewish employees had their own pantry on the eighth floor, which the Black employees could not use." Plaintiff's Memorandum in Opposition, p. 6.

Plaintiff's next set of complaints centers on a promotion that she did not receive. In May of 1996,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:07-cv-03498-AKH    Document 7-7    Filed 07/02/2007    Page 2 of 18

Not Reported in F.Supp.2d                                                                                                Page 2
Not Reported in F.Supp.2d, 2004 WL 2848536 (S.D.N.Y.), 94 Fair Empl.Prac.Cas. (BNA) 1825
**(Cite as: Not Reported in F.Supp.2d)**

the Manager in the " IS Documentation Group" began looking for candidates for a supervisory position within plaintiff's Librarian Unit. Plaintiff approached her Manager and asked that the promotion be given to her, but it was given instead to the Senior Project Coordinator.[FN1] In June or July of 1996, plaintiff made an appointment with the Human Resources Department to express her concerns about not being given the Supervisor position, for which she felt she was the most qualified candidate. Human Resources set up a meeting with plaintiff, the newly promoted Supervisor, plaintiff's co-workers, and plaintiff's Manager. Subsequent to this meeting, plaintiff alleges that she was retaliated against for her complaints. She claims that she " wasn't spoken to ... was just totally ignored," and that the amount of work given to her was decreased. Lloyd Tr. p. 282. Plaintiff also alleges that the new Supervisor made three racial comments or jokes at some point after the meeting.[FN2] Complaint p. 6, ¶ 36. During the same period, another employee told her that her former Manager had commented about plaintiff: " Isn't she one of the ones I shipped out of here?" FN3 Lloyd Tr. p. 286.

>   FN1. Plaintiff alleges that the Senior Project Coordinator who was seeking the supervisory position promised the Manager that if he were selected for promotion, he would fire plaintiff's black co-worker.

>   FN2. Plaintiff alleges that her Supervisor made the following three comments in the period after their meeting with the Human Resources Department: **(1)** " I bought some black goldfish ... I guess I'll have a ghetto fish tank ' cause you know how they like to multiply," (2) " Why don't you quit and go on welfare?" and (3) during a conversation in which plaintiff used her hands to express herself, " Stop acting like a project whore."

>   FN3. Plaintiff claims that this was a reference to slavery.

A year later, in June of 1997, plaintiff met with the Chairman of the Board to discuss her concerns about discrimination and harassment in her department and to request a transfer to another department. Plaintiff claims that once her Supervisor became aware of the meeting, he became upset and said, " Anyone who f with me, I make sure I screw them royally." Complaint p. 7, ¶ 39. Plaintiff claims that her supervisor then retaliated against her further by giving her an unjustified " below standard" evaluation.[FN4] Several weeks later, plaintiff contacted the Human Resources Department and told them that she wanted to transfer to another department within Bear Stearns.

>   FN4. She alleges that she refused to sign the evaluation but that nevertheless, the Supervisor submitted it to the Personnel Department.

Plaintiff claims that on August 8, 1997, after a " demeaning and distasteful" conversation with an employee of the Human Resources Department, she " suffered an attack of high blood pressure and had to be sent home." *Id.* at 8, ¶ 44. The following week, plaintiff suffered a stroke and began a disability leave that lasted until January 9, 1998, when she resigned. Plaintiff claims that while she was in the hospital, her Supervisor placed a " disrespectful" telephone call to plaintiff's mother, inquiring as to her whereabouts. Sutherland Aff. p. 2, ¶ 5.

*3 While on disability leave, plaintiff claims that she received a call from a co-worker informing her that her desk at Bear Stearns had been emptied of her personal belongings and her name had been removed from the department telephone list. During subsequent telephone conversations with an employee of the Human Resources Department, plaintiff inquired whether she had been transferred to another department. Plaintiff was informed that when she returned, she would be working as a " floater" until a permanent position in another department became available for her. As a " floater," plaintiff would move between departments, working as needed, usually performing clerical tasks. Plaintiff felt that this position was unacceptable, and resigned by a letter dated January 9, 1998.

Plaintiff filed a charge of discrimination against Bear Steams with the Equal Employment Opportunity Commission (" EEOC" ) on October 9, 1998. She received a notice of right to sue in Federal Court on February 8, 1999, and filed her complaint in the District Court for the Southern District of New York on May 6, 1999. Plaintiff alleges that defendant subjected her to discrimination based on her race, created a hostile work environment, and retaliated against her for opposing these practices in violation of (1) Title VII of Civil Rights Act of 1964, 42 U.S.C.2000-e *et seq;* (2) New York State Human

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:07-cv-03498-AKH   Document 7-7   Filed 07/02/2007   Page 3 of 18

Not Reported in F.Supp.2d                                                                                           Page 3
Not Reported in F.Supp.2d, 2004 WL 2848536 (S.D.N.Y.), 94 Fair Empl.Prac.Cas. (BNA) 1825
**(Cite as: Not Reported in F.Supp.2d)**

Rights Law, Executive Law § 296.1(a) and § 296.7; and (3) New York City Administrative Code §§ 8-107.1, 8-107.6, and 8-107.7. Plaintiff also alleges that defendant's actions constituted constructive discharge under Section 1981 of the Civil Rights Act of 1866, 42 U.S.C.1981.[FN5] After the completion of discovery, defendant moved for summary judgment on all claims pursuant to Fed.R.Civ.P. 56(c).

> FN5. In her complaint, plaintiff also alleged intentional infliction of emotional distress and discrimination based on national origin. Plaintiff voluntarily withdrew these claims. *See* Plaintiff's Memorandum in Opposition p. 36.

## DISCUSSION

### I. *Standard for Summary Judgment*

Summary judgment is proper when " the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Under this rule, the moving party bears the initial burden of demonstrating that the evidence fails to raise a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). After such a showing, the non-moving party must respond with " specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). " The non-moving party may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence" to show that there is a genuine issue for the trier of fact to resolve. *D'Amico v. City of New York,* 132 F.3d 145, 149 (2d Cir.1998).

While deciding the motion, the Court views the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in favor of that party. *See Schneider v. Feinberg,* 345 F.3d 135, 144 (2d Cir.2003). The Court's role is not to resolve disputed matters it may find in the record, but merely to determine, as a threshold matter, if any exist. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986); *Gibson v. American Broad. Cos.,* 892 F.2d 1128, 1132 (2d Cir.1989).

### II. *Title VII*

*4 Title VII provides that " it shall be an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of the individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2 (a)(1). Title VII cases are governed by a burden-shifting framework established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-04 (1973). See, *e.g., Farias v. Instructional Sys., Inc.,* 259 F.3d 91, 98 (2d Cir.2001); *see also Janneh v. Endvest, Inc.,* 64 Fed. Appx. 814, 815 (2d Cir.2003). Under this framework, the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination. *See McDonnell Douglas Corp.,* 411 U.S. at 802-04. The defendant then bears the burden of articulating a legitimate non-discriminatory reason for the adverse employment action that the plaintiff suffered. *See id.,* 411 U.S. at 802-04. If the defendant meets this burden, the burden then shifts back to the plaintiff to show that the employer's proffered reason is mere pretext, and that discrimination was the true motivation for the adverse employment action. *See id.,* 411 U.S. at 802-04. In the context of a motion for summary judgment, it is the " conflict between the plaintiff's evidence establishing a prima facie case and the employer's evidence of a nondiscriminatory reason [that] reflects a question of fact to be resolved by the factfinder." *Cronin v. Aetna Life Ins. Co.,* 46 F.3d 196, 203 (2d Cir.1995).

In New York, allegations of discrimination under Title VII must be raised in a charge filed with the EEOC within three hundred days of the allegedly discriminatory act. 42 U.S.C. § 2000e-5(e)(1). *See, e.g., Zerilli-Edelglass v. N.Y. City Transit Auth.,* 333 F.3d 74 (2d Cir.2003). Plaintiff filed her charge with the EEOC on October 9, 1998. Thus, plaintiff's Title VII claims based solely on conduct that occurred prior to December 13, 1997 are untimely.[FN6] Defendants argue, therefore, that all of plaintiff's claims concerning events that occurred prior to December 13, 1997 concern actions that are time-barred and must be dismissed. Defendants further argue that all of plaintiff's employment discrimination claims that fall within the statutory filing period lack merit as plaintiff was not even at work during this period.[FN7]

> FN6. Three hundred days prior to October 9, 1998 is December 13, 1997.
>
> FN7. As plaintiff was on disability from August 18, 1997 until her resignation on

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:07-cv-03498-AKH   Document 7-7   Filed 07/02/2007   Page 4 of 18

Not Reported in F.Supp.2d                                                                                                    Page 4
Not Reported in F.Supp.2d, 2004 WL 2848536 (S.D.N.Y.), 94 Fair Empl.Prac.Cas. (BNA) 1825
**(Cite as: Not Reported in F.Supp.2d)**

January 9, 1998, these claims include all actions that occurred between December 13, 1997 and January 9, 1998.

