**Westlaw.**

Slip Copy                                                                                                              Page 1
Slip Copy, 2007 WL 1030294 (E.D.N.Y.)

**(Cite as: Slip Copy)**

C
Richards v. City of New York
E.D.N.Y.,2007.
Only the Westlaw citation is currently available.
United States District Court,E.D. New York.
Ricardo RICHARDS, Plaintiff,
v.
The CITY OF NEW YORK, et. al., Defendant.
**No. 05 CV 1163(SLT)(MDG).**

March 30, 2007.

Eric Sanders, Jeffrey L. Goldberg, P.C., Lake Success, NY, Susan P. Bernstein, Jeffrey L. Goldberg PC, New Hyde Park, NY, for Plaintiff.
Eric Jay Eichenholtz, NYC Law Department, Office of the Corporation Counsel, New York, NY, for Defendant.

### MEMORANDUM and ORDER

TOWNES, United States District Judge.
*1 Plaintiff Ricardo Richards (" Richards" or " Plaintiff" ) commenced this suit, asserting 11 causes of action against 27 defendants, including the City of New York, New York City Police Department (" NYPD" ), Raymond W. Kelly, Neldra M. Zeigler, Charles V. Campisi, George D. O'Brien, Julio C. Ordonez, Jr., Scott Woltering, James Wunderlich, John MacGuire, Michael Morley, Michael McVeigh, Andrew Celenti, Todd Fecht, Edward Wilson, John Webber, Nicholas Masi, John Vaccaro, William T. Morris, Michael Tarpey, Daniel Engel, Thomas V. Dale, Wes Sosna, Charles V. Talamo, " Fowler," Carlo Barelli, and Martin Merensky, all of whom, at the relevant times described in the Complaint, were employees of the NYPD. Plaintiff subsequently amended his Complaint to add new claims and two additional defendants, Richard Dee and Michael Fogarty, bringing the total number of defendants to 29, and then filed a Second Amended Complaint on August 25, 2005.[FN1] The essence of Plaintiff's Second Amended Complaint is that Plaintiff was subjected to discrimination and retaliation in violation of Title VII, that defendants violated his constitutional right to equal protection and that the defendants allegedly violated the New York State Human Rights Law and New York City Human Rights Law.

FN1. The Second Amended Complaint contained no substantive changes other than to specifically identify two previously unidentified defendants.

The City of New York, NYPD, Raymond W. Kelly, Neldra M. Zeigler, Charles V. Campisi, George D. O'Brien, Michael Morley, Andrew Celenti, Todd Fecht, John Webber, Nicholas Masi, William T. Morris, Michael Tarpey, Daniel Engel, Thomas V. Dale, Wes Sosna, Charles V. Talamo, " Fowler," Carlo Barelli, Martin Merensky, Richard Dee and Michael Fogarty (the " City Defendants" )[FN2] now, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, move to dismiss, in part, the Second Amended Complaint because it fails to state a cause of action as to certain events and certain defendants.

FN2. Other defendants have either not yet been served and/or have not yet requested legal representation from the New York City Law Department.

### BACKGROUND

Plaintiff, an African-American male, has been employed by the NYPD as a police officer, since on or about July 1, 1998. The Seconded Amended Complaint sets forth a litany of alleged acts that have occurred since April 2000. The following facts are taken from Plaintiff's Second Amended Complaint (" Compl." ).[FN3]

FN3. The factual findings are taken from the Second Amended Complaint and are assumed to be true for the purposes of this motion.

*A. The April 2000 Incident*

On or about April 3, 2000, Plaintiff, a member of the 104th Precinct, was assigned to respond to a 911 call by the division radio dispatcher, to investigate an automobile accident. (Compl. at ¶ 16.) When Plaintiff arrived at the scene, he and his partner, Officer Potter, found an individual who was in an accident because she was allegedly driving while intoxicated and learned that the individual was an off-duty police officer. (Compl. at ¶¶ 17-19.) The driver, a white female, was later identified as an officer named

Slip Copy Page 2
Slip Copy, 2007 WL 1030294 (E.D.N.Y.)

**(Cite as: Slip Copy)**

Cheryl Gaffney of the 83rd Precinct. (Compl. at ¶ 19.) Plaintiff believes that Officer Potter did not want to call the patrol supervisor because he was trying to cover for Officer Gaffney. (*Id.*) Plaintiff contacted the patrol supervisor who, after arriving at the location of the accident, determined that Officer Gaffney was unfit for duty and ordered her arrest. (Compl. at ¶¶ 20, 21.)

*2 According to Plaintiff, his involvement with the arrest of Ms. Gaffney upset her colleagues in the 83rd precinct. (Compl. at ¶ 22.) Three of her colleagues, defendants Scott Woltering, James Wunderlich, and John Macguire, drove to the 104th Precinct and threatened Plaintiff in the locker room, saying to him " What's the matter with you? You better watch your back because you're not going to get any backup in the 83. Be careful, you may catch a bullet." (Compl. at ¶ 23, 24.) After Plaintiff informed Sergeant Galan of the alleged harassment, Woltering, Wunderlich and Macguire were subsequently suspended. (Compl. at ¶ 24.) Defendant James Vaccaro, a Patrolman's Benevolent Association delegate, handled all of the suspensions. (Compl. at ¶ 25.)

