Westlaw.

Not Reported in F.Supp.2d                                                                                                Page 1
Not Reported in F.Supp.2d, 2006 WL 337355 (S.D.N.Y.)

**(Cite as: Not Reported in F.Supp.2d)**

C
Sackey v. City of New York
S.D.N.Y.,2006.
Only the Westlaw citation is currently available.
United States District Court,S.D. New York.
Karla SACKEY, Plaintiff,
v.
CITY OF NEW YORK, New York City Department of Sanitation, and David Owusu-Fianko, in His Individual and in His Official Capacity, Defendants.
No. 04 Civ.2775 WHP.

Feb. 15, 2006.

Frederick K. Brewington, Law Offices of Frederick K. Brewington, Hempstead, NY, for Plaintiff.
Jason R. Bogni, NYC Law Department, Office of the Corporation Counsel, New York, NY, for Defendants.

*MEMORANDUM AND ORDER*
PAULEY, J.
*1 Plaintiff Karla Sackey (" Plaintiff" or " Sackey" ) brings this employment discrimination action against the City of New York (the " City" ), the New York City Department of Sanitation (the " DOS" ), and David Owusu-Fianko (" Fianko" ) (collectively, the " Defendants" ), alleging violations of Title VII of the Civil Rights Act of 1964 (" Title VII" ), 42 U.S.C. § 2000e *et seq.;* 42 U.S.C. § 1983; New York State Human Rights Law (the " HRL" ), N.Y. Exec. Law § 290 *et seq.;* New York City Human Rights Law (the " NYCHRL" ), N.Y.C. Admin. Code § 8-101 *et seq;* and two collective bargaining agreements. Defendants move for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons set forth below, Defendants' motion is granted.

*BACKGROUND*

Plaintiff was hired by the DOS as a clerk in 1973. (Deposition of Karla Sackey, dated Dec. 29, 2004 (" Sackey Dep." ) at 14; Declaration of Karla Sackey, dated Oct. 14, 2005 (" Sackey Decl." ) ¶ 2.) In December 1983, Plaintiff was promoted to the position of Principal Administrative Associate I (" PAA I" ). (Sackey Decl. ¶ 7.) PAA I employees perform both supervisory tasks and administrative work for DOS managers. (Declaration of Jason Bogni, dated Sept. 23, 2005 (" Bogni Decl." ) Ex. E.) In June 1986, Plaintiff was promoted to Principal Administrative Associate II (" PAA II" ), and remains in that position today. (Sackey Decl. ¶¶ 8-9.) PAA II employees have responsibilities similar to those of PAA I employees but work in larger or more complex operations. (Bogni Decl. Ex. E.) Since 1993, Plaintiff has worked in the Private Carter's Liason Service unit of the DOS (the " PCLS" ). (Sackey Decl. ¶ 10.)

A Principal Administrative Associate III (" PAA III" ) performs work similar to but more difficult than that performed by a PAA II. (Bogni Decl. Ex. E.) Plaintiff claims to have requested a PAA III promotion twice since moving to the PCLS. Plaintiff first requested the promotion on her 1995 annual evaluation. (Declaration of Frederick K. Brewington, dated Oct. 14, 2005 (" Brewington Decl." ) Ex. N; Sackey Decl. ¶ 16.) However, Aaron Bramwell was eventually promoted instead of Plaintiff, allegedly because of his superior political connections. (Sackey Decl. ¶ 17; Sackey Dep. at 93.) In October 2000, after Bramwell's departure, Plaintiff claims to have reiterated the promotion request to her supervisors. (Sackey Dep. at 88-90.) Although she was allegedly given Bramwell's responsibilities, she was not promoted to PAA III. (Sackey Decl. ¶ 20.) Plaintiff made no further requests for a promotion. (Sackey Dep. at 90.)

Fianko has been Plaintiff's direct supervisor at the PCLS since August 2000. (Sackey Dep. at 58.) In October 2000, Fianko moved Plaintiff from her cubicle in the front of the office to a more desirable workspace in the rear. (Sackey Dep. at 127-28, 133.) In March 2002, Fianko observed Plaintiff fixing her hair at her desk and reprimanded her by moving her back to her old cubicle. (Sackey Dep. at 133.) The parties dispute whether male PCLS employees have been similarly punished for grooming themselves at work.

