

Not Reported in F.Supp.2d Page 1
Not Reported in F.Supp.2d, 2004 WL 503760 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

Timothy v. Our Lady of Mercy Medical Center
S.D.N.Y.,2004.
Only the Westlaw citation is currently available.
United States District Court,S.D. New York.
Angella **TIMOTHY**, Plaintiff,
v.
**OUR LADY** OF **MERCY** MEDICAL CENTER and **Our Lady** of **Mercy** Healthcare System, INC., Defendants.
**No. 03 Civ. 3556(RCC).**

March 12, 2004.

**Background:** Employee sued health care company and medical center, asserting claims for employment discrimination, retaliation, and constructive discharge under federal, state, and local laws. Company and center moved to dismiss in part.

**Holdings:** The District Court, Casey, J., held that:

(1) complaint sufficiently alleged that health care company was employer and that its acts constituted discrimination, retaliation, and constructive discharge;

(2) Title VII claims based on alleged discriminatory acts which occurred more than 300 days before employee filed complaint with Equal Employment Opportunity Commission (EEOC) were time-barred;

(3) allegations supported adverse employment action element of retaliation claim; and

(4) allegations supported constructive discharge claim.

Motion granted in part and denied in part.
West Headnotes
**[1] Civil Rights 78 ⚿1532**

78 Civil Rights
78IV Remedies Under Federal Employment Discrimination Statutes
78k1532 k. Pleading. Most Cited Cases

**Health 198H ⚿266**

198H Health
198HI Regulation in General
198HI(C) Institutions and Facilities
198Hk259 Officers and Employees
198Hk266 k. Adverse Employment Action; Wrongful Discharge. Most Cited Cases
Employee's complaint, which referred to both health care company and medical center in its introductory paragraph with single acronym, such that factual allegations throughout complaint referred to both entities, sufficiently alleged that health care company was her employer and that its acts constituted discrimination, retaliation, and constructive discharge, precluding dismissal of claims against company on grounds that it was not alleged to be employer or to have played role in alleged acts.

**[2] Civil Rights 78 ⚿1505(7)**

78 Civil Rights
78IV Remedies Under Federal Employment Discrimination Statutes
78k1503 Administrative Agencies and Proceedings
78k1505 Time for Proceedings; Limitations
78k1505(7) k. Continuing Violations; Serial, Ongoing, or Related Acts. Most Cited Cases
Alleged discriminatory acts that occurred more than 300 days before employee filed complaint with Equal Employment Opportunity Commission (EEOC) were discrete acts, rather than part of any systematic discriminatory policy or practice by employers triggering application of continuing violation doctrine, and therefore Title VII claims based on such alleged acts were time-barred. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

**[3] Civil Rights 78 ⚿1532**

78 Civil Rights
78IV Remedies Under Federal Employment Discrimination Statutes
78k1532 k. Pleading. Most Cited Cases

**Civil Rights 78 ⚿1740**

78 Civil Rights
78V State and Local Remedies

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Page 2
Not Reported in F.Supp.2d, 2004 WL 503760 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

78k1738 Pleading
78k1740 k. Employment Practices. Most Cited Cases
Although employee was required only to give employers fair notice of her retaliation claims to properly plead those claims, and did not have to plead prima facie case under *McDonnell Douglas* standard, district court was required to determine whether employee's allegations stated claims upon which relief could rest in deciding motion to dismiss for failure to state claim. 42 U.S.C.A. § 1981; Fed.Rules Civ.Proc.Rules 8(a), 12(b)(6), 28 U.S.C.A.; McKinney's Executive Law § 296 et seq.; New York City Administrative Code, § 8-107 et seq.