Plaintiff responds by first asserting that defendant's conduct while she was out on disability should be considered part of a continuing violation exception to the statutory time period. Next, plaintiff argues that defendant's conduct constituted a hostile work environment, thereby allowing violations that occurred in the time-barred period to be brought in as part of the claim. Finally, plaintiff argues that the time limitation should be tolled, either because of her physical and mental condition during the statutory time period, or because of an alleged misrepresentation made by the EEOC. For the reasons stated below, each of these arguments fails.

A. *Continuing Violations Exception*

*5 The Second Circuit has recognized the continuing violations exception to allow certain Title VII claims to be brought which would otherwise be time barred. *See Lightfoot v. Union Carbide Corp.,* 110 F.3d 898, 907 (2d Cir.1997); *see also Lambert v. Genesee Hosp.,* 10 F.3d 46, 53 (2d Cir.1993). The continuing violations exception applies when the defendant is alleged to have implemented a discriminatory policy or mechanism over a prolonged period of time. *See Harris v. City of New York,* 186 F.3d 243, 248 (2d Cir.1999). Under this exception, filing a " timely EEOC charge about a particular discriminatory act committed in furtherance of an ongoing policy of discrimination extends the limitations period for all claims of discriminatory acts committed under that policy even if those acts, standing alone, would have been barred by the statute of limitations." *Lightfoot v. Union Carbide Corp.,* 110 F.3d 898, 907 (2d Cir.1997). A valid claim of a continuing violation must allege that at least one of the discriminatory acts under the policy occurred within the 300 days prior to the filing of the claim. *See Cornwell v. Robinson,* 23 F.3d 694, 703-04 (2d Cir.1994); *see also Gomes v. Avco Corp.,* 964 F.2d 1330, 1333 (2d Cir.1992).

The Supreme Court clarified the proper use of the exception in *National Railroad Passenger Corp. v. Morgan,* 536 U.S. 101 (2002) finding that discrete discriminatory acts are not actionable if time barred even when they are related to acts alleged in timely filed charges. The Court noted that the Court of Appeals had incorrectly applied the continuing violations doctrine " to what it termed serial violations, holding that so long as " one act falls within the charge filing period, discriminatory and retaliatory acts that are plausibly or sufficiently related to that act also be considered for the purposes of liability." *Id.* 536 U.S. at 114 (internal quotations omitted). Rather, for the continuing violations exception to apply, plaintiffs must show that the defendant implemented a specific policy or mechanism of discrimination. *See Ofudu v. Barr Laboratories, Inc.,* 98 F.Supp.2d 510, 515 (S.D.N.Y.2000). A continuing violations exception is inappropriate therefore, where there is no identified policy but merely " related" acts of discrimination. *See Quarless v. Bronx Leb. Hosp. Ctr.,* 75 Fed. Appx. 846, 848 (2d Cir.2003) (citing *National Railroad Passenger Corp.,* 536 U.S. 101, in finding that discrete acts of discrimination are time barred when they occur outside the applicable filing period, even if related to acts for which charges are timely filed).

Plaintiff here has alleged three specific policies that she believes merit the use of the continuing violations exception. First, plaintiff claims that throughout the course of her employment with Bear Stearns, she was continuously denied requested transfers and promotions because of her race. This argument is without merit. The Supreme Court in *Morgan* squarely held that discrete discriminatory acts such as " termination, failure to promote, denial of transfer, or refusal to hire are easy to identify" and " constitute separate actionable unlawful employment practice[s]" to which the continuing violations exception is unavailable. *Morgan,* 536 U.S. at 113-114. These acts are not actionable if time barred. *Id.* Plaintiff, therefore, is precluded from using her time barred denial of promotion and transfer claims to allege a continuing violation.

*6 Second, plaintiff claims that she suffered retaliatory actions throughout her employment. This claim is also insufficient to create a continuing violations exception to the statutory time period. In *Morgan,* the Supreme Court found that a plaintiff can only bring claims " to cover discrete acts that ' occurred' within the appropriate time period. While [plaintiff] alleged that he suffered from numerous ... retaliatory acts from the time that he was hired through ... the date that he was fired, only incidents that took place within the timely filing period are actionable." *Id.* at 114. Likewise, though plaintiff here alleges that she suffered retaliation dating back to 1990, only those incidents of retaliation occurring after December 13, 1997 are actionable.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  Page 5
Not Reported in F.Supp.2d, 2004 WL 2848536 (S.D.N.Y.), 94 Fair Empl.Prac.Cas. (BNA) 1825
**(Cite as: Not Reported in F.Supp.2d)**

Finally, plaintiff claims that she, along with other minorities at Bear Stearns, was subjected to disparate pay because of her race. Some courts in this district have held that disparate pay claims do not constitute continuing violations. See Meckenberg v. New York City Off-Track Betting, 42 F.Supp.2d 359, 371 (S.D.N.Y.1999) (holding that " recurring pay discrimination does not constitute a continuing violation, as each receipt of a paycheck is the basis for a separate cause of action for which suit must be brought within the limitations period" ); see also Simpri v. City of New York, 2003 U.S. Dist. LEXIS 23266 (S.D.N.Y.2003) (holding that plaintiff's unequal pay claim was timely only as to the paychecks he received within the statutory time period); but see Brennan v. City of White Plains, 1998 U.S. Dist. LEXIS 1931 (S.D.N.Y.1998) (holding that evidence of disparate pay could " establish a claim that [defendant] has instituted a discriminatory policy or mechanism" ). In Quarless v. Bronx Leb. Hosp. Ctr., 75 Fed. Appx. 846, 848 (2d Cir.2003) the court found that it " need not reach plaintiff's arguments that his untimely disparate pay allegations can be salvaged under the ' continuing violation' doctrine because plaintiff's evidence failed to establish a prima facie disparate pay claim."

Similarly here, regardless of whether a disparate pay claim constitutes a continuing violation, plaintiff has failed to meet her burden, under *McDonnell Douglas,* of establishing a *prima facie* disparate pay claim. See Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 203-204 (2d Cir.1995); see also Subramanian v. Prudential Secs., Inc., 2003 U.S. Dist. LEXIS 23231 (E.D.N.Y.2003) (granting defendant employer's motion for summary judgment where plaintiff failed to meet " the *de minimis* initial burden of showing circumstances giving rise to an inference of discrimination" ); see also Loucar v. Boston Mkt. Corp., 294 F.Supp.2d 472, 479 (S.D.N.Y.2003) (granting defendant employer's motion for summary judgment where plaintiff was unable to make a *prima facie* showing of discrimination under the *McDonnell Douglas* framework).

*7 To make a *prima facie* Title VII disparate pay claim, " plaintiff must show: (1) that she is a member of a protected class; (2) that she was paid less than similarly situated non-members of her protected class; and (3) evidence of discriminatory animus." Cruse v. G & J United States Publishing, 96 F.Supp.2d 320, 326 (S.D.N.Y.2000). See also Bandhan v. Lab. Corp. of Am., 234 F.Supp.2d 313, 317 (S.D.N.Y.2002); Subramanian v. Prudential Secs., Inc., 2003 U.S. Dist. LEXIS 23231 (E.D.N.Y.2003). For the second element, in order to be considered " similarly situated, the individual to whom [plaintiff] attempts to compare [herself] must be similarly situated in all material respects." Shumway v. United Parcel Serv., Inc., 118 F.3d 60, 64 (2d Cir.1997) (internal quotations omitted). While their circumstances do not have to be identical, " there should be a reasonably close resemblance of facts and circumstances. What is key is that they be similar in significant respects." Lizardo v. Denny's, Inc., 270 F.3d 94, 101 (2d Cir.2001).

It is undisputed that plaintiff, as an African American woman, is a member of a protected class. However, plaintiff has failed to show a genuine issue of fact about whether she was paid less than similarly situated non-members of her class. In support of her disparate pay claim, plaintiff alleges that she " was getting between $250-$500 in annual bonuses, while her White counter parts were getting thousands of dollars." Plaintiff's Memorandum in Opposition p. 23; Lloyd Tr. p. 55. Despite this bold allegation, a review of the uncontroverted documentary evidence shows that for the years 1995 through 1997, plaintiff and her black co-worker were making higher base salaries than their white co-worker and indeed higher total salaries than their white co-worker. The evidence shows that during this time period, plaintiff received bonuses ranging from $2,000 to $4,000. In 1997, plaintiff's white co-worker received $5,000, a bonus higher than plaintiff's $4,000. The documents show, however, that despite this higher bonus, plaintiff and her black co-worker still maintained higher base salaries, and received high total salaries.[FN8]

> FN8. In 1997, plaintiff was paid a base salary of $42,000, a bonus of $4,000, and a total salary, including overtime, of $46,182. During that same year, her white co-worker was paid a base salary of $30,000, a bonus of $5,000, and a total salary of $38,802 while plaintiff's black co-worker was paid a base salary of $40,000, a bonus of $2,000, and a total salary of $42,231.