Over the next few months, Plaintiff endured an " indifferent, hostile, and dangerous work environment." (Compl. at ¶ 26.) His locker was moved, shaken and disrupted, and his hat, rain coat and baton stolen, and no one wanted to speak to or work with him. (*Id* .) Plaintiff claims that middle and lower management of the NYPD was aware of Plaintiff's dilemma but did nothing to support or protect him. (*Id.*) Plaintiff was eventually transferred to the 113th Precinct, where he was subjected to the same hostile and indifferent work environment, and called " a rat." (Compl. at ¶¶ 27, 30.) He was given dangerous assignments and he was having trouble sleeping. (Compl.¶¶ 31, 32.)

*B. The 2001 Arrest*

On or about August 17, 2001, Plaintiff was arrested by defendants Edward Wilson, John Webber and Nicholas Masi, of the 103rd Precinct's Anti-Crime Unit, for allegedly soliciting a prostitute. (Compl. at ¶ 36.) During this incident, Plaintiff's nose was fractured when Wilson punched Plaintiff in his face, placed him in an illegal choke hold, and slammed Plaintiff's body onto the hood of an unmarked radio patrol vehicle. (Compl. at ¶ 37.) When Plaintiff arrived at the arresting precinct, defendant Andrew Celenti did not allow Plaintiff to go to the hospital for his alleged injuries. (Compl. at ¶ 40.) According to Plaintiff, defendant Todd Fecht was " aware" of defendants Wilson, Webber and Masi's misconduct, but " took no action." (Compl. at ¶ 42.)

An investigation into the incident followed, and during the initial investigation, defendants Wilson, Webber and Masi were represented by defendant Vaccaro, of the Benevolent Association. (Compl. at ¶ 43.) Defendants Morris, Morley and McVeigh were " present" during the investigation into the incident and Plaintiff complains that they did nothing to redress the misconduct of defendants Wilson, Webber, or Masi. (Compl. at ¶ 44.) Further, defendant Dale was " aware of this investigation" but did nothing to redress the misconduct of the three defendants. (Compl. at ¶ 45.)

Plaintiff was suspended from duty and charged with misconduct for allegedly soliciting the prostitute. (Compl. at ¶¶ 52, 55.) The charges were eventually dismissed when the NYPD Commissioner adopted the findings and recommendations of NYPD Assistant Deputy Commissioner of Trials that Plaintiff be found not guilty of the alleged misconduct. (Compl. at ¶¶ 59-61.)

*3 Following Plaintiff's arrest, he was sent for a psychological evaluation. (Compl. at ¶ 46.) Plaintiff claims that defendant Michael Tarpey forcibly escorted him to Long Island Jewish Hospital for the evaluation after he reacted negatively to the Police Department psychologist. (*Id.*) After being found psychologically fit, Plaintiff was allowed to return home. (*Id.*) Following the end of his suspension, Plaintiff was subjected to quarterly psychological evaluations by NYPD. (Compl. at ¶ 55.)

On or about August 21, after Plaintiff filed a complaint with the Civilian Complaint Review Board (" CCRB" ) concerning the incident, his police radio was removed later in the day. (Compl. at ¶ 47.) The radio was returned to him after his prior counsel contacted Charles V. Campisi, the Chief of the NYPD Internal Affairs Bureau (" IAB" ). (Compl. at ¶ 48.) His arrest was later investigated by IAB, and George O'Brien and Julio Ordonez, who supervised Plaintiff's investigation, " closed it without re-dressing the defendants's misconduct and retaliation." (Compl. at ¶ 51).

*C. Performance Evaluation at Viper 6*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Plaintiff was served with disciplinary charges related to his arrest on or about August 24, 2001. (Compl. at ¶ 52.) He was then transferred to the Viper 6 unit where he remained until March 17, 2004. (Compl. at ¶¶ 62, 63.) While at Viper 6, Plaintiff claims he had " no problems" with his peers or supervisors. (Compl. at ¶ 57.) Plaintiff alleges, however, that he was harassed at Viper 6 by defendant David Engel, who downgraded Plaintiff's 2002 evaluation. (Compl. at ¶ 62.)

### D. Command Disciplines at the 107th Precinct

On or about March 17, 2004, Plaintiff was transferred to the 107th Precinct where the hostile treatment continued under the administration of defendant Charles Talamo. (Compl. at ¶ 63.) Plaintiff alleges that defendant Talamo was aware of Plaintiff's childcare hardship, but " when Plaintiff requested midnight tours, his requests were denied," while " other similarly situated white officers were accommodated." (Compl. at ¶¶ 63, 64.) Beginning on or about May 2004, Plaintiff received command disciplines from defendant Talamo concerning alleged misconduct while he was assigned to the 107th precinct. (Compl. at ¶ 65.)