*2 Plaintiff took sick leave from July 2, 2002 through July 5, 2002. (Sackey Decl. ¶ 42.) On July 8, 2002, Plaintiff presented Fianko with a note from a nurse practitioner excusing her absence from work. Fianko rejected the note. (Sackey Decl. ¶ 43.) Although Fianko had previously accepted notes from Plaintiff's nurse practitioner (Bogni Decl. Ex. M; Sackey Dep.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:07-cv-03498-AKH   Document 7-10   Filed 07/02/2007   Page 2 of 8

Not Reported in F.Supp.2d                                                                                                    Page 2
Not Reported in F.Supp.2d, 2006 WL 337355 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

at 168-69), on this occasion he demanded a note from a medical doctor (Sackey Dep. at 168-69). Fianko denied Plaintiff's request to leave PCLS during work hours to obtain that documentation. (Sackey Dep. at 170; Sackey Decl. ¶ 52.) That same day, Plaintiff contacted the medical clinic and had one of its medical doctors fax a note to Fianko. However, Fianko rejected this faxed note because it lacked an original signature. (Sackey Decl. ¶¶ 54-55.)

The exchange between Sackey and Fianko became contentious. (Sackey Decl. ¶¶ 56-57.) At some point, Plaintiff indicated her intention to file sexual harassment charges against Fianko. (Sackey Dep. at 170-71; Sackey Decl. ¶¶ 58-59.) Fianko suspended Plaintiff. (Bogni Decl. Ex. K.) The parties disagree as to whether the suspension occurred before or after Plaintiff threatened to file charges, but in any event, Fianko later identified the threat as one reason for the suspension. (Bogni Decl. Ex. P.) Plaintiff did not leave the office, so Fianko called the police to have her removed. The police officers declined to take action against Plaintiff. (Sackey Decl. ¶¶ 59-60.)

Plaintiff filed a complaint with the City of New York Commission on Human Rights (" CCHR" ) on October 8, 2002. The CCHR complaint alleges that Defendants discriminated against Plaintiff on the basis of her gender by: (1) refusing Plaintiff's requests for promotions and merit raises; (2) moving Plaintiff to a less desirable workspace in March 2002; and (3) refusing to accept her medical note on July 8, 2002. (Bogni Decl. Ex. N ¶¶ 6-9.) The DOS Equal Employment Opportunity Office (" EEO" ), tasked with investigating the CCHR complaint, conducted document discovery, interviewed witnesses and reviewed written submissions from the parties. (Bogni Decl. Ex. P.) On December 19, 2002, the EEO investigator issued a report recommending that Plaintiff's CCHR complaint be dismissed. (Bogni Decl. Ex. P.)

On October 14, 2003, the CCHR issued a decision dismissing Plaintiff's complaint in its entirety. The U.S. Equal Employment Opportunity Commission (the " EEOC" ) issued a right-to-sue letter on January 13, 2004. (Bogni Decl. Ex. R.) Plaintiff filed the Complaint in this action on April 12, 2004, alleging that Defendants discriminated against her on the basis of her gender by: (1) failing to promote Plaintiff to the position of PAA III; (2) creating a hostile work environment; and (3) retaliating against Plaintiff for indicating an intention to file gender discrimination charges. Plaintiff also alleges that Defendants breached two collective bargaining agreements-one between the City of New York and District Council 37 AFSCME, AFL-CIO, and the other between the City and Local Union 1180-by refusing to accept the documentation Plaintiff provided to excuse her sick leave from July 2 to July 5, 2002.

*DISCUSSION*

I. *Summary Judgment Standard*

*3 Summary judgment is warranted " if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The materiality of disputed facts is determined by the governing substantive law. Dister v. Cont'l Group, Inc., 859 F.2d 1108, 1114 (2d Cir.1988). Material facts are those that " affect the outcome of the suit under the governing law [while] an issue of fact is ' genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Shade v. Hous. Auth. of New Haven, 251 F.3d 307, 314 (2d Cir.2001). The burden of demonstrating the absence of any genuine dispute as to a material fact rests with the moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Grady v. Affiliated Cent., Inc., 130 F.3d 553, 559 (2d Cir.1997). In determining whether there is a genuine issue as to any material fact, " the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Liberty Lobby, 477 U.S. at 255.

If the moving party meets its initial burden, the non-moving party must then come forward with " specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(c); Carlton v. Mystic Transp., Inc., 202 F.3d 129, 133 (2d Cir.2000). The non-moving party must " do more than simply show there is some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986), and " may not rely on conclusory allegations or unsubstantiated speculation," Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir.1998). " The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient." Liberty Lobby, 477 U.S. at 248.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Instead, the non-movant must offer " concrete evidence from which a reasonable juror could return a verdict in [her] favor." *Liberty Lobby,* 477 U.S. at 252. Where it is apparent that no rational finder of fact " could find in favor of the non-moving part[ies] because the evidence to support [their] case is so slight," summary judgment should be granted. *Gallo v. Prudential Residential Servs., Ltd.,* 22 F.3d 1219, 1223 (2d Cir.1994).