**[4] Civil Rights 78 ⚷1532**

78 Civil Rights
78IV Remedies Under Federal Employment Discrimination Statutes
78k1532 k. Pleading. Most Cited Cases

**Civil Rights 78 ⚷1740**

78 Civil Rights
78V State and Local Remedies
78k1738 Pleading
78k1740 k. Employment Practices. Most Cited Cases
Employee provided employers with fair notice of her retaliation claims when she alleged that her attorney sent employers letter raising claims of employment discrimination and that she thereafter experienced retaliatory actions which impaired her working conditions, limited her job responsibilities, subjected her to hostile work comments, resulted in her exclusion from meetings, and made it more difficult for her to perform her duties. 42 U.S.C.A. § 1981; Fed.Rules Civ.Proc.Rules 8(a), 28 U.S.C.A.; McKinney's Executive Law § 296 et seq.; New York City Administrative Code, § 8-107 et seq.

**[5] Civil Rights 78 ⚷1246**

78 Civil Rights
78II Employment Practices
78k1241 Retaliation for Exercise of Rights
78k1246 k. Particular Cases. Most Cited Cases

**Health 198H ⚷266**

198H Health
198HI Regulation in General
198HI(C) Institutions and Facilities
198Hk259 Officers and Employees
198Hk266 k. Adverse Employment Action; Wrongful Discharge. Most Cited Cases
Allegations supported adverse employment action element of hospital employee's claims for retaliation under federal, state, and local laws when employee alleged that her attorney sent employers letter raising claims of race and sex discrimination, and, shortly thereafter, she experienced such retaliatory actions as loss of office space, interference with her computer rights, diminished job responsibilities, and exclusion from meetings. 42 U.S.C.A. § 1981; Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.; McKinney's Executive Law § 296 et seq.; New York City Administrative Code, § 8-107 et seq.

**[6] Civil Rights 78 ⚷1123**

78 Civil Rights
78II Employment Practices
78k1123 k. Constructive Discharge. Most Cited Cases

**Health 198H ⚷266**

198H Health
198HI Regulation in General
198HI(C) Institutions and Facilities
198Hk259 Officers and Employees
198Hk266 k. Adverse Employment Action; Wrongful Discharge. Most Cited Cases
Complaint supported claim that hospital employee suffered constructive discharge when employee alleged that, after complaining of alleged race and gender discrimination, she was passed over for positions for which she was qualified and was placed in inferior positions below her skill level, that she was stripped of her substantive responsibilities, removed from her office, and shunted to several inadequate work locations, and that employers generally engaged in actions which made it more difficult for her to work.

MEMORANDUM OPINION & ORDER
CASEY, J.
***1** On March 16, 2003, Angella Timothy (" Plaintiff" ) commenced this suit against Our Lady of Mercy Medical Center and Our Lady of Mercy Healthcare System, Inc. (collectively, " Defendants" ) alleging employment discrimination and retaliation, in

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Page 3

Not Reported in F.Supp.2d, 2004 WL 503760 (S.D.N.Y.)

**(Cite as: Not Reported in F.Supp.2d)**

violation of 42 U.S.C. § 1981, New York Executive Law § 296 *et seq.*, and the Administrative Code of the City of New York § 8-107 *et seq.*[FN1] On October 7, 2003, Plaintiff amended the complaint, adding claims of discrimination under 42 U.S.C. § 2000e *et seq* . (" Title VII" ) and allegations of constructive discharge. Defendants now move to partially dismiss the First Amended Complaint, asserting that: (1) all claims against Our Lady of Mercy Healthcare System, Inc. are subject to dismissal; (2) all of the Title VII claims as they relate to events occurring before June 30, 2002 are time-barred; and (3) Plaintiff's retaliation and constructive discharge claims fail as a matter of law. Defendants' motion was deemed fully submitted on November 11, 2003. For the reasons that follow, Defendants' motion is GRANTED IN PART and DENIED IN PART.