Thus, plaintiff, at best, has shown that during a single year, a similarly situated non-minority with a substantially lower total salary than plaintiff received a slightly higher bonus. This is not a claim of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                              Page 6
Not Reported in F.Supp.2d, 2004 WL 2848536 (S.D.N.Y.), 94 Fair Empl.Prac.Cas. (BNA) 1825
**(Cite as: Not Reported in F.Supp.2d)**

disparate pay sufficient to withstand summary judgment.[FN9] Nor do the affidavits that plaintiff has submitted from four of her co-workers support her disparate pay claim. Fed.R.Civ.P. 56(e) requires that "affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." *See, e.g., United States Small Business Admin. v. Citibank, N.A.,* 1997 U.S. Dist. LEXIS 1080 (S.D.N.Y.1997) (striking affidavit where affiant made "no attempt to specify which assertions [were] based on [personal] knowledge or how he obtained such knowledge."). Further, in order to raise a genuine issue of fact, plaintiff's affidavits "must be based upon 'concrete particulars,' not conclusory allegations." *Schwapp v. Town of Avon,* 118 F.3d 106, 111 (2d Cir.1997) (quoting *Meiri v. Dacon,* 759 F.2d 989, 998 (2d Cir.1985)) (holding that "to the extent that these affidavits contain bald assertions and legal conclusions-for example, that Howe "was always making racial slurs about minorities," ... the district court properly refused to rely on them"). Further, the law is well established that in motions for summary judgment, "the nonmoving party may not rely on ... unsubstantiated speculation." *Fujitsu Ltd. v. Fed. Express Corp.,* 247 F.3d 423, 428 (2d Cir.2001). *See also Scotto v. Almenas,* 143 F.3d 105, 114 (2d Cir.1998).

> FN9. Plaintiff, furthermore, has offered no evidence to find that the 1997 decision to give plaintiff's white co-worker a higher bonus was based on discriminatory animus in satisfaction of the third element of a *prima facie* disparate pay claim.

*8 Plaintiff's affidavits contain such statements as "it was well known that White employees who performed similar work as Black employees were making upward of 50% higher salaries and their bonuses were even higher than that," Terry Aff. p. 3, ¶ 10; and "I was amazed at the disparity in pay between Black employees and White employees. On the average White employees earned at least 25% higher salaries than Black employees." Thompson Aff. p. 2 ¶ 5. These affidavits are almost entirely devoid of concrete particulars, and fail to show that the compared employees were similarly situated in all material respects, as is required to establish a *prima facie* showing of disparate pay. Instead, they consist mainly of conclusory, broad allegations that are largely irrelevant to the issue of whether plaintiff was paid less than a similarly situated non-minority.

The only evidence plaintiff presents about the wages of any non-minority in a position similar to hers comes from an affidavit of a former Project Coordinator from Bear Stearns. The Project Coordinator states that after plaintiff resigned, "she was replaced by a permanent White Female employee. The White employee was hired at a compensation rate higher than ... [plaintiff was] making in 1998 ." Thompson Aff. p. 3, ¶ 10. The affiant does not explain how she gained personal knowledge of this, nor does she give the alleged new employee's name, her credentials, her duties in her new position and how they compared to plaintiff's former duties, her salary, or what she presumes plaintiff would have been 'making in 1998,' considering that plaintiff was never at work during that year. This affidavit, therefore, lacks the concrete particulars that would show it contained more than unsubstantiated speculation, and fails to raise a genuine issue in plaintiff's disparate pay allegations. Plaintiff, therefore, has not shown a continuing violation to lift the time-bar on her untimely claims.

### B. *Hostile Work Environment*

The Supreme Court has interpreted Title VII to reach, among other conduct, "requiring people to work in a discriminatorily hostile or abusive environment." *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21 (1993). A hostile work environment is created in violation of Title VII when "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Morgan* at 116. "The test for hostile work environment has both an objective and a subjective component: [a] work environment will be considered hostile if a reasonable person would have found it to be so and if the plaintiff subjectively so perceived it." *Mormol v. Costco Wholesale Corp.,* 364 F.3d 54, 58 (2d Cir.2004) (internal quotation omitted). In determining whether an actionable hostile work environment claim exists, courts look to "all the circumstances," including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 23 (1993).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:07-cv-03498-AKH    Document 7-7    Filed 07/02/2007    Page 7 of 18

Not Reported in F.Supp.2d                                                                                                Page 7
Not Reported in F.Supp.2d, 2004 WL 2848536 (S.D.N.Y.), 94 Fair Empl.Prac.Cas. (BNA) 1825

**(Cite as: Not Reported in F.Supp.2d)**

*9 Plaintiff argues that because she has brought a hostile work environment charge, the Court should consider all acts of discrimination against her, even those that occurred before the statutory filing period. When a hostile work environment charge has been timely brought, " [c]onsideration of the entire scope of ... [the] claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability." _AMTRAK v. Morgan,_ 536 U.S. 101, 105 (2002). This is because " the entire hostile work environment encompasses a single unlawful employment practice," rather than a series of discrete instances of discrimination. _Id._ at 117. However, " [t]he statute of limitations is not discarded entirely in such cases." _Costanzo v. United States Postal Serv.,_ 2003 U.S. Dist. LEXIS 4911 (S.D.N.Y.2003). In order for the claim to be timely, " the employee need[s] ... [to] file a charge within ... 300 days of any act that is part of the hostile work environment." _Morgan_ at 118.

It is unnecessary to determine whether the several instances of offensive racial teasing and discriminatory intimidation that plaintiff has alleged were sufficiently severe or pervasive to alter the conditions of her employment environment or create an abusive work place. Even if Bear Stearns in fact created a hostile work environment, plaintiff's opportunity to bring suit for it has passed. Plaintiff has not alleged a single timely act in support of her hostile work environment claim; each incident that she cites in support of her hostile work environment claim occurred prior to her disability leave in August 1997, which is well short of the December 13, 1997 start of the statutory filing period. _See_ Complaint p. 10 ¶ 58-63; Plaintiff's Memorandum in Opposition p. 30-33.FN10 Thus, plaintiff's claim cannot lift the statutory time bar, because she has not met the requirement of filing her charge within 300 days of at least one act that was part of the hostile work environment.

> FN10. Plaintiff does briefly suggest that a phone call made to her mother while plaintiff was on disability leave should be considered part of the hostile work environment as part of plaintiff's argument that her claims are not time barred. Plaintiff's Memorandum in Opposition p. 19. However, as this phone call was made " sometime in August 1997," Sutherland Aff. p. 1, ¶ 3, even if it could be considered a discriminatory action in support of a hostile work environment claim, it would nevertheless be untimely.

Even if plaintiff had alleged an incident within the filing period, none could have sustained a claim of a hostile work environment because plaintiff never returned to work after leaving for disability on August 18, 1997. The nature of the hostile work environment violation focuses on the atmosphere _within the workplace. See Harris v. Forklift Systems, Inc.,_ 510 U.S. 17, 21 (1993)(emphasis added)(holding that a hostile work environment is present when an employer " require[s] people to work in a discriminatorily hostile or abusive environment" ); _see also AMTRAK v. Morgan,_ 536 U.S. 101, 116 (2002) (finding that a violation is shown " when the workplace is permeated" with discrimination); _see also Cruz v. Coach Stores, Inc.,_ 202 F.3d 560, 570 (2d Cir.2000) (holding that " the crucial inquiry focuses on the nature of the workplace environment as a whole." ). Plaintiff did not return to work after August 18, 1997. She cannot, therefore, allege even one instance of a discriminatory action that took place within the workplace during the statutory filing period-a period that she spent at home. If the workplace at Bear Stearns was hostile, plaintiff had an opportunity to file a charge for it within 300 days of the last point at which she was subjected to it. Plaintiff did not do so, and her hostile work environment claim does not lift the statutory time bar on her Title VII claims.

### C. _Equitable Tolling_

*10 Finally, plaintiff argues that the statutory time bar should be equitably tolled. The Supreme Court has recognized that the statutory filing requirement found in 42 U.S.C. § 2000e-5(e) for Title VII charges " is subject to waiver, estoppel, and equitable tolling." _Zipes v. Trans World Airlines, Inc.,_ 455 U.S. 385, 393 (1982). When evaluating whether to allow equitable tolling, courts should bear in mind that this doctrine is " to be applied sparingly." _AMTRAK v. Morgan,_ 536 U.S. 101, 113 (2002). _See also Baldwin County Welcome Center v. Brown,_ 466 U.S. 147, 152 (1984) (_per curiam_ ) (" Procedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants." ).