On November 10, 2004, Plaintiff filed his charge of discrimination with the Equal Employment Opportunity Commission (" EEOC" ). (Compl. at ¶ 73.) On March 2, 2005, Plaintiff commenced the instant action. In the Second Amended Complaint, Plaintiff claims he has been subject to further harassment since filing the charge of discrimination, including further command disciplines and an order requiring him to " clean the bathroom." (Compl. at ¶¶ 84-89.)

### DISCUSSION

#### A. Legal Standard

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept " as true the facts alleged in the complaint," *Jackson Nat'l Life Ins. Co. v. Merrill Lynch & Co., Inc.,* 32 F.3d 697, 699 (2d Cir.1994), and may grant the motion only if " it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Thomas v. City of New York,* 143 F.3d 31, 36-37 (2d Cir.1998) (citations omitted). The question for the Court " is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Bernheim v. Litt,* 79 F.3d 318, 321 (2d Cir.1996) (internal quotation marks and citations omitted). All reasonable inferences are to be drawn in the plaintiff's favor. *Shah v. Meeker,* 435 F.3d 244, 248 (2d Cir.2006). The Court's consideration is limited to the " facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference." *Kramer v. Time Warner Inc.,* 937 F.2d 767, 773 (2d Cir.1991).

#### B. All Claims Against NYPD Must Be Dismissed

*4 City Defendants correctly argue that, as an agency of the City of New York, NYPD may not be sued in its independent capacity. Pursuant to the terms of the New York City charter, all actions that allege violations of law against a department of the City must be brought in the name of the City of New York, and not the department. *See* New York City Charter § 396 (" All actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law." ); *see also Carmody v. City of New York,* No. 05-8084, 2006 WL 1283125, at *2 (S.D.N.Y. May 11, 2006) (holding that the New York City Police Department is not a suable entity). Consequently, all claims against the NYPD are dismissed.[FN4]

> FN4. In a letter to the Court dated June 27, 2005, Plaintiff clarified that he is not naming Viper 6, a unit of the NYPD, as a defendant. However, to the extent that Viper 6 is named as a defendant, any claims against Viper 6 would fail for the same reasons.

#### C. Title VII Claims Against Individual Defendants Must be Dismissed

Plaintiff's claims against the individual defendants must be dismissed because there is no individual liability under Title VII. *See Tomka v. Seiler Corp.* 66 F.3d 1295, 1317 (2d Cir.1995), *abrogated on other grounds by Burlington Indus. v. Ellerth,* 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d (1998); *see also Wrighten v. Glowski,* 232 F.3d 119, 120 (2d Cir.2000). In *Tomka*, the Second Circuit focused on the language of Title VII and the word " employer" and inferred that Congress never sought to hold individuals liable under Title VII. 66 F.3d at 1314.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                          Page 4
Slip Copy, 2007 WL 1030294 (E.D.N.Y.)
(Cite as: Slip Copy)

The Court reasoned that the agent clause in Title VII, which limits liability to employers with fifteen or more employees, was designed to protect small entities from expensive discrimination litigation. *Id.* Accordingly, the Court concluded that it was implausible to think that Congress would immunize small employers, while at the same time imposing liability against individual employees. *Id.* Accordingly, Plaintiff cannot assert any Title VII claim against any defendant other than the City of New York and any Title VII claims asserted against any other defendant must be dismissed.

### D. Plaintiff's Conspiracy Claims Under Sections 1983 and 1985 Must Be Dismissed

A conspiracy claim under 42 U.S.C. § 1983 " should ... be stated as a claim under [s]ection 1985, which applies specifically to conspiracies." *Webb v. Goord,* 340 F.3d 105, 110 (2d Cir.2003). Section 1985(3) prohibits two or more persons from conspiring to " depriv[e], either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws ..." 42 U.S.C. § 1985(3). Section 1985(3) does not create any substantive right; rather, it provides a remedy for conspiracies to violate a person's right to equal protection. *See Sherlock v. Montefiore Med. Ctr.,* 84 F.3d 522, 527 (2d Cir.1996). To establish a claim of conspiracy under § 1985, a plaintiff must show (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right of a citizen of the United States. *Mian v. Donaldson, Lufkin, & Jenrette Securities Corp.,* 7 F.3d 1085, 1087 (2d Cir.1993); *see also Manbeck v. Katonah-Lewisboro School Dist.,* 435 F.Supp.2d 273, 279-280 (S.D.N.Y.2006). Furthermore, the conspiracy must also be motivated by " some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." *Mian,* 7 F.3d at 1088 (quoting *United Bhd. of Carpenters, Local 610 v. Scott,* 463 U.S. 825, 829, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983)). " In order to maintain an action under [s]ection 1985, a plaintiff ' must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end.' " *Webb,* 340 F.3d at 110-11 (quoting *Romer v. Morgenthau,* 119 F.Supp.2d 346, 363 (S.D.N.Y.2000)). The Second Circuit has held that a " complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss." *Gyadu v. Hartford Ins. Co.,* 197 F.3d 590, 591 (2d Cir.1999); *see also Pinero v. Long Island State Veterans Home,* 375 F.Supp.2d 162, 169 (E.D.N.Y.2005).