## II. *Failure to Promote*

### A. *Statute of Limitations*

A plaintiff may not assert Title VII claims based on events taking place more than 300 days prior to her filing a charge with the EEOC or other local employment discrimination agency. 42 U.S.C. § 2000e-5(e)(1); *Butts v. Dep't of Hous. Pres. & Dev.,* 990 F.2d 1397, 1401 (2d Cir.1993). Plaintiff filed her charge with the CCHR on October 8, 2002. (Bogni Decl. Ex. N.) Therefore, this Court must dismiss as time-barred any Title VII claims predicated on events taking place prior to December 12, 2001.

*4 The statute of limitations for § 1983 actions in New York is three years. *Patterson v. County of Oneida,* 375 F.3d 206, 225 (2d Cir.2004); *see also* N.Y. C.P.L.R. 214(5) (New York statute of limitations for personal injury claims is three years); *Owens v. Okure,* 488 U.S. 235, 249-50 (1989) (§ 1983 claims are governed by a state's residual or general personal injury statute of limitations). Because Sackey filed her Complaint on April 12, 2004, her § 1983 claims must arise from events taking place on or after April 12, 2001.

The limitations period for Plaintiff's HRL and NYCHRL claims is also three years. N.Y. C.P.L.R. 214(2); N.Y.C. Admin. Code § 8-502. However, the limitations period for these claims is tolled during the pendency of a complaint filed with the CCHR. *See Penman v. Pan Am. World Airways, Inc.,* 69 N.Y.2d 989, 990 (1987); *Tolentino v. Buffalo State Coll.,* 277 A.D.2d 899, 715 N.Y.S.2d 554, 555 (4th Dep't 2000). Sackey filed her CCHR complaint on October 8, 2002 and the CCHR dismissed the complaint on October 14, 2003. Therefore, Plaintiff's HRL and NYCHRL claims must arise from events taking place on or after April 8, 2000.

Plaintiff claims to have been passed over for promotions in December 1995 and October 2000. Defendants contend, and Plaintiff does not dispute, that both promotion requests were denied outside the limitations period established by Title VII and § 1983, and that Plaintiff has made no subsequent requests. Therefore, Plaintiff's Title VII and § 1983 failure to promote claims are time-barred. Likewise, Plaintiff's HRL and NYCHRL failure to promote claims are barred as to the December 1995 promotion request.

Plaintiff would have this Court apply the " continuing violation" exception to the statutes of limitations. The existence of a continuous violation serves to delay the commencement of the relevant limitations periods until the last discriminatory act in furtherance thereof. *Cornwell v. Robinson,* 23 F.3d 694, 703 (2d Cir.1994) (" Where a continuing violation can be shown, the plaintiff is entitled to bring suit challenging all conduct that was part of that violation, even conduct that occurred outside of the limitations period." ). The continuing violation doctrine is disfavored, and it will be applied only upon a showing of compelling circumstances. *Quadrozzi Concrete Corp. v. City of New York,* No. 03 Civ.1905(LAP), 2004 WL 2222164, at *8 (S.D.N.Y. Sept. 30, 2004); *see also Blake v. Bronx Lebanon Hosp. Ctr.,* No. 02 Civ. 3827(CBM), 2003 WL 21910867, at *5 (S.D.N.Y. Aug. 11, 2003).

Incidents of employment discrimination are either discrete acts or continuing violations. *Nat'l Passenger R.R. Corp. v. Morgan,* 536 U.S. 101, 114-16 (2002). A discrete act occurs at an identifiable point in time- for example, when an employer makes a decision to deny an employee's request for a promotion. *Morgan,* 536 U.S. at 114. Each discrete act is " a separate employment practice ..., even if that action is simply a periodic implementation of an adverse decision previously made." *Elmenayer v. ABF Freight Sys., Inc.,* 318 F.3d 130, 134 (2d Cir.2003); *see also Morgan,* 536 U.S. at 111 (" There is simply no indication that the term ' practice' [in 42 U.S.C. § 2000e-2] converts related discrete acts into a single, unlawful practice for the purposes of timely filing." ). A discrete act of discrimination is time-barred if it occurred prior to the applicable limitations period. *Morgan,* 536 U.S. at 113. By contrast, a continuing violation " occurs over a series of days or perhaps years" and is composed of a series of separate acts that collectively constitute one unlawful employment practice. *Morgan,* 536 U.S. at 115. If a plaintiff establishes that one contributing act occurred within the applicable limitations period, all acts comprising

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                               Page 4
Not Reported in F.Supp.2d, 2006 WL 337355 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

that violation may be timely challenged in the plaintiff's discrimination claim, even those occurring outside of the statutory period. *Fitzgerald v. Henderson,* 251 F.3d 345, 359 (2d Cir.2001).