FN1. Courts " commonly analyze the sufficiency of [claims under section 1981] in the same manner as Title VII claims, reaching the same result." *Pagan v. New York State Div. of Parole,* 98 Civ. 5840, 2002 WL 398682, at *4-5 (S.D.N.Y. Mar.13, 2002) (citations omitted); *see also Hargett v. Nat'l Westminster Bank, U.S.A.,* 78 F.3d 836, 838 (2d Cir.1996). The standards used to analyze claims under Title VII, the Executive Law, and City Law are identical. *See Tomka v. Seiler Corp.,* 66 F.3d 1295, 1304 n. 4 (2d Cir.1995); *see also Kahn v. Objective Solutions, Int'l,* 86 F.Supp.2d 377, 382 (S.D.N.Y.2000).

## I. BACKGROUND

For purposes of this motion, the complaint's factual allegations are accepted as true and all inferences are drawn in Plaintiff's favor.

Plaintiff, an African-American mother, was employed by Our Lady of Mercy Medical Center and Our Lady of Mercy Healthcare System, Inc. for approximately ten years. (Dkt. No. 10: First Am. Compl. ¶ 7.) These entities are non-profit corporations that operate a hospital in the Bronx, New York. (*Id.* ¶ 8.) In July 1993, after receiving her Masters of Public Administration in Health Policy and Management from New York University, Plaintiff began working as an Administrative Resident with Defendants. (*Id.* ¶ 9.) In this position, Plaintiff reported directly to Gary Horan, the hospital's President and Chief Executive Officer. (*Id.* ¶ 11.) In 1994, Plaintiff was promoted to the position of Administrative Fellow and continued to report to Horan. (*Id.*) In July 1996, Plaintiff was again promoted to the position of Associate Administrator, reporting to Horan and the Chief Operating Officer. (*Id.* ¶ 13.) Plaintiff had administrative responsibility for seven departments, attended Board of Trustees' meetings and served on numerous hospital committees. (*Id.*) In 1999, Plaintiff won the prestigious Young Healthcare Administrator of the Year Award. (*Id.* ¶ 14.) In November 2000, Plaintiff left the hospital's employ on maternity leave. (*Id.* ¶¶ 15-16.)

In July 2001, Plaintiff returned from leave. (*Id.* ¶ 21.) Plaintiff alleges thereafter she was subjected to a pattern and practice of racial and gender discrimination in which she was repeatedly demoted in favor of white women without young children and in favor of white men, some of whom have young children. (*Id.* ¶¶ 10, 17, 21-22, 29.) Plaintiff also contends that Defendants stripped her of departmental responsibilities, removed her from her career track in Administration, and relegated her to an inferior nursing administration position. (*Id.* ¶¶ 17, 23, 28 .) Plaintiff was also assigned to work in inadequate workspaces. (*Id.* ¶ 25.)

***2** On March 24, 2003, Defendants received a letter from Plaintiff's attorney raising claims of race and gender discrimination. (*Id.* ¶ 30.) Plaintiff contends that after Defendants received this letter she was subjected to a number of alleged retaliatory actions, namely-her job responsibilities were limited, she was excluded from meetings, her working conditions were impaired, and Defendants generally made it more difficult for her to perform her job. (*Id.* ¶ 31.) As specific examples of adverse employment action, Plaintiff alleges that she was reassigned to a cramped office, she was criticized for the actions of a nurse she had previously hired, she was not consulted as to whom would be hired for a position she once occupied, and her computer usage was monitored. (*Id.* ¶ 31(a)-(e).)

On March 16, 2003, Plaintiff commenced this suit. On July 14, 2003, the Equal Employment Opportunity Commission (" EEOC" ) issued Plaintiff a right to sue letter, allowing her to file Title VII claims within ninety days. (*Id.* ¶ 4.) On October 7, 2003, with Defendants' motion to dismiss already submitted, Plaintiff amended her complaint to allege such claims.[FN2]

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d Page 4

Not Reported in F.Supp.2d, 2004 WL 503760 (S.D.N.Y.)

**(Cite as: Not Reported in F.Supp.2d)**

FN2. For this reason, the parties were granted the opportunity to supplement their initial motion papers.