Plaintiff proffers two reasons why she believes the time bar should be equitably tolled. First, she claims

Not Reported in F.Supp.2d                                                                                    Page 8
Not Reported in F.Supp.2d, 2004 WL 2848536 (S.D.N.Y.), 94 Fair Empl.Prac.Cas. (BNA) 1825
**(Cite as: Not Reported in F.Supp.2d)**

that she was mentally and/or physically impaired during the statutory filing period to such a degree that she was unable to file her charge with the EEOC. Plaintiff also argues that the time bar should be tolled because of a " misrepresentation" allegedly made to her by the EEOC. For the reasons stated below, both of these arguments fail.

Determining whether a plaintiff is " sufficiently mentally disabled to justify tolling of a limitation period is, under the law of this Circuit, highly case-specific." *Boos v. Runyon,* 201 F.3d 178, 184 (2d Cir.2000). Equitable tolling is " only appropriate in rare and exceptional circumstances, in which a party is prevented in some extraordinary way from exercising his rights." *Zerilli-Edelglass v. N.Y. City Transit Auth.,* 333 F.3d 74, 80 (2d Cir.2003) (internal quotation marks and alteration omitted). *See also Brown v. Parkchester S. Condos.,* 287 F.3d 58, 60 (2d Cir.2002) (holding equitable tolling appropriate for medical conditions only where plaintiff has shown herself " incapable of complying with the deadline." ). While determining whether to allow equitable tolling, " a district court must consider whether the person seeking application of the equitable tolling doctrine ... has ' acted with reasonable diligence during the time period she seeks to have tolled,' and ... has proved that the circumstances are so extraordinary that the doctrine should apply." *Zerilli-Edelglass,* 333 F.3d at 80-81 (quoting *Chapman v. ChoiceCare Long Island Term Disability Plan,* 288 F.3d 506, 512 (2d Cir.2002)).

The plaintiff bears the burden of " demonstrating the appropriateness of equitable tolling." *Boos,* 201 F.3d at 185. In *Boos,* the Second Circuit found that where a plaintiff had presented only a " conclusory and vague claim" consisting of " a statement that she suffers from ' paranoia, panic attacks, and depression,' " she had failed to satisfy that burden. *Id.* at 185. The court held that a plaintiff would need at minimum to show " a particularized description of how her condition adversely affected her capacity to function generally or in relationship to the pursuit of her rights." *Id.* at 185. *Compare Bartow v. Comm'r of Soc. Sec.,* 2004 U.S. Dist. LEXIS 8296 (S.D.N.Y.2004) (" The sole excuse [plaintiff] offered for filing late-that she was " depressed" ... thus does not constitute one of the " rare cases" that warrant equitable tolling" ) (internal citations omitted) *with Hernandez v. Barnhart,* 2004 U.S. Dist. LEXIS 3404 (S.D.N.Y.2004) (holding that plaintiff had satisfied her burden where she had shown " significant impairments, including illiteracy and mental retardation," which had been " well-documented" in a " comprehensive psychological evaluation." ).

*11 Plaintiff argues that the statutory filing period should be extended because " up until she hired an attorney and filed her EEOC complaint ... she could not bring herself to think or discuss what happened to her." Plaintiff's Memorandum in Opposition p. 20-21. Claiming " post-traumatic stress," plaintiff asserts that after her stroke, she was " not able to care for herself or her children because of her physical and emotional status." Id. at 20-21. Plaintiff further asserts that her nurse arranged for her to see a psychologist " due to her stress level" and that " to date, plaintiff is pained by thinking or talking about her experiences at Bear Stears." Id. at 20-21.

Beyond her self-diagnosis of post-traumatic stress disorder and assertions that she was unable to " afford ... reliving [her] nightmare," plaintiff presents no evidence that would allow a finding of exceptional circumstances. Lloyd Aff. p. 2, ¶ 4. Plaintiff's statement in her affidavit that her " Psychologist as well as [her] Physician advised [her] not to go back to the same work environment" is hearsay, and the record contains no medical treatment records, psychological evaluation records, or statements from medical professionals documenting plaintiff's mental impairment and later recovery at the time she filed her complaint. Although plaintiff undoubtedly found her experience unpleasant, she has shown no genuine issue about her capacity to function generally or in relationship to the pursuit of her rights. Although she asserts that she was " not able to care for herself" until the end of 1998, Plaintiff Memorandum in Opposition p. 20, plaintiff testified that she started looking for new employment " [t]he day after [she] mailed the [resignation] letters out," sent out her resume, interviewed for positions, and had obtained a new job by early 1998, which she continues to hold to this date. Lloyd Tr. 457-58, 399, 401-03. Furthermore, plaintiff claims that up until she filed her EEOC complaint in October 1998, she could not " bring herself to think about what happened to [her] ... [because it] would have meant reliving the nightmare." Lloyd Affidavit p. 2, ¶ 4. However, this claim is fatally undermined by evidence in the record. In her January 9, 1998 letter of resignation to the Chairman of the Board of Bear Stearns, plaintiff narrates her experience at the company, giving more than two pages of detailed complaints. In her deposition testimony, plaintiff states that in writing

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:07-cv-03498-AKH   Document 7-7   Filed 07/02/2007   Page 9 of 18

Not Reported in F.Supp.2d                                                                                              Page 9
Not Reported in F.Supp.2d, 2004 WL 2848536 (S.D.N.Y.), 94 Fair Empl.Prac.Cas. (BNA) 1825
**(Cite as: Not Reported in F.Supp.2d)**

this letter, she " told a little history ... of the verbal abuse, the discrimination." Lloyd Tr. p. 396. Further, plaintiff made a decision to approach and retain an attorney with respect to her rights in August 1998. Plaintiff has not carried her burden of showing extraordinary circumstances that impaired her functioning and rendered her incapable of complying with the statutory deadline.

Plaintiff next argues that the statutory filing period should be extended because of an alleged misrepresentation made by the EEOC. The Second Circuit has " noted that it is " questionable" whether the EEOC's actions can be a basis for equitable tolling where the EEOC is not a defendant." *Li-Lan Tsai v. Rockefeller Univ.,* 46 Fed. Appx. 657, 658 (2d Cir.2002) (quoting *Vernon v. Cassadaga Valley Cent. Sch. Dist.,* 49 F.3d 886, 891 (2d Cir.1995)). In *Tsai,* the court went on to affirm the district court's denial of equitable tolling because plaintiff had " not provided any evidence, such as the name of the representative or the date on which she spoke with the representative, to corroborate her assertion that an EEOC representative gave her erroneous information," nor had she provided any " evidence that the EEOC engaged in any affirmative misconduct." *Id.* at 658. *See also Johnson v. Al Tech Specialties Steel Corp.,* 731 F.2d 143, 146 (2d Cir.1984).

*12 Plaintiff claims that she was advised by the EEOC that she had 300 days from the date of her resignation to file her charge.[FN11] As in *Tsai,* plaintiff has " provided no evidence other than [her] affidavit to support [her] assertion of misleading by the EEOC ." *Li-Lan Tsai v. Rockefeller Univ.,* 2002 U.S. Dist. LEXIS 2552 (S.D.N.Y.2002) (internal quotations omitted). Plaintiff has not given the name of the representative or the date on which they spoke, or any other evidence to corroborate her claim. As plaintiff has also failed to give any evidence of affirmative misconduct on the part of the EEOC, her failure to bring her charges within the statutory time period cannot be remedied by equitable tolling.

> FN11. Plaintiff's affidavit reads: " Furthermore, in the late spring of 1998, I contacted the Local EEOC office and was advised that I have Three Hundred days from my resignation letter to file the Administrative EEOC complaint. In reliance on this, I delayed any action until my emotional and physical condition allowed me to deal with the stress and trauma experienced by me, in relation to my experiences, while working at Defendant's place of business." Plaintiff's Affidavit p. 2 ¶ 5.

### D. *Timely Acts*

Plaintiff's continuing violations, hostile work environment, and equitable tolling arguments having failed, the only Title VII claims remaining in her charge are those that occurred between December 13, 1997 and October 9, 1998, when plaintiff filed her charge with the EEOC. The events that plaintiff alleges during that time period are as follows: (1) her desk was emptied of her personal belongings; (2) her name was removed from the departmental telephone list; (3) her position was changed to that of " floater" until a transfer became available to her; and (4) she " discovered that exit interviews were not scheduled for Minority employees." [FN12] Complaint p. 8, ¶ 47. None of these events, when considered under the *McDonnell Douglas* burden-shifting framework for Title VII claims, make out cases of discrimination sufficient to withstand summary judgment.