*5 Plaintiff has offered only conclusory allegations of defendants' alleged conspiracy, which are insufficient to support a § 1985 claim. Instead of providing any factual basis for his claims, Plaintiff urges the Court to infer a " meeting of the minds" from the " factual events" set forth in the Complaint, but the facts in the Complaint do not support any such inference. In fact, Plaintiff's conspiracy claim, based on these alleged facts, is logically inconsistent. It would be difficult to show a conspiracy existed where the alleged conspirators, including Woltering, Wunderlich and MacGuire, were suspended by the NYPD, another alleged conspirator, for their alleged harassment of Plaintiff. Therefore, Plaintiff's unsupported conspiracy claims must be dismissed.

Moreover, even if Plaintiff's conspiracy claims were adequately pled, Plaintiff's claim would still fail because it is barred by the intra-corporate conspiracy doctrine. This doctrine, also known as the intra-enterprise conspiracy doctrine, provides that a corporation or public entity " generally cannot conspire with its employees or agents as all are considered a single entity." *Everson v. New York City Transit Authority,* 216 F.Supp.2d 71, 76 (E.D.N.Y.2002) (citations omitted). Plaintiff argues that courts have recognized a distinction between state and private corporate entities and have declined to apply the doctrine in instances where the employer was a state entity. *See Wahad v. Federal Bureau of Investigation,* 813 F.Supp. 224, 232 (S.D.N.Y.1993). While the Court in *Wahad* declined to apply the intra-corporate conspiracy doctrine in that particular case, courts in this distract have consistently applied the intra-corporate or intra-enterprise theory in recent cases factually similar to the instant action. *See Danielak v. City of New York,* No. 02-2349, 2005 WL 2347095, at *14 (E.D.N.Y. Sept. 26, 2005) (holding plaintiff's conspiracy claims barred by intra-corporate conspiracy doctrine because all of the individual defendants were employees of the New York City Police Department, and were acting within the scope of their employment as police officers when they arrested plaintiff); *Johnson v. City of New York,* No.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                    Page 5
Slip Copy, 2007 WL 1030294 (E.D.N.Y.)

**(Cite as: Slip Copy)**

01-1860, 2004 WL 502929, at *5 (E.D.N.Y. Jan. 12, 2004) (finding that intra-corporate conspiracy doctrine bars plaintiff's claims because all of the individual defendants' actions occurred while they were officers, agents or employees of the City of New York); *Malone v. City of New York,* No. 05-2882, 2006 WL 2524197, at *11 (E.D.N.Y. Aug. 30, 2006) (finding intra-corporate conspiracy doctrine bars plaintiff's claims because all defendants are Department of Corrections employees); *Everson,* 216 F.Supp.2d at 76 (dismissing plaintiff's conspiracy claim because New York City Transit Authority cannot conspire with one of its own employees under the intra-corporate conspiracy doctrine). Accordingly, Plaintiff's conspiracy claims must be dismissed because the City Defendants cannot be found to have conspired with fellow agents of the City and/or with the City.[FN5] To the extent Plaintiff has alleged a conspiracy claim against any of the individual defendants, those claims must be dismissed as well.[FN6]

> FN5. City Defendants have also argued that Plaintiff's claims under § 1985(3) are time-barred to the extent certain events fall outside the statutory period and also that certain defendants lacked personal involvement sufficient to make them liable. Because the Court has dismissed Plaintiff's § 1985 claim in its entirety, it will not address those additional issues.

> FN6. The Court notes that, under 42 U.S.C. § 1986, liability is imposed on an individual who has knowledge of acts prohibited by 42 U.S.C. § 1985, but fails to prevent them. However, without a violation of § 1985, there can be no violation of § 1986. *See Mian,* 7 F.3d at 1088. Furthermore, Plaintiff has not pled any specific § 1986 violations in his Complaint.

*E. Section 1981 and 1983 Claims Against Certain Defendants Must Be Dismissed*

**\*6** Plaintiff names 27 defendants in their individual capacities in his Second Amended Complaint. City Defendants argue that, with respect to at least nine of those defendants, Kelly, Zeigler, Campisi, Morris, Morley, McVeigh, Dale, O'Brien, and Ordonez, the Second Amended Complaint does not allege that they had any personal involvement in the allegedly unconstitutional acts and, therefore, the constitutional claims against them must be dismissed.