*5 Sackey has failed to establish a continuing violation based on Defendants' alleged failure to promote her. Denials of promotion are discrete acts of discrimination. *Morgan,* 536 U.S. at 113 (" Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify." ). Plaintiff may not recover for denials of promotion that occurred outside the statutory time period, even if other acts of discrimination occurred within the statutory time period. *Morgan,* 536 U.S. at 113; *Patterson,* 375 F.3d at 220. Because Plaintiff presents no evidence to establish a discrete act of discrimination occurring within the limitations period, her Title VII and § 1983 failure to promote claims must be dismissed.

Plaintiff incorrectly contends that the limitations period is extended by the existence of a pattern or practice of discrimination against female DOS employees. It is unclear whether the continuing violation doctrine even applies to a pattern or practice claim based on failure to promote. *See Morgan,* 536 U.S. at 108-114. It is also doubtful that a pattern or practice claim is valid outside the class action context. *See, e.g., Babrocky v. Jewel Food Co .,* 773 F.2d 857, 866 n. 6 (7th Cir.1985) (questioning whether individual plaintiffs have standing to bring pattern or practice claims); *Blake,* 2003 WL 21910867, at *5 (same); *Calabritto v. Dillon,* 920 F.Supp. 370, 378 (E.D.N.Y.1996) (same). Regardless, the only evidence offered in support of the claim is a passing remark made by Plaintiff during her deposition regarding Defendants' promotion policies. (Sackey Dep. at 95:6-19.) These few lines of anecdotal testimony are insufficient as a matter of law to permit a reasonable inference that Defendants had a policy of discrimination against women. *See, e.g., Watson v. Fort Worth Bank & Trust,* 487 U.S. 977, 994 (1987) (" Once the employment practice at issue has been identified, causation must be proved; that is, the plaintiff must offer statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion of applicants for jobs or promotions because of their membership in a protected group." ).

B. *Prima Facie Case*

Plaintiff's HRL and NYCHRL claims are timely as to the October 2000 request for a promotion. In *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973), the Supreme Court set forth the burden-shifting framework under which Title VII discrimination claims are analyzed. *See Grady v. Affiliated Cent., Inc.,* 130 F.3d 553, 559 (2d Cir.1997). Claims of discrimination brought under the HRL and the NYCHRL are " analytically identical" to claims brought under Title VII and are reviewed under the same burden-shifting analysis. *Torres v. Pisano,* 116 F.3d 625, 629 n. 1 (2d Cir.1997); *accord Dawson v. Bumble & Bumble,* 398 F.3d 211, 217 (2d Cir.2005); *Weinstock v. Columbia Univ.,* 224 F .3d 33, 42 n. 1 (2d Cir.2000).

*6 A plaintiff has the initial burden of proving a *prima facie* case of discrimination. *McDonnell Douglas,* 411 U.S. at 802; *see St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506 (1993). To establish a *prima facie* case, a plaintiff must demonstrate that: (1) she is a member of a protected class; (2) was qualified for her position; (3) she was subjected to an adverse employment action; and (4) the adverse action occurred in circumstances giving rise to an inference of discrimination. *Weinstock,* 224 F.3d at 42; *see McDonnell Douglas,* 411 U.S. at 802.

Once the plaintiff has established a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. *McDonnell Douglas,* 411 U.S. at 802-03; *Holt v. KMI-Cont'l, Inc .,* 95 F.3d 123, 129 (2d Cir.1996). The burden then shifts back to the plaintiff to show that the employer's reason is mere pretext and that discrimination was the true motivating factor. *St. Mary's,* 509 U.S. at 507-08; *McDonnell Douglas,* 411 U.S. at 804-05. Ultimately, the question is whether the evidence supports a rational inference that " more likely than not discrimination was the real reason" for the adverse action of which the plaintiff complains. *Van Zant v. KLM Royal Dutch Airlines,* 80 F.3d 708, 714 (2d Cir.1996) (internal quotation omitted).