II. DISCUSSION

A. Motion to Dismiss Standard

A court may dismiss a complaint for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of a claim which would warrant relief. *See* Conley v.. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In considering a motion to dismiss, the Court must take as true all the facts stated in the complaint and " draw all reasonable inferences in the plaintiff's favor." *Jackson Nat'l Life Ins. v. Merrill Lynch & Co.,* 32 F.3d 697, 700 (2d Cir.1995). As such, " a complaint should not be dismissed simply because a plaintiff is unlikely to succeed on the merits." *Baker v. Cuomo,* 58 F.3d 814, 818 (2d Cir.1995).

B. Claims Against Our Lady of Mercy Healthcare System, Inc.

[1] Plaintiff asserts claims of discrimination, retaliation, and constructive discharge against both Our Lady of Mercy Medical Center and Our Lady of Mercy Healthcare System, Inc. (First Am. Compl. Introductory Paragraph.) Defendants move to dismiss all claims asserted against Our Lady of Mercy Healthcare System on the grounds that Plaintiff has failed to assert that it was her employer and that it played a role in the alleged discriminatory and retaliatory acts. Perhaps not artfully pled, the complaint's introductory paragraph refers to both Our Lady of Mercy Medical Center and Our Lady of Mercy Healthcare System, Inc. as " OLM." Therefore, the factual allegations throughout the complaint refer to both entities.

Accepting the facts in the complaint as true, Plaintiff has sufficiently alleged that Our Lady of Mercy Healthcare System was her employer and that its acts constituted discrimination, retaliation and constructive discharge. Our Lady of Mercy Healthcare System has therefore received fair notice of these claims. *See* *Swierkiewicz v. Sorema, N.A.,* 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). Defendants' motion to dismiss all claims asserted against Our Lady of Mercy Healthcare System, Inc. is denied.

C. Title VII Claims Based on Acts Occurring from January 2001 through November 2001

***3** [2] Plaintiff has alleged violations of Title VII based on discrete discriminatory acts that allegedly occurred from January 2001 through November 2001. (First Am. Compl. ¶¶ 17-25.) The Complaint alleges that: (1) after Plaintiff took medical leave, Defendants assigned administration of the seven departments Plaintiff had previously supervised to five white employees; (2) after Plaintiff returned from leave she was relegated to performing secretarial work under the supervision of a white, childless woman; and (3) Plaintiff faced a series of significant demotions. (*Id.* ¶¶ 22-25.) Defendants contend that these claims are time-barred.

In New York, Title VII claims are time-barred if a plaintiff does not file a charge with the EEOC within three-hundred days of the alleged unlawful employment practice. *See* *Harris v. City of New York,* 186 F.3d 243, 247-48 (2d Cir.1999). Plaintiff alleges that she filed a charge of discrimination with the EEOC on or about April 25, 2003. (First Am. Compl. ¶ 4.) The operative date for determining the timeliness of her newly added Title VII claims is therefore June 30, 2002, three-hundred days before her EEOC filing. Any claims concerning alleged discriminatory acts occurring before June 30, 2002 would be untimely.

In an attempt to circumvent this bar, Plaintiff argues that the alleged discriminatory acts that occurred from January 2001 through November 2001 are part of Defendants' systematic discrimination against minority employees and women with children. As such, Plaintiff asserts that the continuing violation doctrine allows her Title VII claims to proceed.

The continuing violation theory may be invoked if Plaintiff provides " proof of specific or ongoing policies or practices or ... specific and related instances of discrimination [which] are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice." *Cornwall v. Robinson,* 23 F.3d 694, 704 (2d Cir.1994). If a continuing violation is established, " all claims of discrimination under [the discriminatory policy] will be timely even if they would be untimely standing alone." *Lambert v. Genesee Hosp.,* 10 F.3d 46, 53 (2d Cir.1993). As " a general rule, courts in the Second Circuit have viewed continuing violation

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d Page 5

Not Reported in F.Supp.2d, 2004 WL 503760 (S.D.N.Y.)