> FN12. Plaintiff's account of events after she went on disability leave on August 18, 1997 until she resigned on January 9, 1998, gives no specific date for any alleged incident. Thus, whether any of these events occurred before or after the December 13, 1997 statutory filing date is unclear. For the purposes of this motion for summary judgment, it is assumed that each of these incidents occurred on or after December 13, 1997. The " disrespectful" phone call allegedly received by plaintiff's mother is dated as having occurred " sometime in August 1997" and so is not within the statutory filing period. Sutherland Aff. p. 1 ¶ 3.

Plaintiff claims that while she was on disability leave, Bear Stearns emptied her desk of her personal belongings and removed her name from the departmental phone list. It is unclear whether plaintiff believes these acts were discriminatory standing alone, or were instances of retaliation. In either case, plaintiff has not met her initial *McDonnell Douglas* burden of showing a *prima facie* case. A *prima facie* case of racial discrimination is established when a plaintiff can show that (1) she is a member of a

Case 1:07-cv-03498-AKH   Document 7-7   Filed 07/02/2007   Page 10 of 18

Not Reported in F.Supp.2d                                                                                              Page 10
Not Reported in F.Supp.2d, 2004 WL 2848536 (S.D.N.Y.), 94 Fair Empl.Prac.Cas. (BNA) 1825
**(Cite as: Not Reported in F.Supp.2d)**

protected class; (2) her job performance was satisfactory; (3) she was subject to an adverse employment action; [and] (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination based on race. *See Woods v. Ruffino,* 8 Fed. Appx. 41, 42 (2d Cir.2001). A *prima facie* retaliation case requires a showing of " (1) participation in a protected activity known to the defendant; (2) an [adverse] employment action ...; and (3) a causal connection between the protected activity and the adverse employment action." *Terry v. Ashcroft,* 336 F.3d 128, 141 (2d Cir.2003); *Quinn v. Green Tree Credit Corp.,* 159 F.3d 759, 769 (2d Cir.1998).

Here, plaintiff cannot show that she was subjected to an adverse employment action for the purposes of either discrimination or retaliation. The Second Circuit has held that " to constitute an adverse employment action in violation of Title VII, a change in working conditions must be ' materially adverse." ' *Patrolmen's Benevolent Assoc. v. City of New York,* 310 F.3d 43, 51 (2d Cir.2002). Further, an adverse employment action " must be more disruptive than a mere inconvenience or an alteration of job responsibilities" and " might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices." *Patrolmen's Benevolent Assoc.,* 310 F.3d at 51 (internal quotation omitted). Plaintiff's claims have not approached the required level of materiality. That her desk was empty and her name not on the departmental phone list while she was away on disability leave for an indeterminate length of time could hardly have been a practical inconvenience for her, much less a significant one. Therefore, summary judgment for defendant is appropriate on these two alleged instances of discrimination.

*13 Plaintiff's next timely claim is that until " early January 1998, Defendant refused to transfer Plaintiff to another unit," instead offering a " demotion to a floater job, where Plaintiff would serve in a secretarial/clerical position answering the telephone." FN13 Plaintiff's Memorandum in Opposition, p. 19. Plaintiff fails to articulate an argument about the *prima facie* elements of this discrimination claim, but it is clear that any such argument would fail on the final element. As for the first two elements, plaintiff is indisputably a member of a protected class, and defendant does not dispute that her performance prior to her disability leave was satisfactory. As for the third element, a reasonable trier of fact could conclude that the plaintiff's placement into a " floater" position was an adverse employment action, although the Court does not decide so here. Although plaintiff suffered no decrease in wage, the floater position may have offered less prestige and perhaps " significantly diminished material responsibilities" as well.FN14 *Patrolmen's Benevolent Ass'n of N.Y.,* 310 F.3d at 51.

> FN13. Plaintiff's " continuing" failure to transfer claim is not considered here. As discussed above, in light of the Supreme Court's decision in *AMTRAK v. Morgan,* 536 U.S. 101, 113-114 (2002), failure to transfer is a discrete act and time-barred when not brought in the statutory filing period. The offer of a " floater" position is timely filed.

> FN14. Since it is unclear from the record exactly what material job responsibilities plaintiff had just prior to her disability leave, it is uncertain whether a " floater" position would offer the significantly diminished material responsibilities of an adverse employment action or a mere alteration in job responsibilities not rising to that level. For the purposes of this motion for summary judgment, it is assumed that the difference in responsibilities was significant.

However, the fourth element of a *prima facie* case, that the adverse employment action took place under circumstances giving rise to an inference of discrimination based on race, cannot be met. The first way an employee may show this inference is by discriminatory verbal comments, but only " when a plaintiff demonstrates that a nexus exists between the allegedly discriminatory statements and a defendant's [adverse employment] decision." *Schreiber v. Worldco, LLC,* 2004 U.S. Dist. LEXIS 12888 (S.D.N.Y.2004). *See Rui Zhang v. Barr Labs., Inc.,* 2000 U.S. Dist LEXIS 6237, at *13 (S.D.N.Y.2000) (citing cases). Plaintiff cannot do so here. The only racial comments she alleges took place in June or July of 1996, a full year and a half before the " floater" position was offered to plaintiff. Further, plaintiff makes no allegation that the persons who made these statements were involved in any way with the company's decision to offer plaintiff the " floater" position. " Stray remarks by non-decision-makers or

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:07-cv-03498-AKH   Document 7-7   Filed 07/02/2007   Page 11 of 18

Not Reported in F.Supp.2d                                                                                       Page 11
Not Reported in F.Supp.2d, 2004 WL 2848536 (S.D.N.Y.), 94 Fair Empl.Prac.Cas. (BNA) 1825
(Cite as: Not Reported in F.Supp.2d)

by decision-makers unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote form the date of decision." *Campbell v. Alliance Nat'l Inc.,* 107 F.Supp.2d 234, 247 (S.D.N.Y.2000) (quoting *Haskell v. Kaman Corp.,* 743 F.2d 113, 120 (2d Cir.1984)).

Plaintiff may also show an inference of racial discrimination " by adducing evidence that similarly situated employees were treated more favorably." *Brown v. Triboro Coach Corp.,* 153 F.Supp.2d 172, 177 (S.D.N.Y.2001). *See also Shumway v. United Parcel Serv., Inc.,* 118 F.3d 60, 63 (2d Cir.1997). The standard for a " similarly situated employee" requires " a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases." *Graham v. Long Island R.R.,* 230 F.3d 34, 40 (2d Cir.2000). Plaintiff has offered no evidence whatsoever that non-minority minority employees have been treated more favorably than her under similar circumstances. On the contrary, the record reflects that it was Bear Stearn's standing practice to place employees waiting to be transferred into " floater" positions. The " floating staff is a group of individuals that work for the personnel department that fill in different situations within the firm ... [while] interviewing within the firm." Deposition of Kathleen Cavallo, October 28, 1999, p. 59-60. Plaintiff does not dispute that this was Bear Stearn's normal practice, nor does she dispute that she was offered a place as a floater " until a position became available," in response to her own request to move to another department. Complaint p. 8, ¶ 48; Plaintiff's Memorandum in Opposition, p. 11. Plaintiff has not introduced admissible evidence to show, for example, that the " floating staff" is made up largely of minorities, nor that non-minorities find transfers without being placed there.[FN15] Therefore, plaintiff cannot show circumstances giving rise to an inference of discrimination and has failed to make a *prima facie* case of race discrimination.

> FN15. In her opposition to the motion for summary judgment, plaintiff for the first time claims that defendant's offer of the " floater" position was made in " bad faith" and that defendant " clearly never intended that she be accommodated on her return from work." Plaintiff's Memorandum in Opposition p. 33. This claim is wholly speculative and unsupported, and cannot be used to defeat summary judgment. Furthermore, even if true, this statement still shows no inference of *race*-based discrimination.

*14 The final allegation within the statutory filing period is that plaintiff " discovered that exit interviews were not scheduled for Minority employees." Complaint p. 8, ¶ 47; Plaintiff's Memorandum in Opposition p. 11. In relation to this claim, plaintiff has utterly failed in her obligation to produce " specific facts showing that there is a genuine issue for trial" pursuant to Fed.R.Civ.P. 56(e). In her deposition, plaintiff stated that she " was aware of other minorities that had resigned from Bear Stearns and they were never asked to come down and give an exit interview." Lloyd Tr. p. 397. Despite the fact that plaintiff completed discovery, she has not brought forth a single example of a minority who was not given an exit interview, nor a non-minority who was. Further, in her deposition, plaintiff acknowledges that the Chairman of the Board of Bear Stearns gave her the name and number of the person to contact to arrange an exit interview, but that she never took steps to arrange one because she felt it " wouldn't have made a difference." Lloyd Tr. p. 399. Plaintiff has therefore not raised a genuine issue of material fact with respect to this claim. Judgment as a matter of law is thus due to defendants on plaintiff's timely Title VII claims.