In order to hold an individual liable pursuant to 42 U.S.C. § 1981, which prohibits intentional race-based discrimination in the workplace,[FN7] " a plaintiff must demonstrate some affirmative link to causally connect the actor with the discriminatory action." *Whidbee v. Garzarelli Food Specialties, Inc.,* 223 F.3d 62, 75 (2d Cir.2000) (internal quotations omitted). " A claim seeking personal liability under § 1981 must be predicated on the actor's personal involvement." *Id.* " Personal involvement ' includes not only direct participation in the alleged violation but also gross negligence in the supervision of subordinates who committed the wrongful acts and failure to take action upon receiving information that constitutional violations are occurring.' " *Abdi v. Brookhaven Science Associates, LLC,* 447 F.Supp.2d 221, 226 (E.D.N.Y.2006) (quoting *Patterson v. County of Oneida,* 375 F.3d 206, 229 (2d Cir.2004)).

> FN7. Title 42, section 1981 of the United States Code provides:
> (a) All persons within the jurisdiction of the United States shall have the same right in every State ... to make and enforce contracts ... and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens ...
> (b) For purposes of this section, the term " make and enforce contracts" includes the making, performance modification and termination of contracts, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship.
> Section 1981 provides a cause of action for race-based employment discrimination based on a hostile work environment. *Whidbee Garzarelli Food Specialties, Inc.,* 223 F.3d 62, 69 (2d Cir.2000).

It is also " well settled in this Circuit that ' personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.' " [FN8] *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995) (quoting *Moffitt v. Town of Brookfield,* 950 F.2d 880, 886 (2d Cir.1991)). It is equally established that liability under § 1983 may not be predicated upon a theory of respondeat superior or vicarious liability. *Meriwether v. Coughlin,* 879 F.2d 1037, 1046 (2d Cir.1989) (" There is, of course, no vicarious liability in § 1983

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

actions."). In addition, a defendant in a § 1983 action may not be held liable merely because he or she holds a position of authority. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994). Rather, personal involvement of a supervisory or high official may be established by evidence of direct participation by that official in the challenged conduct, or by evidence of that official's "(1) failure to take corrective action after learning of a subordinate's unlawful conduct, (2) creation of a policy or custom fostering the unlawful conduct, (3) gross negligence in supervising subordinates who commit unlawful acts, or (4) deliberate indifference to the rights of others by failing to act on information regarding the unlawful conduct of subordinates." *Hayut v. State Univ. of New York,* 352 F.3d 733, 753 (2d Cir.2003).

> FN8. Title 42, Section 1983 of the United States Code states:
> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... 42 U.S.C. § 1983.
> This statute is a "method for vindicating federal rights elsewhere conferred." *Albright v. Oliver,* 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994). A § 1983 claim has two essential elements: (1) the defendant acted under color of state law; and (2) as a result of defendant's actions, the plaintiff suffered a denial of his constitutional rights or privileges. *See Annis v. County of Westchester,* 136 F.3d 239, 245 (2d Cir.1998).

City Defendants argue Plaintiff's claims pursuant to § 1981 or § 1983 with respect to the nine defendants listed above must be dismissed because Plaintiff has not established any personal involvement by any of the nine defendants in any alleged discriminatory action. City Defendants argue, and the Court agrees, that there is no basis for the inclusion of Commissioner Kelly in the Complaint, because Plaintiff has not pointed to any involvement at all on the part of the Commissioner in this action. Plaintiff argues that charges are proper against Kelly because he is the primary decision maker and sets policy for the entire department, but, as stated above, it is well-established that a defendant in a § 1983 action may not be held liable merely because he holds a high position of authority. *Wright,* 21 F.3d at 501; *see also Davis v. County of Nassau,* 355 F.Supp.2d 668, 676 (E.D.N.Y.2005). The charges against Campisi are similarly without merit as Plaintiff only alleges that Campisi oversaw and conducted the Internal Affairs Bureau ("IAB"), which was investigating Plaintiff's charges.[FN9] O'Brien and Ordonez, who were allegedly "supervising" Plaintiff's IAB Complaint, were only named because they allegedly "supervised" a complaint filed by Plaintiff that did not result in the outcome that Plaintiff desired. Therefore, like defendants Kelly and Campisi, the claims against O'Brien and Ordonez must be dismissed due to the fact that these defendants were not alleged to have been personally involved in any unconstitutional conduct, nor can their actions be characterized as "gross negligence" as Plaintiff has presented no evidence that the investigation and supervision of his complaints were handled improperly.

> FN9. Furthermore, the only action that defendant Campisi was alleged to have taken with respect to Plaintiff was to intervene on Plaintiff's behalf and secure the return of Plaintiff's police radio, an action that apparently benefitted Plaintiff.