Sackey has failed to establish a *prima facie* case of discrimination. She offers no evidence tending to show that the denial of her promotion in October 2000 occurred under circumstances giving rise to an inference of discrimination. *See Monte v. Ernst & Young LLP,* 330 F.Supp.2d 350, 361 (S.D.N.Y.2004);

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:07-cv-03498-AKH    Document 7-10    Filed 07/02/2007    Page 5 of 8

Not Reported in F.Supp.2d                                                                                                Page 5
Not Reported in F.Supp.2d, 2006 WL 337355 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

*Concepcion v. Nice Pak Prods.*, No. 03 Civ. 1894(LTS), 2004 WL 1810552, at *4 (S.D.N.Y. Aug. 13, 2004). Plaintiff's conclusory assertion that DOS is a " male dominated organization" is insufficient to establish a *prima facie* case. *See, e.g., Simpri v. City of New York*, No. 00 Civ. 6712(SAS), 2004 WL 1810552, at *4 (S.D.N.Y. Dec. 30, 2003) (" Plaintiff's conclusory allegations that he was not promoted because he is a black man of Ghanian origin do not support an inference of discrimination." ).

Plaintiff unpersuasively argues that Aaron Bramwell's promotion to Director of PCLS in 1997-nearly four years *prior* to her October 2000 promotion request-raises an inference of discrimination. " [T]he individuals with whom [a plaintiff] attempts to compare herself must be similarly situated in all material respects." *Shumway v. UPS, Inc.*, 118 F.3d 60, 64 (2d Cir.1997). Plaintiff has failed to identify any evidence tending to show that she and Bramwell were similarly situated. *See Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 96 (2d Cir.1999) (plaintiffs failed to establish *prima facie* case when there was no evidence that plaintiff was " subject to the same standards governing performance evaluation and discipline" as employees who were treated differently). Indeed, it is undisputed that prior to becoming Director of PCLS, Bramwell was not a PAA II, his responsibilities were different from Plaintiff's, and he reported to a different supervisor. *See Lanzo v. City of New York*, No. 96 Civ. 3242(ILG), 2000 WL 804628, at *7 (E.D.N.Y. May 18, 2000) (granting summary judgment on failure to promote claim when plaintiff and the employee who was promoted had, prior to the promotion, " reported to different supervisors, worked in different divisions ... [and] had different job descriptions and responsibilities" ); *see also Manessis v. New York City Dep't of Transp.*, No. 02 Civ. 359(SAS), 2003 WL 289969, at *10 (S.D.N.Y. Feb. 10, 2003) (holding that employees working in different departments are *per se* dissimilar). In addition, Plaintiff herself testified that Bramwell's appointment was politically motivated. (Sackey Dep. at 93.) There is no Title VII violation when a plaintiff's competitor is hired or promoted for political reasons. *See Cunningham v. Hous. Auth.*, 764 F.2d 1097, 1100 (5th Cir.1985).

### III. *Exhaustion of Remedies*

*7 Defendants claim that Sackey's failure to allege hostile work environment and retaliation before the CCHR now prevents her from asserting those claims under Title VII. This Court disagrees.

A Plaintiff may bring an employment discrimination action under Title VII only after filing a timely charge with the EEOC or with a state or local agency with authority to provide relief from such practice. *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 82-83 (2d Cir.2001). Exhaustion of remedies before the administrative agency is a precondition to bringing suit in federal court. *Francis v. City of New York*, 235 F.3d 763, 768 (2d Cir.2000).

However, plaintiffs are not required to articulate in their administrative charges the precise legal theories which they will later assert in a Title VII lawsuit. *Shull v. Rite Aid Corp.*, No. 94 Civ. 8552(LBS), 1997 WL 289460, at *7 (S.D.N.Y. May 30, 1997). A plaintiff may raise a new claim in a district court complaint if the claim is " reasonably related" to the allegations contained in the administrative charge. *Holtz*, 258 F.3d at 83; *Butts*, 990 F.2d at 1402. In determining whether claims are reasonably related, the focus should be " on the factual allegations made in the [administrative] charge." *Deravin v. Kerik*, 335 F.3d 195, 201 (2d Cir.2003) (internal quotation omitted); *Coleman v. Bd. of Educ.*, No. 96 Civ. 4293(GBD), 2002 WL 63555, at *5 (S.D.N.Y. Jan. 16, 2002) (holding that claims based on the same set of facts are " reasonably related" ). A claim raised for the first time in the district court is reasonably related to allegations in an administrative charge " where the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Butts*, 990 F.2d at 1402 (internal quotation omitted); *Deravin*, 335 F.3d at 200-01.