**(Cite as: Not Reported in F.Supp.2d)**

arguments with disfavor." *Curtis v. Airborne Freight Corp.,* 87 F.Supp.2d 234, 244 (S.D.N.Y.2000).

Here, Plaintiff has failed to provide any facts that the alleged discriminatory acts predating June 30, 2002 amount to a discriminatory policy or practice. Instead, in wholly conclusory fashion, she asserts that these acts are not merely discrete, but rather based upon systematic discrimination against minority employees and child-rearing women. Plaintiff may not, however, convert discrete acts into a pattern or practice by merely invoking those words. *See, e.g., Blake v. Bronx Lebanon Hosp.,* No. 02 Civ. 3827, 2003 WL 21910867, at *5 (S.D.N.Y. Aug.11, 2003) (" A plaintiff does not properly allege an ongoing discriminatory policy simply by invoking the magic words ' pattern' or ' practice." ' ); *Gross v. NBC, Inc.,* 232 F.Supp.2d 58, 68 (S.D.N.Y.2002) ( " There is no indication that the term ' practice' as it is used in Title VII ' converts related discrete acts into a single unlawful practice for purposes of timely filing." ' ) (quoting *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 102, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002)).

***4** Moreover, the Supreme Court in *Morgan* cautioned that courts should not readily allow plaintiffs to allege pattern or practice claims based on a series of discriminatory acts. *See* 536 U.S. at 113. The Court stated,

Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire [each constitute] a separate actionable " unlawful employment practice." Discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete act starts a new clock for filing charges alleging that act.

*Id.* The actions on which Plaintiff premises her discrimination claims did not occur until October 2002, when Plaintiff was demoted. It may not be said that this event-occurring approximately a year after the discriminatory acts of January 2001 through November 2001-is part of a specific and systematic practice of discrimination. Rather, the discriminatory acts are discrete and each act started a new clock for filing charges. *See id.* Accordingly, Plaintiff's allegations concerning discrete events occurring from January 2001 through November 2001 are time-barred. Plaintiff's Title VII claims relating to acts or events occurring during this time-frame are therefore dismissed. [FN3]

FN3. Defendants request that the factual allegations contained in paragraphs 17-25 of the First Amended Complaint should be completely struck as time-barred. This request is denied because such factual allegations are timely to the extent that they relate to Plaintiff's claims under section 1981, the Executive Law, and the City Law. *See Wilson v. Fairchild Republic Co.,* 143 F.3d 733, 738 n. 5 (2d Cir.1998) (stating statute of limitations for federal civil rights cases is three years, including § 1981 claims); *Lambert,* 10 F.3d at 59 (claims brought under § 296 of the New York State Executive Law and § 8-107 of the New York City Administrative Code are subject to a three-year statute of limitations).

D. Retaliation

For Plaintiff to ultimately prevail on her retaliation claims, she must satisfy the burden-shifting framework established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). First, Plaintiff must present a *prima facie* case. To state a *prima facie* case, Plaintiff must prove the following four elements: (1) she was engaged in a protected activity; (2) Defendants were aware of her participation in this activity; (3) Defendants took adverse action against her; and (4) a causal connection existed between the protected activity and the adverse action. *See Cosgrove v. Sears, Roebuck & Co.,* 9 F.3d 1033, 1039 (2d Cir.1993). If Plaintiff shoulders this initial burden, the burden of production shifts to Defendants to introduce evidence of a legitimate, non-retaliatory justification for its action. *Id.* Finally, if Defendants meet their burden, Plaintiff then has the opportunity to prove that the alleged justification is merely a pretext for retaliation.