### III. *Section 1981*

Title 42, section 1981 of the United States Code outlaws discrimination with regard to the enjoyment of all benefits, privileges, terms, and conditions of a contractual relationship. *Whidbee v. Garzarelli Food Specialties, Inc.,* 223 F.3d 62, 68 (2d Cir.2000). In relevant part, section 1981 provides:

(a) All persons within the jurisdiction of the United States shall have the same right in every State ... to make and enforce contracts, ... and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, ... (b) For purposes of this section, the term " make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship.

The Second Circuit has held that " an at-will employment agreement governed by New York law constitutes a " contract" within the meaning of 42 U.S.C. § 1981." *Whidbee v. Garzarelli Food*

Case 1:07-cv-03498-AKH   Document 7-7   Filed 07/02/2007   Page 12 of 18

Not Reported in F.Supp.2d                                                                                           Page 12
Not Reported in F.Supp.2d, 2004 WL 2848536 (S.D.N.Y.), 94 Fair Empl.Prac.Cas. (BNA) 1825
**(Cite as: Not Reported in F.Supp.2d)**

*Specialties, Inc.,* 223 F.3d 62, 68 (2d Cir.2000) (quoting *Lauture v. IBM,* 216 F.3d 258 (2d Cir.2000)). Plaintiff can therefore maintain her constructive discharge claim under section 1981.

Constructive discharge of an employee occurs " when an employer, rather than directly discharging an individual, intentionally creates an intolerable work atmosphere that forces an employee to quit involuntarily." *Whidbee,* 223 F.3d at 73. The work atmosphere is intolerable if conditions " are so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Id.* at 73 (quoting *Chertkova v. Connecticut Gen. Life Ins. Co.,* 92 F.3d 81 at 89 (2d Cir.1996)). The Supreme Court recently confirmed that the standard is objective and held that for a plaintiff to prevail, " [s]he must show that the abusive working environment became so intolerable that her resignation qualified as a fitting response." *Pa. State Police v. Suders,* 124 S.Ct. 2342, 2347 (2004). The intolerable working conditions may " be premised on the cumulative affect of a number of adverse conditions in the workplace," *Terry v. Ashcroft,* 336 F.3d 128, 153 (2d Cir.2003) or on an " employer-sanctioned adverse action officially changing her employment status or situation, for example, a humiliating demotion, extreme cut in pay, or transfer to a position in which she would face unbearable working conditions." *Pa. State Police,* 124 S.Ct. at 2347.

**\*15** " [A] plaintiff pursuing a claimed violation of § 1981 ... must show that the discrimination was intentional." *Patterson v. County of Oneida,* 2004 U.S.App. LEXIS 14615 (2d Cir.2004). Thus, plaintiff's constructive discharge claim must show some evidence of " deliberate action on the part of the employer." *Whidbee,* 223 F.3d at 74. *See also Kader v. Paper Software,* 111 F.3d 337, 341 (2d Cir.1997) (dismissing constructive discharge claim where plaintiff " adduced no evidence to support an inference that his employer intentionally created an intolerable workplace." ).

Plaintiff is unclear as to exactly what circumstances at Bear Stearns she believed created intolerable working conditions. Some of plaintiff's statements indicate that it was a cumulative effect. For example, plaintiff claims that " [t]he combined effect of Defendant's conduct toward plaintiff, and [the] conditions under which Plaintiff was forced to work, created a working environment so intolerable that Plaintif ... could no longer continue in her position." Complaint p. 15, ¶ 83. In support of this allegation, plaintiff reiterates her hostile work environment claim. Complaint p .15, ¶ 86. The Supreme Court has held that a combination hostile work environmentconstructive discharge claim " entails something more" than a hostile working environment claim alone. *Pa. State Police v. Suders,* 124 S.Ct. 2342, 2354 (2004). A constructive discharge claim must show " working conditions so intolerable that a reasonable person would have felt compelled to resign." *Id.* at 2354. This is because " [u]nless conditions are beyond ' ordinary' discrimination, a complaining employee is expected to remain on the job while seeking redress." *Id.* at 2354 (internal quotation omitted).

For the " something more," plaintiff points to defendant's offer of the " floater" position upon her return to work. " [The ' floater' ] position consisted mainly of answering the telephone and being a temporary secretary, a further demotion as far as Plaintiff is concerned." Plaintiff's Memorandum in Opposition p. 11. This fails as a constructive discharge claim for several reasons. First, plaintiff cannot show that a reasonable person would consider the offer of a " floater" position-a temporary position-so intolerable that they were forced to resign. In her deposition testimony, plaintiff explains that she decided to quit because " With all my technical experience, with all my education, I just could not place myself as a floater." Lloyd Tr. p. 391. Plaintiff may have genuinely felt that she could not accept the position, but " subjective assessment ... is insufficient, and merely difficult or unpleasant working conditions do not rise to the level of constructive discharge." *Viera v. Olsten/Kimberly Quality Care,* 63 F.Supp.2d 413, 418 (S.D.N.Y.1999) (internal citation omitted). Plaintiff's claim that this offer was intolerable is belied by her acknowledgment that the " floating" position is an ongoing phenomenon at Bear Stearns, continually staffed with temporary employees whom plaintiff has not alleged are all unreasonable.

**\*16** Further, plaintiff cannot show the crucial element that defendant intended to force plaintiff out of her job. In her complaint, plaintiff states that " upon information and belief," defendant was acting to " intentionally ... discredit Plaintiff, and to have Plaintiff eventually demoted or terminated." Complaint p. 15, ¶ 82, 85. However, at this stage in the proceedings, plaintiff cannot prevail merely on

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:07-cv-03498-AKH   Document 7-7   Filed 07/02/2007   Page 13 of 18

Not Reported in F.Supp.2d                                                                                           Page 13
Not Reported in F.Supp.2d, 2004 WL 2848536 (S.D.N.Y.), 94 Fair Empl.Prac.Cas. (BNA) 1825
**(Cite as: Not Reported in F.Supp.2d)**

information and belief as to defendant's intent. The offer of a "floater" position itself is an indication that defendant wished to retain plaintiff as an employee. *See Viera v. Olsten/Kimberly Quality Care,* 63 F.Supp.2d 413, 418 (S.D.N.Y.1999) (dismissing plaintiff's constructive discharge claims made "in the context of a corporate reorganization [where] a new position [was offered] that provided the same salary and benefits as she currently received."). The Second Circuit has held that where the employer demonstrates interest in retaining the employee, summary judgment for the employer on a constructive discharge claim is proper. *See Whidbee,* 223 F.3d at 74. Plaintiff was free to refuse the offer, "but because it revealed that her hands were not tied, and that resignation was not the only choice available to her, it tells us that her constructive discharge claim should not have reached a jury, either." *Perry v. Harris Chernin, Inc.,* 126 F.3d 1010, 1015 (7th Cir.1997).

Accordingly, summary judgment is granted to defendant on all federal claims.

### IV. *State and Local Law Claims*

Because plaintiff's federal claims fail in their entirety, the Court declines to exercise supplemental jurisdiction over plaintiff's non-federal claims. *See e.g., Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 350 (1988) ("in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine-judicial economy, convenience, fairness, and comity-will point toward declining to exercise jurisdiction over the remaining state-law claims.").

For the foregoing reasons, the Court grants summary judgment to defendant on all federal claims and dismisses the state claims without prejudice.

S.D.N.Y.,2004.
Lloyd v. Bear Stearns & Co., Inc.
Not Reported in F.Supp.2d, 2004 WL 2848536 (S.D.N.Y.), 94 Fair Empl.Prac.Cas. (BNA) 1825

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d                                                                                                       Page 1
Not Reported in F.Supp.2d, 2006 WL 871028 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

Mirasol v. Gutierrez
S.D.N.Y.,2006.
Only the Westlaw citation is currently available.
United States District Court,S.D. New York.
Crispina MIRASOL, Plaintiff,
v.
Carlos M. GUTIERREZ, Secretary of Commerce, Defendant.
**No. 05 Civ. 6368(DC).**

April 5, 2006.

Bonnaig & Associates, By: Denise K. Bonnaig, New York, New York, for Plaintiff.
Michael J. Garcia, United States Attorney for the Southern District of New York, By: Serrin Turner, New York, New York, for Defendant.

*MEMORANDUM DECISION*

CHIN, J.

\*1 In this employment discrimination case, plaintiff Crispina Mirasol, an employee of the United States Department of Commerce, Bureau of the Census (the "Bureau"), alleges that she has been subjected to a pattern of non-promotions because of her race and national origin, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et sec.* Defendant Secretary Carlos M. Gutierrez moves pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for partial dismissal of the complaint for failure to state a claim upon which relief may be granted. For the reasons that follow, the motion is granted.

*BACKGROUND*

A. *The Facts*

For purposes of this motion, the factual allegations in the complaint are presumed to be true.