*7 As for defendants Morris, Morely, McVeigh and Dale, it appears they are named in the complaint for apparently no reason other than they were "present" during an "initial investigation" into the actions of the officers who arrested Plaintiff and "did nothing to redress the misconduct of defendants." However, Plaintiff has not alleged that these defendants were authorized to initiate disciplinary action against the officers (as there is no indication that Morris, Morely, McVeigh or Dale were supervisors of any kind). Also, because this investigation occurred after Plaintiff's arrest, Plaintiff cannot claim that these NYPD officers could have somehow intervened and prevented the alleged arrest and alleged use of excessive force.

With respect to defendant Zeigler, an NYPD Deputy Commissioner, Plaintiff alleges that he wrote letters to Deputy Commissioner Zeigler through counsel claiming that the actions of certain officials was unlawful. However, "courts have concluded that

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                                  Page 7
Slip Copy, 2007 WL 1030294 (E.D.N.Y.)

(Cite as: Slip Copy)

merely sending a letter to a supervisory official does not rise to the level of personal liability." *Carmody v. City of New York,* No. 05-8084, 2006 WL 1283125, at *4 (E.D.N.Y. May 11, 2006); *see also Hernandez v. Goord,* 312 F.Supp.2d 537, 547 n. 6 (S.D.N.Y.2004) (receipt of a letter or grievance is insufficient to impute personal involvement); *Rivera v. Goord,* 119 F.Supp.2d 327, 344 (S.D.N.Y.2000) (Plaintiff " merely asserts that he wrote to these [supervisory] defendants complaining about the conduct of various Medical and Correctional Defendants and that his complaints were ignored. These allegations are insufficient to hold these Official/Supervisory Defendants liable under § 1983." ). Therefore, the § 1981 and § 1983 claims against defendant Zeigler must also be dismissed.

### F. State Law Claims Against Certain Individual Defendants Must Be Dismissed

Although there is no individual liability under Title VII, individual liability is permitted under the New York State Human Rights Law. *See Tomka,* 66 F.3d at 1313. The Second Circuit has applied the rule of " actual participation" to hold individual defendants personally liable for discriminatory conduct under the Human Rights Law. *See Tomka,* 66 F.3d at 1317 (" [A] defendant who actually participates in the conduct giving rise to a discrimination claim may be held personally liable under the HRL." ); *see also Jong-Fwu v. Overseas Shipholding Group, Inc.,* No. 00-9682, 2002 WL 1929490, at *7 (S.D.N.Y. Aug. 21, 2002) (holding that while an individual can be sued under both the New York State Human Rights Law and New York City Human Rights Law, the plaintiff must show that the individual defendant engaged in " discriminatory acts" ).

As described above, none of the listed nine defendants participated in any of the alleged acts of discrimination. Therefore, Plaintiff's claims against Kelly, Zeigler, Campisi, Morris, Morley, McVeigh, Dale, O'Brien, and Ordonez pursuant to the New York State and City Human Rights Laws are dismissed.

### G. Applicable Statutes of Limitations

*8 City Defendants argue that many of Plaintiff's claims are also barred by statutes of limitations. Because Plaintiff has filed claims pursuant to a wide variety of statutes, each has a different limitations period.

### 1. Title VII Claims

City Defendants argue that many of Plaintiff's Title VII claims are barred by the statute of limitations because a plaintiff may not assert Title VII claims based on events that occurred more than 300 days prior to the filing of an EEOC charge. 42 U.S.C. § 2000e-5(e)(1). Plaintiff filed a charge of discrimination with the EEOC on or about November 10, 2004; thus, the limitations period in his case began 300 days earlier, on January 15, 2004. This would mean that all of Plaintiff's Title VII claims that arose from events prior to his transfer to the 107th precinct are time-barred.

Plaintiff argues that the continuing violation doctrine should be applied to his Title VII claims. Prior to 2002, the continuing violation doctrine permitted recovery for discriminatory conduct that occurred outside of the applicable limitations period if the conduct was part of a " practice or policy" of discrimination. *See Nakis v. Potter,* 422 F.Supp.2d 398, 409 (S.D.N.Y.2006). However, the scope of the continuing violation doctrine was substantially restricted by the Supreme Court's decision in *National Railroad Passenger Corp. v. Morgan,* 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). In that case, the Supreme Court held that " each discriminatory act starts a new clock for filing charges alleging that act." 536 U.S. at 113. The Court went on to identify " termination, failure to promote, denial of transfer, or refusal to hire" as examples of conduct that constituted a discrete discriminatory act. *Id.* The Court did, however, note that a hostile work environment would support the application of the continuing violation doctrine because such a claim " is composed of a series of separate acts that collectively constitute one unlawful employment practice." *Id.* at 117. Thus, where a plaintiff alleges a hostile work environment claim, conduct outside the applicable limitations period could be asserted so long as one act giving rise to the hostile-environment claim was within the limitations period. *Id.*

Therefore, for the purposes of analyzing Plaintiff's hostile environment claim under Title VII, the Court will consider conduct that occurred before January 15, 2004. However, Plaintiff is precluded from asserting in this action any pre-January 15, 2004 conduct by defendants as specific, compensable acts of discrimination or retaliation under Title VII. But, "