Sackey's allegations of hostile work environment and retaliation before this Court are reasonably related to her CCHR complaint. The factual allegations in the CCHR complaint are almost identical to those underlying the hostile work environment claim. Although the CCHR complaint does not specifically allege that Sackey was retaliated against for threatening to file harassment charges against Fianko, that does not render the retaliation claim unrelated. *See Bridges v. Eastman Kodak Co.*, 822 F.Supp. 1020, 1026 (S.D.N.Y.1993) (holding that " a complainant filing an EEOC charge is only required to describe generally the action or practices complained of" (internal quotation omitted)). The CCHR complaint does describe Fianko's refusal to

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:07-cv-03498-AKH   Document 7-10   Filed 07/02/2007   Page 6 of 8

Not Reported in F.Supp.2d                                                                                                Page 6
Not Reported in F.Supp.2d, 2006 WL 337355 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

accept Sackey's medical note. (Bogni Decl. Ex. N ¶ 9.) The ensuing argument between Fianko and Sackey immediately led to the alleged retaliatory suspension of Sackey. Her suspension is the sort of event that " would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Butts,* 990 F.2d at 1402 (internal quotation omitted); *accord Johnson v. Dist. Council of Carpenters,* No. 91 Civ. 7961(LAP), 1995 WL 567426, at *5 (S.D.N.Y. Sept. 25, 1995). Indeed, the EEO's investigator explored the alleged retaliatory suspension in addressing Plaintiff's CCHR charge. (Bogni Decl. Ex. P.) Thus, Plaintiff exhausted her administrative remedies with respect to her hostile work environment and retaliation claims.

### IV. *Hostile Work Environment*

*8 A hostile work environment claim requires a showing that: (1) the harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment; and (2) a specific basis exists for imputing the objectionable conduct to the employer. *Perry v. Ethan Allen, Inc.,* 115 F.3d 143, 149 (2d Cir.1997). The plaintiff must show that the workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of her employment were altered. *Alfano v. Costello,* 294 F.3d 365, 373 (2d Cir.2002); *Leibovitz v. N.Y. City Transit Auth.,* 252 F.3d 179, 188 (2d Cir.2001). Isolated acts, unless very serious, do not meet the threshold of severity or pervasiveness. *Brennan v. Metro. Opera Ass'n,* 192 F.3d 310, 318 (2d Cir.1999); *Perry,* 115 F.3d at 149. " To decide whether the threshold has been reached, courts examine the case-specific circumstances in their totality and evaluate the severity, frequency, and degree of the abuse." *Alfano,* 294 F.3d at 374.

Viewing the record in a light most favorable to Plaintiff, this Court concludes that Plaintiff did not experience a hostile work environment at PCLS. Plaintiff has worked for the DOS since 1978, but her Complaint alleges only two incidents of workplace harassment during that time. The first incident involved Plaintiff being moved to a less desirable workspace for fixing her hair, and the second involved Fianko's refusal to accept Plaintiff's medical note. During her deposition, Plaintiff also described several minor incidents which were absent from, and unrelated to, her CCHR charge. (Sackey Dep. at 96- 97.) These alleged episodes of harassment, " far from being pervasive, were few and occurred over a short span of time." *Mormol v. Costco Wholesale Corp.,* 364 F.3d 54, 59 (2d Cir.2004). Plaintiff has failed to show that the workplace was " severely permeated" with " intimidation, ridicule, and insult" such that the terms and conditions of her employment were thereby altered. *Leibovitz,* 252 F.3d at 188.

Plaintiff's attempt to bolster her claim with conclusory testimony about the alleged hostile work environment at PCLS is unavailing. For example, Plaintiff claims that Fianko " doesn't have a lot of value in what women say to him" (Sackey Dep. at 102), and that a co-worker informed Plaintiff that Fianko made " derogatory" comments toward women (Sackey Dep. at 176). Plaintiff's vague, unsupported allegations are insufficient as matter of law to sustain a hostile work environment claim. *See, e.g., Thomas v. Bergdorf Goodman, Inc.,* No. 03 Civ. 3066(SAS), 2004 WL 2979960, at *7 (S.D.N.Y. Dec. 22, 2004) (declining to rely on plaintiff's conclusory allegations of a hostile work environment); *Thomas v. New York City Health & Hosps. Corp.,* No. 02 Civ. 5159(RJH), 2004 WL 1962074, at *15 (S.D.N.Y. Sept. 2, 2004) (same); *Mack v. Port Auth. of New York & New Jersey,* 225 F.Supp.2d 376, 388-89 (S.D.N.Y.2002) (same).