[3] Defendants argue that the defect in Plaintiff's claim is she cannot establish the third element of a prima facie case-that she suffered an adverse employment action following her alleged protected activity. Plaintiff counters that at this stage of the case she need not demonstrate that the actions taken against her were adverse. The parties' disagreement stems from their conflicting interpretation of the Supreme Court's recent decision in *Swierkiewicz v. Sorema, N.A.,* 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). Plaintiff's central argument is that, under *Swierkiewicz,* she must provide fair notice of her retaliation claim and no more; Defendants believe

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d Page 6

Not Reported in F.Supp.2d, 2004 WL 503760 (S.D.N.Y.)

**(Cite as: Not Reported in F.Supp.2d)**

that Plaintiff must provide both fair notice and plead minimal facts, but has failed to do so as to the adverse employment element.[FN4]

FN4. Plaintiff does assert that the acts asserted in the complaint nevertheless constitute adverse employment actions. This aspect of the motion is discussed below.

***5** In *Swierkiewicz,* a Hungarian national challenged his termination as an underwriter with a reinsurance company based on his race, in violation of Title VII, and on his age, in violation of the Age Discrimination in Employment Act. *See* Swierkiewicz, 534 U.S. at 508. Ruling on a motion to dismiss, the district court dismissed the case because the plaintiff had not adequately alleged a prima facie case, in that he had not adequately alleged circumstances that supported an inference of discrimination. *Id.* at 509. The Second Circuit affirmed the dismissal on the ground that plaintiff's allegations were insufficient as a matter of law to support an inference of discrimination under *McDonnell Douglas. See* Swierkiewicz v. Sorema, N.A., No. 00-9101, 2001 WL 246077, at *1 (2d Cir. Mar.12, 2001). The Supreme Court, in order to resolve a split among the circuits, granted certiorari to determine " whether a complaint in an employment discrimination lawsuit must contain specific facts establishing a prima facie case of discrimination." Swierkiewicz, 534 U.S. at 508. The Supreme Court answered in the negative and reversed the Second Circuit. The Court reasoned that a prima facie case under *McDonnell Douglas* is " an evidentiary standard" that " should not be transposed into a rigid pleading standard for discrimination cases." *Id.* at 510, 512. The Court therefore held that " an employment discrimination plaintiff need not plead a prima facie case of discrimination" so long as the complaint provides the defendant " fair notice of the basis for [the] claims." *Id.* at 514-15. However, the Court did not, as Plaintiff contends, stop there. The Court further stated that if a plaintiff satisfies the " fair notice" standard, a court must still determine whether " ' relief could be granted under any set of facts that could be proved consistent with the allegations." ' *Id.* at 514 (quoting Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)). Defendants are therefore correct in articulating the framework that the Court should apply to its motion, but incorrect as to the outcome: Plaintiff has sufficiently pled a claim of retaliation, and Defendant has failed to show that the aggregated acts of which Plaintiff complains do not amount to an adverse employment action as a matter of law.

[4] Plaintiff has provided Defendants with " fair notice" of her claim. Plaintiff alleged that her " attorney sent a letter to [defendants] by Federal Express, raising claims of race and sex (including pregnancy) discrimination" and that shortly after sending the letter, she experienced retaliation. (First Am. Compl. ¶ 30.) Plaintiff contends that the alleged retaliatory actions impaired her working conditions, limited her job responsibilities, subjected her to hostile work comments, resulted in her exclusion from meetings, and made it more difficult for her to perform her duties. (*Id.* ¶¶ 30-31.) Moreover, Plaintiff also asserted five specific allegedly retaliatory acts. (*Id.* ¶ 31(a)-(e).) Therefore, Plaintiff has done more than offer conclusory allegations of retaliation. *See* Fed.R.Civ.P. 8(a); *see also* Leeds v. Meltz, 85 F.3d 51, 53 (2d Cir.1996) (" While the pleading standard is a liberal one, bald assertions and conclusions of law will not suffice." ). Plaintiff has " ' give[n] the defendant[s] fair notice of what the plaintiff's claim is and the grounds upon which it rests." ' Swierkiewicz, 534 U.S. at 512 (quoting Conley, 355 U.S. at 47); *see also* Harrison v. New York City Admin. for Children's Servs., No. 02 Civ. 947, 2003 WL 22271219, at *5 (S.D.N.Y. Sept.30, 2003) (denying motion to dismiss because plaintiff provided fair notice of her race and gender discrimination claims under *Swierkiewicz* ). Plaintiff has properly pled her retaliation claim.