Mirasol, who was born in the Philippines, is a citizen of the United States. She is " an East Asian, Filipino woman." (Compl.¶ 1). She has been employed by the Bureau since December 1985 and currently works in its New York Regional Office as an Administrative Technician, GS grade 5. (*Id.*). During plaintiff's more than twenty years with the Bureau, her performance has consistently been satisfactory. (*Id.* ¶ 13).

In about 1985, Mirasol applied for a promotion to Supervisory Payroll/Personnel Clerk, apparently in New Jersey. (*Id.* ¶¶ 19-20). Though she was more qualified and senior than the person who was selected, Mirasol was denied the position by the Administrative Supervisor CarolAnn Roberts. (Mirasol Decl. ¶ 8). Mirasol verbally complained to a supervisor and was fired shortly thereafter. She was subsequently rehired. (Compl. ¶¶ 19-20 & n. 1).

In or about 1988, Mirasol applied for the position of Support Services Supervisor at the New York Regional Office. Though she maintains that she timely submitted her application, she was told she was not selected for the position because her application was received late. An Hispanic employee was selected for this position. (*Id.* ¶ 21).

In or about 1998, Mirasol applied for three Administrative Specialist vacancies. Though she was interviewed for these positions by the Regional Director, Lester Farthing, she alleges the interview took place after the positions had been filled. (*Id.* ¶ 22; Mirasol Decl. ¶ 16). In or about 1999, Mirasol learned of two vacancies for Administrative Specialist positions. Because these positions were not posted, however, she was unable to apply for them. An African-American received the promotion. (Compl.¶ 23).

In or about 2001, Mirasol was temporarily placed in the position of Administrative Specialist in Newark, New Jersey. An African-American employee who was similarly temporarily placed was given an extension on her appointment and subsequently promoted. In contrast, Mirasol's temporary appointment was cut short and she did not receive a promotion even though she was senior to the African-American employee. (*Id.* ¶ 24).

In 1997, Mirasol complained to the Census Bureau that there was prejudice in the workplace. She did not use the word "discrimination" because she feared retaliation. (*Id.* ¶ 25). In or about 1996, she filed an internal grievance because she felt she had been downgraded on her performance evaluation. (Mirasol Decl. ¶ 13). This grievance noted that Mirasol

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                                                Page 2
Not Reported in F.Supp.2d, 2006 WL 871028 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

believed her supervisors' minds were tainted with prejudice. The grievance was never resolved. (Compl.¶¶ 26-27). Mirasol never reported the 1985, 1988, 1998, or 2001 failures to promote to the Bureau's Equal Employment Opportunity (" EEO" ) counselor.[FN1] (*See generally* Compl.).

> FN1. As discussed below, 29 C.F.R. § 1614.105(a)(1) provides that aggrieved employees of federal agencies " must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action."

\*2 On or about July 31, 2003, Mirasol promptly applied for an " Administrative Specialist GS-0301-09" position. On September 17, 2003, the Human Resources Division notified Mirasol that though she was qualified for the position of Administrative Specialist, she had not been selected for it. Instead, an African-American employee who was less qualified for the position was selected. (*Id.* ¶¶ 29-33). Within 45 days of this denial of promotion, Mirasol complained to the EEO counselor. (*Id.* ¶ 33).

Plaintiff claims that she " has been subjected to a pattern of non-promotions on the basis of her East Asian race and Filipino national origin, from 1985 to the present. She has suffered a continuing violation of her civil rights, since the Census Bureau's repeated failures to promote her amount to a ' series of related acts .' " (*Id.* ¶ 16). Further, she claims that the Bureau has " permitt[ed] this practice of denying [her] promotions to continue, while giving preferential treatment to Blacks and Hispanics." (Mirasol Decl. ¶ 21).

### B. *Prior Proceedings*

Plaintiff exhausted her administrative remedies for the 2003 non-promotion by filing a complaint with the EEO and then with the Office of Civil Rights at the Department of Commerce. She subsequently submitted to the jurisdiction of the Equal Employment Opportunity Commission (" EEOC" ) so that her claims could be adjudicated by an Administrative Law Judge (the " ALJ" ). On May 19, 2005, Mirasol applied for withdrawal of her charge of discrimination and a dismissal of her case from the EEOC. (Compl.¶¶ 6-7). On May 23, 2005, the ALJ issued an order dismissing the case, and on July 12, 2005, Mirasol filed this action in this Court against Gutierrez, the United States Department of Commerce, the Economics Administration and Statistics Administration, and the United States Census Bureau. On consent, all claims were dismissed except the Title VII claim against the Secretary, by order dated January 10, 2006. On January 19, 2006, Gutierrez filed this motion to dismiss all remaining claims other than the claim arising out of the 2003 alleged failure to promote.

### DISCUSSION

### A. *The Standard on a Motion to Dismiss*

In reviewing a motion to dismiss, I must accept the factual allegations of the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Bernheim v. Litt,* 79 F.3d 318, 321 (2d Cir.1996). A complaint may not be dismissed under Fed.R.Civ.P. 12(b)(6) " unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Chance v. Armstrong,* 143 F.3d 698, 701 (2d Cir.1998) (quoting *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)).

The test is not whether the plaintiff is likely to prevail, but whether she is entitled to offer evidence to support her claims. *Id.* " In considering a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6), a district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference." *Kramer v. Time Warner Inc.,* 937 F.2d 767, 773 (2d Cir.1991).

### B. *The Continuing Violation Doctrine*

\*3 Gutierrez does not challenge the sufficiency of plaintiff's pleading with respect to the 2003 alleged failure to promote. Indeed, the complaint asserts that Mirasol complained to the EEO within 45 days of the incident. Gutierrez argues, however, that all non-promotions prior to September 17, 2003, are time-barred because Mirasol did not complain to the EEO about any of these alleged acts within 45 days of their occurrence.

Mirasol maintains that, because the pre-2003 acts are related to the 2003 failure to promote, the acts, taken together, constitute a pattern of discrimination and are not time-barred under the continuing violation doctrine. In response, Gutierrez argues that the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                     Page 3
Not Reported in F.Supp.2d, 2006 WL 871028 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

Supreme Court's decision in *National Railroad Passenger Corp. v. Morgan,* 536 U.S. 101 (2002) ( "*Morgan*" ), precludes application of the continuing violation doctrine to this case. For the reasons set forth below. I agree that the allegations set forth in the complaint do not warrant application of the continuing violation doctrine to this case. Accordingly the motion is granted and all claims other than the claim based on the 2003 act are dismissed.

Under Title VII, before bringing suit in federal court, " a litigant must exhaust available administrative remedies in a timely fashion." *Briones v. Runyon,* 101 F.3d 287, 289 (2d Cir.1996). For federal employees, the EEOC regulations governing timeliness require that the complaining employee consult a counselor at the employer agency's EEO office within 45 days of the alleged discriminatory act. 29 C.F.R. § 1614.105(a)(1). " The 45-day period serves as a statute of limitations; thus, as a general rule, claims alleging conduct that occurred more than 45 days prior to the employee's initiation of administrative review are time-barred." *Fitzgerald v. Henderson,* 251 F.3d 345, 359 (2d Cir.2001); *accord Rivera v. United States Postal Serv.,* No. 95 Civ. 1850(CPS), 1996 WL 435433, *3 (E.D.N.Y. July 25, 1996) (granting motion for summary judgment on grounds that plaintiff did not meet with EEO counselor until 58 days after alleged incident). The Supreme Court has urged that " strict adherence" to Title VII's timely filing requirements is " the best guarantee of evenhanded administration of the law." *Morgan,* 536 U.S. at 108 (quoting *Mohasco Corp. v. Silver,* 447 U S. 807, 826 (1980)).

The continuing violation doctrine offers one means by which a plaintiff can assert otherwise time-barred acts. The continuing violation doctrine applies if a plaintiff has experienced a continuous policy of discrimination. *Fitzgerald,* 251 F.3d at 359. If satisfied, the continuing violation doctrine allows a plaintiff " to bring suit challenging all conduct that was a part of that [continuing] violation, even conduct that occurred outside the limitations period." *Cornwell v. Robinson,* 23 F.3d 694, 704 (2d Cir.1994). To demonstrate that the doctrine applies, the plaintiff is required to show that the related acts were the result of a discriminatory policy rather than isolated instances of discrimination. *Fitzgerald,* 251 F.3d at 359; *Cornwell,* 23 F.3d at 704. It is well-settled that " multiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation." *Lambert v. Genesee Hosp.,* 10 F.3d 46, 53 (2d Cir.1993). Even prior to *Morgan,* the doctrine was disfavored in the Second Circuit. *See, e.g., Curtis v. Airborne Freight Corp.,* 87 F.Supp.2d 234, 244 (S.D.N.Y.2000) (collecting cases).