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                              Page 8
Slip Copy, 2007 WL 1030294 (E.D.N.Y.)
(Cite as: Slip Copy)

time-barred conduct may still be offered as evidence of discriminatory intent to support timely claims." *Nakis,* 422 F.Supp.2d at 410; *see also National Railroad,* 536 U.S. at 113 (" Nor does the statute bar an employee from using prior acts as background evidence to support a timely claim." )

*2. 1981 and 1983 Claims*

**\*9** City Defendants also argue that certain of Plaintiff's claims under §§ 1981 and 1983 are time-barred. The statute of limitations for § 1983 actions arising in New York State is three years. *See Pearl v. City of Long Beach,* 296 F.3d 76, 79 (2d Cir.2002). For the portion of 42 U.S.C. § 1981 on which Plaintiff would rely to support his claims, the Supreme Court recently clarified that claims have a four year statute of limitations. *Jones v. R.R. Donnelley & Sons Co.,* 541 U.S. 369, 382-83, 124 S.Ct. 1836, 158 L.Ed.2d 645 (2004).

Plaintiff did not commence this action until March 2, 2005. Therefore, any claims pursuant to 42 U.S.C. § 1983 that accrued prior to March 2, 2002 are barred by the statute of limitations. This includes all claims that accrued prior to Plaintiff's assignment to Viper 6 and all claims against defendants O'Brien, Ordonez, Woltering, Wunderlich, MacGuire, Morely, McVeigh, Cilenti, Fecht, Wilson, Webber, Masi, Vaccaro, Morris and Tarpey. While 42 U.S.C. § 1981 claims that occurred between March 2, 2001 and March 2, 2002 would be timely, Plaintiff does not appear to assert such claims. As Plaintiff stated in his letter opposition to City Defendants' request for permission to make the instant motion, Plaintiff's claims concerning his August 2001 arrest sound in false arrest and malicious prosecution, which are not actionable under 42 U.S.C. § 1981. Nonetheless, under any statute, any of Plaintiff's claims that occurred prior to March 2, 2001 are time-barred.

Plaintiff argues that the continuing violations doctrine should also be applied to his § 1981 and § 1983 claims. The Second Circuit has applied the continuing violations doctrine to claims under § 1983, and " the law relating to continuing violations under Title VII has traditionally been held to apply by analogy to § 1983 claims ." *Bland v. New York,* 263 F.Supp.2d 526, 550 (E.D.N.Y.2003); *see also Cornwell v. Robinson,* 23 F.3d 694, 703-04 (2d Cir.1994) (analyzing statute of limitations defense under 42 U.S.C. § 1983 in same manner as Title VII claim). In *Bland,* the Court acknowledged that the reasoning in *Morgan,* which turned on the language of Title VII may not automatically extend to § 1983 and § 1981 actions, since they are not based on similar statutory language. 263 F.Supp.2d at 550. Because the pre-*Morgan* and post-*Morgan* analysis yielded the same result, the *Bland* Court found it unnecessary to resolve the issue. *Id.*

Assuming, *arguendo,* that the pre-*Morgan* analysis did apply, Plaintiff could still not use the continuing violation doctrine to revive his stale claims because he has not established a " practice or policy" of discrimination. In the Second Circuit, a " continuing violation may be found where there is proof of specific ongoing discriminatory policies or practices" but may not be premised upon " discrete incidents of discrimination that are not related to discriminatory policies or mechanisms." *Cornwell,* 23 F.3d at 704. Multiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation. *Quinn v. Green Tree Credit Corp.,* 159 F.3d 759, 765 (2d Cir.1998). Plaintiff has not shown that the incidents alleged in his complaint were part of an alleged continuous NYPD condoned policy of harassment based on race (especially in light of the fact that the NYPD immediately suspended Plaintiff's alleged harassers in 2000).

**\*10** In addition, Plaintiff cannot claim that any alleged harassment was continuous in light of the large gaps of time between the alleged acts of discrimination. With the exception of a brief mention of an evaluation that met with his disapproval, Plaintiff did not allege any incidents of harassment that occurred over a two year period between 2002 and 2004. In order to rely on the continuing violation doctrine, alleged acts of discrimination must actually be continuous. *See Quinn,* 159 F.3d at 766 (" discontinuity is fatal to [the] ' continuing violation' argument" ); *see also Everson,* 216 F.Supp.2d at 79 (holding that the continuing violations doctrine cannot be applied when where there was a two-year-and-five-day period with no incidents of discrimination.) Therefore, Plaintiff cannot apply the continuing violations doctrine to his claims under § 1983.