*9 Even were this Court to credit all of Plaintiff's allegations, the record would still lack evidence of the pervasive workplace harassment required to sustain a hostile environment claim. The Second Circuit has found allegations more severe than Plaintiff's to be insufficient as a matter of law. *See, e.g., Alfano,* 294 F.3d at 378-79 (in a four-year period, three incidents of superiors mocking how a female employee ate a carrot, a sexually evocative cartoon of plaintiff and discriminatory disciplinary proceedings). Triable issues of fact have been found only when the harassment was of greater frequency or severity than Plaintiff has alleged here. *See, e.g., Holtz,* 258 F.3d at 75-76 (supervisor groped plaintiff on a daily basis over the course of months, made " obscene leers at her," made " repeated efforts to peak underneath [her] clothing," and remarked on her sex life); *Raniola v. Bratton,* 243 F.3d 610, 621 (2d Cir.2001) (in a two and a half year period, plaintiff was subjected to offensive sex-based remarks, disproportionately burdensome work assignments, workplace sabotage and one serious public threat of physical harm); *cf. Schwapp v. Town of Avon,* 118 F.3d 106 (2d Cir.1997) (in a two-year period, ten to

Case 1:07-cv-03498-AKH   Document 7-10   Filed 07/02/2007   Page 7 of 8

Not Reported in F.Supp.2d                                                                 Page 7
Not Reported in F.Supp.2d, 2006 WL 337355 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

twelve instances of racist conduct including racial jokes and insulting epithets). Plaintiff has failed to meet the high threshold for establishing a *prima facie* case of harassment.

To the extent Plaintiff asserts that her move to a different workspace and the incident with the medical note each constitutes a discrete act of discrimination, those claims must also be dismissed. Being moved to a comparable, but less desirable desk cannot by itself provide the basis for a gender discrimination claim. *See, e .g., Galabya v. Bd. of Educ.,* 202 F.3d 636, 640 (2d Cir.2000) (affirming dismissal of teacher's allegations of discrimination based on transfer to a school with " inferior facilities" ). Likewise, Plaintiff has failed to establish a claim based on Fianko's refusal to accept her medical note and her subsequent suspension. There is no evidence before this Court to suggest that Fianko's actions were motivated by gender bias. Absent such evidence, the claim is deficient as a matter of law. *See, e.g., Ambrosini v. Nat'l Realty & Dev. Corp.,* 136 F.3d 276, 290 (2d Cir.1998) (affirming dismissal of discrimination claim because " there was no semblance of gender-oriented motivation in the events or conversations to which Ambrosini testified" ); *Satterfield v. UPS, Inc.,* No. 00 Civ. 7190(MHD), 2003 WL 22251314, at *11 (S.D.N .Y. Sept. 30, 2003) (" [P]laintiff has not alleged any facts demonstrating that UPS treated [her] more severely than it would a male employee who had cursed at a manager." ).

### V. *Retaliation*

Plaintiff alleges that Fianko suspended her on July 8, 2002 for threatening to file sexual harassment charges against him. The threat arose from Defendants' refusal to accept Plaintiff's medical note. Defendants contend that the suspension was not retaliation because Plaintiff's threat is not protected by Title VII.

*10 To establish a *prima facie* case for retaliation, a plaintiff must show that (1) she participated in a protected activity; (2) the employer was aware of her participation in the protected activity; (3) she was subjected to an adverse employment action; and (4) there is a causal connection between the two. *Scott v. Coughlin,* 344 F .3d 282, 287 (2d Cir.2003); *Van Zant,* 80 F.3d at 714. Once a plaintiff establishes a *prima facie* case, the defendant must articulate a legitimate justification for its actions. *See Quinn v. Green Tree Credit Corp.,* 159 F.3d 759, 764 n. 5 (2d Cir.1998). The burden then shifts to the plaintiff to show that the defendants' justification was a pretext. *Green Tree,* 159 F.3d at 764 n. 5.

To prove that she engaged in protected activity, Plaintiff need not establish that the conduct she opposed was in fact a violation of Title VII. *Davis v. State Univ. of New York,* 802 F.2d 638, 642 (2d Cir.1986). However, Plaintiff " must demonstrate a good faith, reasonable belief that the underlying challenged actions of the employer violated the law." *Manoharan v. Columbia Univ. College of Physicians & Surgeons,* 842 F.2d 590, 593 (2d Cir.1988) (internal quotation omitted). Subjective good faith alone is insufficient-Plaintiff must have a *reasonable* basis for filing (or threatening to file) the claim that evoked Defendants' retaliatory response. *Sullivan-Weaver v. New York Power Auth.,* 114 F.Supp.2d 240, 243 (S.D.N.Y.2000).