***6** The Court next must determine whether Plaintiff has stated claims of retaliation upon which relief might rest. As the Supreme Court reiterated in *Swierkiewicz,* " ' [A] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." ' Swierkiewicz, 534 U.S. at 514 (quoting Hishon, 467 U.S. at 73). The Supreme Court therefore held that the claims presented by the *Swierkiewicz* plaintiff could survive a motion to dismiss because the complaint provided " fair notice" *and* " state[d] claims upon which relief could be granted under Title VII." *Id.* at 515.

The Court declines to adopt the proposition that Plaintiff need only provide Defendants with fair notice of the retaliation claim. First, such a position would require the Court to overlook the plain language of *Swierkiewicz.* Second, doing so would all but eviscerate Rule 12(b) and its proviso that a complaint should be dismissed when a plaintiff fails "

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d Page 7

Not Reported in F.Supp.2d, 2004 WL 503760 (S.D.N.Y.)

**(Cite as: Not Reported in F.Supp.2d)**

to state a claim upon which relief could be granted." Fed.R.Civ.P. 12(b)(6). Finally, the consequences of such a position would be significant and adverse to the purpose of Title VII. Its purpose is to assure equality of employment opportunities, to eliminate discriminatory employment practices, and to prohibit retaliation against employee's engaged in certain protected activities. Requiring a plaintiff to plead those facts, which if accepted as true would entitle a litigant to legal relief, furthers this purpose. There is no doubt that " discrimination is odious but a frivolous or malicious charge of such conduct ... is at least equally obnoxious." *Carrion v. Yeshiva Univ.,* 535 F.2d 722, 728 (2d Cir.1976). Adopting the position Plaintiff advances would allow such cases to survive, at least until the summary judgment stage. Such a result, however, would be unjust to those plaintiffs who present meritorious claims, as it would strain federal dockets and would mean that years would pass before an aggrieved employee could present his claim in court. *See Cicero v. Borg-Warner Automotive, Inc.,* 163 F.Supp.2d 743, 758 (E.D.Mich.2001) (" Not only are frivolous suits wasteful, expensive and meddlesome to the immediate participants, they prevent plausible discrimination claims from being timely heard, and dissuade those who have actually been wronged from filing suit because of the inordinate length of time it would take to obtain a remedy." ). Therefore, Plaintiff's contention that *Swierkiewicz* prevents a court from analyzing the detailed factual allegations of retaliation is misplaced.

[5] The Second Circuit has stated that " no bright-line rules ... determine whether the challenged employment action reaches the level of [being] adverse." *Richardson v. New York State Dep't of Corr. Serv.,* 180 F.3d 426, 446 (2d Cir.1999). Moreover, " Title VII does not define adverse employment action solely in terms of job termination or reduced wages and benefits, and ... less flagrant reprisals by employers may indeed be adverse." *Id.* Even if none of the actions that a plaintiff alleges could individually be characterized as adverse, a series of actions taken against a plaintiff may, in the aggregate, constitute such conduct. *Fowler v. New York City Transit Auth.,* No. 96 Civ. 6796, 2001 WL 83228, at *7 (S.D.N.Y. Jan.31, 2001) (" [T]he accumulation of small reprisals may be aggregated so as to permit consideration of their impact in their totality and to support their being deemed sufficient to constitute adverse employment action sustaining a claim for retaliation for engaging in a protected activity." ); *see also Reiter v. Metro. Transit Auth.,* No. 01 Civ. 2762, 2002 WL 31190167, at *10 (S.D.N.Y. Sept. 30, 2002) (holding that " changes in ancillary job-related benefits and job responsibilities, when viewed as a whole rather than individually, may rise to the level of materially adverse actions." ) (citations omitted).