*4 In *Morgan,* the Supreme Court further limited the circumstances under which the continuing violation doctrine may save an otherwise time-barred act. Distinguishing between discrete discriminatory acts and ongoing violations such as hostile work environment claims, *Morgan,* 536 U.S. at 113-16, the Court held that discrete acts " are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act.... Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable ' unlawful employment practice." ' *Id.* at 113-14. The Court reasoned that " [d]iscrete acts such as termination, *failure to promote,* denial of transfer, or refusal to hire are easy to identify." *Id.* at 114 (emphasis added). In contrast, the Court found that the continuing violation doctrine could save otherwise time-barred claims where a plaintiff alleges a hostile work environment. In so holding, the Court observed that the " very nature" of claims for hostile work environment " involves repeated conduct. The ' unlawful employment practice' therefore cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own." *Id.* at 115 (internal citation and parenthetical explanation omitted).

As both *Morgan* and subsequent case law make clear, individual instances of non-promotions are discrete discriminatory acts. *See id.* at 114; *Forsyth v. Fed. Employment & Guidance Serv.,* 409 F.3d 565, 572 (2d Cir.2005); *Sackey v. City of New York,* No. 04 Civ. 2775(WHP), 2006 WL 337355, *5 (S.D.N.Y. Feb. 15, 2006); *Gross v. Nat'l Broad. Co., Inc.,* 232 F.Supp.2d 58, 68 (S.D.N.Y.2002). Of course, an employee will be able to identify the day on which a failure to promote occurs, and a single failure to promote is actionable even if no other discriminatory act has occurred.[FN2] *Cf. Morgan* 536 U.S. at 113-15. Hence, if plaintiff sought recovery for each non-promotion, it is clear that the claims based on acts prior to 2003 could not be sustained. *See Branch v.*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                         Page 4
Not Reported in F.Supp.2d, 2006 WL 871028 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

*Guiderland Cent. Sch. Dist.,* 239 F.Supp.2d 242, 254 (N.D.N.Y.2003) (" It is conceded that if plaintiff was seeking recovery for each independent and separate instance of alleged retaliation ... then *Morgan* would control and plaintiff, to the extent that he seeks relief based on (time barred) conduct ..., would have no recourse." ). In this case, however, plaintiff has framed the failures to promote as part of a (presumably discriminatory) pattern. Accordingly, Mirasol argues that the continuing violation doctrine applies to the discrete acts of non-promotions. Plaintiff's attempt to save the time-barred acts by framing them as a " pattern" fails.

> FN2. It is possible that an employee could be unaware that discrimination motivated a failure to promote at the time the non-promotion occurred. *Morgan* explicitly noted that it did not have an occasion to resolve " whether the time begins to run when the injury occurs as opposed to when the injury reasonably could have been discovered." 536 U.S. at 114 n. 7. In this case, plaintiff complained to her supervisors that she was not promoted because of her race after both the 1985 and 2001 failures to promote. (Mirasol Decl. ¶¶ 9, 22). Hence, she does not allege that she failed to complain to the EEO counselor because she was unaware of the alleged injury.

Even assuming plaintiff can assert a " pattern and practice" claim individually,[FN3] " a plaintiff does not properly allege an ongoing discriminatory policy simply by invoking the magic words ' pattern' or ' practice." ' *Blake v. Bronx Lebanon Hosp. Ctr.,* No. 02 Civ. 3827(CBM), 2003 WL 21910867, *5 (S.D.N.Y. Aug. 11, 2003) (citing *Gross,* 232 F.Supp.2d at 68) (granting motion to dismiss where plaintiff alleged pattern and practice of discriminatory acts falling outside statute of limitations); *accord Timothy v. Our Lady of Mercy Med. Ctr.,* No. 03 Civ. 3556(RCC), 2004 WL 503760, *3 (S.D.N.Y. Mar. 12, 2004) (same). On both motions for summary judgment and motions to dismiss, courts in this circuit have consistently rejected attempts to save otherwise time-barred claims by conclusory allegations that a series of related discrete acts constituted a pattern or practice. *Sackey,* 2006 WL 33735E, at *5 (motion for summary judgment); *Idrees v. City of New York Dep't of Parks & Recreation,* No. 04 Civ. 2197, 2005 WL 1026027, * *6-7 (S.D.N.Y. May 3, 2005) (motion to dismiss report and recommendation); *Timothy,* 2004 WL 503760, at * *3-4 (on motion to dismiss, noting that " courts should not readily allow plaintiffs to allege pattern or practice claims based on a series of discriminatory acts" ); *Blake,* 2003 WL 21910867, at *5 (motion to dismiss); *Gross,* 232 F.Supp.2d at 68 (motion for summary judgment).

> FN3. *Morgan* did not address whether the continuing violation doctrine could be applied to pattern or practice claims. 536 U.S. at 115 n. 9. Nevertheless, the Court rejected Morgan's argument that Title VII requires timely filing within 180 or 360 days of a discriminatory *practice* rather than a *discrete act.* In so holding, the Court observed that " [t]here is simply no indication that the term ' practice' [in Title VII] converts related discrete acts into a single unlawful practice for the purposes of timely filing." *Id.* at 111.

*5 Relying on *Branch v. Guilderland Central School District,* 239 F.Supp.2d 242 (N.D.N.Y.2003), and *Bloom v. New York City Board of Education Teachers' Retirement System,* No. 00 Civ. 2728(HBP), 2003 WL 1740528 (S.D.N.Y. Apr. 3, 2003), plaintiff argues that dismissal is inappropriate at the motion to dismiss stage. These cases, however, are distinguishable. Though decided after *Morgan, Bloom* does not address the effect of the Court's decision on the continuing violation doctrine. 2003 WL 1740528, at * *7-8. In *Branch,* although the complaint alleged retaliation, the alleged acts of retaliation were comparable to a claim of hostile work environment to the extent they alleged harassment. 239 F.Supp.2d at 254 n. 9 (supervisor " began a persistent campaign of harassing and retaliatory behavior against plaintiff" ).

Plaintiff further argues that defendant relies exclusively on cases decided at the summary judgment stage and that therefore the current motion is premature. As discussed, courts in this circuit have granted motions to dismiss for failure to state a claim where, as here, plaintiff's sole basis for the application of the continuing violation doctrine is the conclusory allegation that the acts were a pattern. *Timothy,* 2004 WL 503760, at *3 (motion to dismiss); *Blake,* 2003 WL 21910867, at *5 (motion to dismiss); *Idrees,* 2005 WL 1026027, at * *6-7 (granting defendant's partial motion to dismiss claims alleging pattern of discrimination based on failure to

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 871028 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

Page 5

promote).

Though I agree with plaintiff that, contrary to defendant's position, the continuing violation doctrine is not necessarily "dead letter" outside of the hostile work environment context, the doctrine cannot save the time-barred actions of this case. Plaintiff's assertion that the acts resulted from a pattern or practice rests on her claim that she "has been subjected to a pattern of non-promotions on the basis of her East Asian race and Filipino national origin, from 1985 to the present. She has suffered a continuing violation of her civil rights, since the Census Bureau's repeated failures to promote her amount to a 'series of related acts.'" (*Id.* ¶ 16; *see also* Mirasol Decl. ¶ 21 ("I realized that a continued pattern of denying me promotions had been put into effect by the Bureau.")). The complaint alleges no facts to support the conclusion that "intentional discrimination was the defendant's 'standard operating procedure,'" as she must in a pattern or practice claim. *Robinson v. Metro-North Commuter R.R. Co.,* 267 F.3d 147, 158 (2d Cir.2001) (quoting *Int'l Bhd. of Teamsters v. United States,* 431 U.S. 324, 336 (1977)). To the contrary, the non-promotions in question are not alleged to have been connected by anything specific. The four or five acts occurred sporadically over an eighteen-year period. To the extent plaintiff has identified her supervisor or the decision-maker in only three of the non-promotions, they involved different supervisors and decision-makers at different offices within the Bureau. Moreover, *Morgan*'s holding that discrete acts "are not actionable if time barred, even when they are related to acts alleged in timely filed charges" will have no force if a plaintiff can avoid the statute of limitations simply by reframing in a conclusory manner an otherwise time-barred cause of action as a pattern or practice claim.

### CONCLUSION

*6 Accordingly, defendant's motion to dismiss all pre-September 17, 2003, claims as time-barred is granted. Of course, the time-barred acts alleged in the complaint. "'may constitute relevant background evidence'" in future proceedings involving the remaining claim. *Morgan,* 536 U.S. at 112 (quoting *United Air Lines, Inc. v. Evans,* 431 U.S. 553, 558 (1977)).

SO ORDERED.

S.D.N.Y.,2006.
Mirasol v. Gutierrez
Not Reported in F.Supp.2d, 2006 WL 871028 (S.D.N.Y.)

END OF DOCUMENT