As for his claims under § 1981, although the Second Circuit has not ruled on the issue, district courts in this Circuit have held that the continuing violation doctrine does apply to claims under § 1981. *See Coleman v. B.G. Sulzle, Inc.* 402 F.Supp.2d 403, 412-

13 (N.D.N.Y.2005) (concluding that the continuing violation doctrine is applicable to section 1981 claims). Furthermore, Courts in this district have found that " the distinction between discrete acts and a hostile work environment set forth in *Morgan* also applies to ... § 1981." *Subramanian v. Prudential Securities, Inc.*, No. 01-6500, 2003 WL 23340865, at *4 (E.D.N.Y. Nov. 20, 2003). Therefore, to the extent Plaintiff plans to pursue a hostile work environment claim under § 1981, acts occurring before March 2, 2001 will be considered by this Court in its analysis. However, discrete acts occurring before March 2, 2001 will not be considered for any other purpose.

### 3. State Law Claims

Finally, as City Defendants correctly argue, claims under the New York State and New York City Human Rights Law are also governed by three year statutes of limitations, measured from the filing of the action in court. *See Quinn,* 159 F.3d at 765; *see also Warren v. North Shore Univ. Hosp.,* No. 03-0019, 2006 WL 2844259, at *4 (E.D.N.Y. Sept. 29, 2006). For the reasons stated above, to the extent Plaintiff has asserted a hostile work environment claim under the Human Rights Laws, incidents outside the statutory period will be considered, but they will not be considered for any other purpose. *See Staff v. Pall, Corp.,* 233 F.Supp.2d 516, 528 (S.D.N.Y.2002) (" [T]here is ample justification to extend the reasoning in *Morgan* to ... state law claims." ); *see also Weinstock v. Columbia Univ.,* 224 F.3d 33, 42 n. 1 (2d Cir.2000) (" identical standards" apply to employment discrimination claims brought under Title VII and the Human Rights Laws).

### H. Plaintiff's State Law Tort Claims Must Be Dismissed

City Defendants argue that Plaintiff's claims of intentional infliction of emotional distress and intentional interference with an employment contract must be dismissed because Plaintiff failed to file a timely notice of claim. It is well-established that an action in tort against New York municipalities, or any of their officers, agents, or employees, requires service of a notice of claim on the municipality within ninety days after the claim arises. *See N.Y. General Municipal Law § 50-e; see also Chesney v. Valley Stream Union Free School Dist.,* No. 05-5106, 2006 WL 2713934, at *8-9 (E.D.N.Y. Sept. 22, 2006). While Plaintiff correctly argues that district courts in this Circuit have found that a Notice of Claim is not required for discrimination claims brought under Executive Law § 296 (the Human Rights Law) because these are not tort actions, *see Aggarwal v. New York City Health and Hospital Corp.,* No. 98-5063, 2000 WL 172787, at *9 (S.D.N.Y. Feb. 10, 2000), Defendants are not moving to dismiss Plaintiff's discrimination claims on this ground. Rather, City Defendants are moving to dismiss Plaintiff's tort claims of intentional infliction of emotional distress and intentional interference with contract. Plaintiff cannot shield his non-compliance with the notice of claim requirement and avoid dismissal of his tort claims merely because they are coupled in the complaint with employment discrimination claims. *See Rivera v. City of New York,* 392 F.Supp.2d 644, 657 (S.D.N.Y.2005) (dismissing intentional infliction of emotional distress claim asserted in the same complaint and arising from the same facts as employment discrimination claims); *Chesney,* 2006 WL 2713934, at *9 (same). Accordingly, Plaintiff's claims of intentional interference with contract and intentional infliction of emotional distress are dismissed.[FN10]

> FN10. In addition, as City Defendants correctly note in their moving papers, New York courts have held that public policy bars bringing the tort of intentional infliction of emotional distress against a government entity. *Lauer v. City of New York,* 240 A.D.2d 543, 659 N.Y.S.2d 57, 58 (2nd Dep't 1997); *see also Rivera,* 392 F.Supp.2d at 657. Therefore, Plaintiff's intentional infliction of emotional distress claim should be dismissed on this ground as well.

### CONCLUSION

*11 For the reasons set forth above: (1) all Title VII claims against the individual defendants are dismissed; (2) all of Plaintiff's claims against defendants Kelly, Zeigler, Campisi, Morris, Morley, McVeigh, Dale, O'Brien and Ordonez, including claims pursuant to § 1981 and § 1983 and the Human Rights Laws, are dismissed; (3) Plaintiff's conspiracy claims pursuant to §§ 1983 and 1985 are dismissed; (4) Plaintiff's tort claims of intentional infliction of emotional distress and intentional interference with contract are dismissed; and (5) all claims against NYPD are dismissed.

In addition, as set forth above, Plaintiff's claims are subject to the applicable statutes of limitations.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                              Page 10
Slip Copy, 2007 WL 1030294 (E.D.N.Y.)
**(Cite as: Slip Copy)**

Plaintiff is directed to file a Third Amended Complaint that does not contain the dismissed claims and defendants within thirty (30) days of this order.

SO ORDERED.

E.D.N.Y.,2007.
Richards v. City of New York
Slip Copy, 2007 WL 1030294 (E.D.N.Y.**)**

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.