This Court has already determined that no reasonable juror could find that a hostile work environment existed in the PCLS unit at DOS. Likewise, there is insufficient evidence for a reasonable juror to conclude that any of the discrete acts comprising the hostile work environment claim constitute gender discrimination. Because Plaintiff presents no other evidence to establish an objective basis for her claims, her threat to file a discrimination claim was unreasonable as a matter of law. The threat was not a protected activity, and her retaliation claim must be dismissed. *See, e.g., Clark County Sch. Dist. v. Breeden,* 532 U.S. 268, 271 (2001) (holding that a retaliatory discharge claim fails when the underlying incident cannot reasonably constitute a Title VII violation); *Ambrosini,* 136 F.3d at 292 (same); *Neishlos v. City of New York,* No. 00 Civ. 914(SAS), 2003 WL 22480043, at *9 (S.D.N.Y. Nov. 3, 2003) (granting summary judgment to defendant on plaintiff's retaliation claim because no reasonable trier of fact could find underlying discrimination); *Smith v. Am. Int'l Group, Inc.,* No. 01 Civ. 1652(LAK)(FM), 2002 WL 745603, at *10 (S.D.N.Y. Apr. 26, 2002) (same).

### VI. *Breach of Contract*

Plaintiff claims that Defendants breached two collective bargaining agreements, one between the City of New York and District Council 37 AFSCME, AFL-CIO, and the other between the City of New York and Local Union 1180. (*See* Bogni Decl. Exs.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d        Page 8
Not Reported in F.Supp.2d, 2006 WL 337355 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

S, T.) The agreements provide that to be excused from work, employees may submit medical documentation from a health practitioner licensed by the state. According to Plaintiff, Fianko violated this portion of the agreement on July 8, 2002 by refusing to accept the note from Plaintiff's nurse practitioner.

*11 It is well-settled that when " an employer and a union enter into a collective bargaining agreement that creates a grievance procedure, an employee subject to the agreement may not sue the employer directly for breach of that agreement but must proceed, through the union, in accordance with the contract." *Bd. of Educ. v. Ambach,* 70 N.Y.2d 501, 508 (1987); *see also Cantres v. Bd. of Educ.,* 145 A.D.2d 359, 360, 535 N.Y.S.2d 714, 716 (1st Dep't 1988). " Only when a union has failed to represent an employee fairly-effectively depriving the employee of full use of the grievance procedures-does concern for employees' rights require that they be allowed to pursue grievances beyond the contractual mechanism." *Ambach,* 70 N.Y.2d at 509; *Ponticello v. County of Suffolk,* 255 A.D.2d 751, 751-52, 640 N.Y.S.2d 169, 170 (2d Dep't 1996); *Ahrens v. New York State Pub. Employees Fed'n, AFL-CIO,* 203 A.D.2d 796, 798, 610 N.Y.S.2d 680 (3d Dep't 1994).

Here, Plaintiff submitted her claim to the union for arbitration pursuant to the collective bargaining agreements. (Brewington Decl. Ex. I.) Plaintiff does not argue that the union breached its duty of fair representation, nor is any such breach apparent from the record. Therefore, under New York law, Plaintiff's breach of contract claim must fail. *See Sussman v. New York City Health & Hosp. Corp.,* No. 94 Civ. 8461(LBS), 1997 WL 334964, at *20 (S.D.N.Y. June 16, 1997); *Tomlinson v. Bd. of Educ.,* 223 A.D.2d 636, 638, 636 N.Y.S.2d 855 (2d Dep't 1996); *Ponticello,* 640 N.Y.S.2d at 171.

Nor may Plaintiff now advance any claims for contract damages she has yet to submit to the arbitrator through the grievance procedure. Instead, Plaintiff must exhaust the grievance procedure specified in the agreements. *Ambach,* 70 N.Y.2d at 509.

*CONCLUSION*

For the foregoing reasons, Defendants' motion for summary judgment is granted. Because Plaintiff's claims are dismissed in their entirety, this Court need not address Defendants' contention that certain of the claims are barred by collateral estoppel. The Clerk of the Court is directed to mark this case closed.
SO ORDERED:

S.D.N.Y.,2006.
Sackey v. City of New York
Not Reported in F.Supp.2d, 2006 WL 337355 (S.D.N.Y.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.