***7** Taken in the aggregate, the series of actions that Plaintiff alleges-loss of office space, interference with computer rights, diminished job responsibilities, and exclusion from meetings-may constitute adverse employment action. Accordingly, the Court concludes that Defendant has failed to show that Plaintiff cannot demonstrate any set of facts which would entitle her to relief.

E. Constructive Discharge

[6] Plaintiff also alleges claims of constructive discharge against Defendants. An employee is constructively discharged when an employer " deliberately [makes] his working conditions so intolerable that he [is] forced into an involuntary resignation." *Kirsch v. Fleet Street, Ltd.,* 148 F.3d 149, 161 (2d Cir.1998). To prove constructive discharge, Plaintiff must show that a reasonable person subjected to the working conditions which she experienced would have felt compelled to resign. *See Ongsiako v. City of New York,* 199 F.Supp.2d 180, 187 (S.D.N.Y.2002). In other words, Plaintiff must show that Defendants deliberately made her working condition so intolerable that she was forced into an involuntary resignation. *See, e.g., Sinopoli v. Regula,* No. 97-7229, 1997 WL 624987, at *2 (2d Cir. Oct.9, 1997). Whereas courts generally disfavor viewing allegedly discriminatory *practices* in an aggregated matter when claims related to such practices would otherwise be *untimely* (see Section II.C.), courts take a different view as to allegedly *adverse employment actions* that are *timely.* The Second Circuit has stated that although " certain factors, standing alone, [may be] legally sufficient to support constructive discharge" a constructive discharge claim may nonetheless proceed given that " the effect of a number of adverse conditions in the workplace is cumulative." *Chertkova v. Conn. Gen. Life Ins. Co.,* 92 F.3d 81, 90 (2d Cir.1996). Moreover, the Second Circuit has held that, " [b]ecause a reasonable person encounters life's circumstances cumulatively and not individually, it [is] error to treat the various conditions as separate and distinct rather than additive." *Id.*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Plaintiff alleges that not only has she been passed over for positions for which she was qualified, but also that she has been placed in inferior positions below her skill level. (First Am. Compl. ¶¶ 28-29.) Plaintiff further alleges, among others examples, that she was stripped of her substantive responsibilities, removed from her office, shunted to several inadequate work locations, and that Defendants generally engaged in actions that made it more difficult for her to work. (*Id.* ¶ 31.) A reasonable person could infer from these combined facts that Plaintiff " was not wanted as an employee and that [s]he was going to be forced our of" her employment. *Terry v. Ashcroft,* 336 F.3d 128, 152 (2d Cir.2003); *see also* *Chertkova,* 92 F.3d at 90 (" Certain factors, standing alone, are legally insufficient to support constructive discharge.... But, the effect of a number of adverse conditions in the workplace is cumulative." ) (citations omitted). Therefore, similar to the claims of retaliation, the aggregated allegations underlying Plaintiff's constructive discharge claim allow this claim to withstand a motion to dismiss.

III. CONCLUSION

***8** For the foregoing reasons, Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART as follows: (1) the motion to dismiss all allegations against Our Lady of Mercy Healthcare System, Inc. is denied; (2) Defendants' motion to dismiss the Title VII claims as they relate to acts that occurred from January 2001 through November 2001 is granted; (3) Defendants' motion to dismiss the retaliation claims is denied; and (4) the motion to dismiss the constructive discharge claim is denied.

The parties are directed to appear for a conference before the Court on August 13, 2004 at 9:30 a.m., at which time all discovery must be complete.

So Ordered:

S.D.N.Y.,2004.
Timothy v. Our Lady of Mercy Medical Center
Not Reported in F.Supp.2d, 2004 WL 503760 (S.D.N.Y.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.