Westlaw.

Not Reported in F.Supp.2d                                                                                                Page 1
Not Reported in F.Supp.2d, 2005 WL 2385844 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

C
Tucker v. Gonzales
S.D.N.Y.,2005.
Only the Westlaw citation is currently available.
United States District Court,S.D. New York.
Nathan TUCKER, et al., Plaintiffs,
v.
Alberto GONZALES, as Attorney General of the
United States, Defendant.
**No. 03CIV3106(LTS)(FM).**

Sept. 27, 2005.

Garvey Schubert Barer, By: Mario Aieta, New York, New York, for Plaintiffs.
Michael J. Garcia, United States Attorney for the Southern District of New York, By: Jeffrey Oestericher, New York, New York, for Defendant.

*OPINION AND ORDER*
SWAIN, J.
*1 Nathan Tucker, Paul Sutherland and Wilfred Baptiste (collectively " Plaintiffs" ),[FN1] all former and/or present Special Agents (" SAs" ) in the New York Field Office (" NYFO" ) of the Federal Bureau of Investigation (" FBI" ), bring this action against Alberto Gonzales (" Defendant" ),[FN2] who as Attorney General of the United States is responsible for the FBI, pursuant to Title VII of the Civil Rights Act (" Title VII" ), as amended, 42 U.S.C. § 2000e, *et seq.,* and the Civil Rights Act of 1991 (" Civil Rights Act" ), 42 U.S.C. § 1981(a). The Court has jurisdiction of this action pursuant to 42 U.S.C. § 2000e, *et seq.,* and 42 U.S.C. § 1981(a). Defendant moves pursuant to Rules 12(b)(6) and 56 of the Federal Rules of Civil Procedure for an Order dismissing the pattern or practice and disparate impact causes of action asserted in Plaintiffs' Amended Complaint. The Court treats the motion as one pursuant to Rule 12(b)(6). For the following reasons, Defendant's motion to dismiss Plaintiffs' pattern or practice and disparate impact claims is granted.

FN1. Claims asserted on behalf of Kendall Hobson (" Hobson" ) and Carlos Luquis (" Luquis" ) have been dismissed without prejudice. (Docket Entry No. 50.)

FN2. Alberto Gonzales, Attorney General of the United States, has been substituted as the party defendant pursuant to Fed.R.Civ.P. 25(d).

*BACKGROUND*

The facts of this action as alleged in Plaintiffs' Amended Complaint are taken as true for the purposes of this motion. Nathan Tucker (" Tucker" ), an African-American GS-13 SA, was employed in the FBI's NYFO from 1987 to March 2001, during which time he served on the Fugitive Task Force Squad. (Am.Compl.¶ 9a.) Paul Sutherland (" Sutherland" ) is an African-American GS-13 SA who has been employed with the FBI since 1989. (*Id.* ¶ 9b.) During his tenure, Sutherland has served on the Fugitive Task Force Squad, and has acted as a firearms instructor, a tactical instructor and a squad leader of the Special Weapons and Tactics (" SWAT" ) team. (*Id.*) Wilfred Baptiste (" Baptiste" ) began his employment with the FBI's NYFO in 1988. (*Id.* ¶ 9c.) Baptiste, an African-American GS-13 SA, served on the Fugitive Task Force Squad and was a member of the SWAT team until his transfer to the Long Island Resident Agency on December 4, 2000. (*Id.* ¶¶ 9c, 61.)

In October of 1999, the FBI promoted SA Mark Paridy (" Paridy" ) to the position of Supervisory Special Agent (" SSA" ) of the Fugitive Task Force Squad. (*Id.* ¶ 11.) At the time of Paridy's appointment, Tucker, Sutherland and Baptiste were each accomplished members of the Fugitive Task Force and were responsible for many high profile arrests. (*Id.* ¶ 12.) Tucker had worked on " the successful capture[s] of a FBI ' Top Ten' fugitive[ and] ... of a subject featured on the television show ' America's Most Wanted,' while Sutherland had helped capture a notorious gang enforcer and Baptiste had helped capture two serial killers. (*Id.* ¶¶ 13-14.) Additionally, Tucker and Baptiste " consistently received exceptional performance appraisal report ratings," and Sutherland received a superior rating. (*Id.* ¶ 12.)

However, despite Tucker's, Sutherland's and Baptiste's records of achievement, Paridy constantly scrutinized and belittled their work, harassed them because of their race and limited their ability to

Not Reported in F.Supp.2d    Page 2
Not Reported in F.Supp.2d, 2005 WL 2385844 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

attend training sessions. (*Id.* ¶¶ 19, 21.) In addition, Paridy sought to use his position of power to discriminate against the African-American and Hispanic members of the NYFO. For example, soon after his appointment, Paridy instituted an " Availability/Accountability Policy" which eliminated the 10:00 a.m. to 6:00 p.m. work shift favored by African-American SAs, but retained the 6:00 a.m. to 2:00 p.m. and 8:15 a.m. to 5:00 p.m. work shifts favored by Caucasian SAs. (*Id.* ¶ 15.) Paridy implemented the Availability/Accountability Policy in order " to interfere with [the African-American SAs'] investigations and make their personal lives more difficult and burdensome as means of racial harassment." (*Id.*)

**\*2** On April 25, 2000, SA Tucker filed an initial complaint against SSA Paridy with the FBI's Office of Equal Employment Opportunity Affairs (" EEO" ), alleging that Paridy had subjected him to disparate and prejudicial treatment. (Veronica Venture Decl. Ex. A.) After Tucker filed his EEO complaint, Paridy retaliated by dropping his performance rating from " exceptional" to " superior." (Am.Compl.¶ 28.) Paridy also temporarily assigned Tucker to the White Collar Crime Branch, where he was assigned duties usually left to junior agents. (*Id.* ¶ 29.) " At [that] time, Tucker was second in seniority on the Fugitive Task Force Squad." (*Id.*) Eventually, as a result of Tucker's unwillingness to drop his EEO Complaint, the FBI reassigned him to the Bank Robbery Squad. (*Id.* ¶ 33.) After his transfer, Tucker was unable to secure a supervisory position as a result of Paridy's low evaluations. (*Id.* ¶ 35.) Tucker finally decided to relocate " to the FBI's Baltimore Division because of the discrimination, hostile work environment and retaliation he had suffered" at the NYFO. (*Id.*)

SAs Sutherland and Baptiste were also victims of Paridy's discriminatory conduct at the NYFO. Paridy cancelled Sutherland's original vehicle equipment assignment, and replaced his vehicle with a less desirable model. (*Id.* ¶ 37.) After learning of Sutherland's situation, Coordinating Supervisory Special Agent David Stone and Assistant Special Agent in Charge James Sheehan overturned Paridy's decision. (*Id.*) Paridy further subjected Sutherland to discrimination by berating him in front of a New York City Police Department Officer after the arrest of a dangerous fugitive and by including unsubstantiated negative comments in the narrative section of his performance appraisal report. (*Id.* ¶¶ 44, 46.)

Paridy over-scrutinized Baptiste's written reports and communications in comparison to those of similarly situated Caucasian SAs, and limited his participation on the SWAT team. (*Id* . ¶¶ 50-51.) Although Baptiste was a senior agent on the Fugitive Task Force, Paridy treated him as if he were an inexperienced agent and constantly spoke to him in a condescending manner. (*Id.* ¶ 53.) Paridy also downgraded Baptiste's performance rating from " exceptional" to " superior," and omitted from the performance report Baptiste's accomplishments, while negatively characterizing his work. (*Id.* ¶ 49.) On December 4, 2000, Baptiste was transferred from the Fugitive Task Force to the Long Island Resident Agency. (*Id.* ¶ 61.) This transfer was based on an earlier misrepresentation by Paridy to Special Agent in Charge Robert Cordier. (*Id.*)

Plaintiffs filed a Complaint against Defendant on September 25, 2002, in the United States District Court for the District of Columbia, alleging a pattern of discrimination, harassment and retaliation by the FBI in violation of Title VII and the Civil Rights Act. (Jeffrey Oestericher Decl. Ex. A.) By Order dated March 12, 2003, District Court Judge Royce C. Lamberth dismissed Plaintiffs' Complaint without prejudice to re-filing in a proper venue. (*Id.* at Ex. B.)

**\*3** Plaintiffs filed their Complaint with this Court on May 2, 2003. Defendant thereafter moved for an Order (1) dismissing the Complaint insofar as claims were asserted on behalf of Hobson and Luquis for failure to exhaust administrative remedies pursuant to Rules 12(b)(6) and 56 of the Federal Rules of Civil Procedure; and (2) dismissing Plaintiffs' Complaint in its entirety for failure to comply with Rule 8 of the Federal Rules of Civil Procedure or, in the alternative, severing the claims of Hobson and Luquis pursuant to Rules 21 and 42(b) of the Federal Rules of Civil Procedure. In response to Defendant's motion, Plaintiffs filed an Amended Complaint on October 31, 2003, asserting five causes of action for alleged violations of Title VII and the Civil Rights Act: (1) hostile work environment, (2) pattern or practice discrimination, (3) disparate impact, (4) disparate treatment discrimination and (5) retaliation. The Court denied the motion to dismiss, without prejudice, in light of the amendment of the complaint.

On December 2, 2003, Defendant filed a renewed

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                    Page 3
Not Reported in F.Supp.2d, 2005 WL 2385844 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

motion to dismiss Plaintiffs' pattern or practice and disparate impact causes of action for failure to state a claim and failure to exhaust administrative remedies, pursuant to Rules 12(b)(6) and 56 of the Federal Rules of Civil Procedure. Because it is not necessary for the Court to look beyond the Amended Complaint to make a determination on this matter, the motion will be treated solely as one pursuant to Rule 12(b)(6). The claims of Plaintiffs Hobson and Luquis were dismissed on May 31, 2005, without prejudice.

*DISCUSSION*

In evaluating a motion to dismiss pursuant to Rule 12(b)(6), the Court must take as true the facts alleged in Plaintiffs' Amended Complaint and draw all reasonable inferences in their favor. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 164 (1993); *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.1994). Further, the Court must not dismiss a complaint " unless it appears beyond doubt that the plaintiff[s] can prove no set of facts in support of [their] claim[s] which would entitle [them] to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957).

*Pattern or Practice Claim*

Invoking the Supreme Court's decision in *Int'l Bhd. of Teamsters v. United States,* 431 U.S. 324 (1977) and subsequent circuit court decisions, Plaintiffs assert " pattern or practice" discrimination as one of the five causes of action identified in their Amended Complaint. In *Teamsters,* the Supreme Court sanctioned the use of statistical evidence to prove a *prima facie* case of widespread intentional discriminatory conduct. This burden is satisfied by proof " by a preponderance of the evidence that racial discrimination is the company's standard operating procedure [-] the regular rather than the unusual practice." *Id.* at 336. Absent the employer's showing in rebuttal that the statistical evidence is inaccurate or insignificant, such a *prima facie* case is sufficient to support the grant of injunctive relief to preclude future violations. *Id.* at 360-61.

*4 In addition, once a *prima facie* pattern or practice case has been established, individual members of the class of victims of the widespread discrimination have the benefit of a presumption of discrimination in proving their claims for individual relief such as back pay, front pay or compensatory damages. *Robinson v. Metro-North Commuter R.R. Co.,* 267 F.3d 147, 159 (2d Cir.2001). The class member will only need to show that he or she suffered an adverse employment decision and, therefore, was a likely victim of the systemic discrimination. *Teamsters,* 431 U.S. at 362; *Robinson,* 267 F.3d at 159. Unless an employer can then show that the adverse employment decision was based on lawful reasons, the class member is entitled to individual relief. *Robinson,* 267 F.3d at 160.

Defendants seek dismissal of Plaintiff's Second Cause of Action, arguing that the " pattern or practice" method of proof is unavailable in the context of private, non-class action suits. Defendant further contends that dismissal of the cause of action is appropriate because the Amended Complaint fails to allege facts sufficient to support a pattern or practice claim. The Court finds that dismissal of the separate " pattern or practice" claim is warranted.

The Supreme Court has not specifically addressed the issue of whether an individual plaintiff may maintain a Title VII claim on a pattern or practice basis. *Lowery v. Circuit City Stores, Inc.,* 158 F.3d 742, 761 (4th Cir.1998), *vacated on other grounds,* 527 U.S. 1031 (1999). The cases in which the Supreme Court has approved use of the pattern or practice method have, however, involved class claims. *See, e.g., Cooper v. Fed. Reserve Bank of Richmond,* 467 U.S. 867, 876 n. 9 (1984) (citing *Teamsters,* 431 U.S. at 358-60) (noting that the *Teamsters* framework applies in private, class action suits); *Lowery,* 158 F.3d at 760 (citing *Teamsters,* 431 U.S. at 357-60) (discussing the Supreme Court's implicit endorsement of the application of pattern or practice principles to private, class action suits in *Teamsters* ).

Plaintiffs rely principally on *Davis v. Califano,* 613 F.2d 957 (D.C.Cir.1979), and *Carmichael v. Birmingham Saw Works,* 738 F.2d 1126 (11th Cir.1984), in defending the propriety of their pattern or practice claim. The courts in those cases held that individual plaintiffs could prove their *prima facie* cases of disparate treatment through pattern or practice evidence. Other courts have held that private, non-class pattern or practice claims are inappropriate. *See, e.g., Lowery,* 158 F.3d at 760-61 (declining to allow individual plaintiffs to bring a pattern and practice claim); *Babrocky v. Jewel Food Co.,* 773 F.2d 857, 866 n .6 (7th Cir.1985) (recognizing that pattern or practice claims involve claims of class-wide discrimination). *But see Cox v. Am. Cast Iron Pipe Co.,* 784 F.2d 1546, 1559 (11th Cir.1986) (finding that individual plaintiffs may use the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d    Page 4
Not Reported in F.Supp.2d, 2005 WL 2385844 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

*Teamsters* method of proof after " establish [ing] ' that ... discrimination was the company's standard operating procedure" ' (citing *Teamsters,* 431 U.S. at 336)). Although the Second Circuit has not specifically addressed the issue of whether an individual can maintain a private, non-class pattern or practice claim, district courts within the circuit have suggested that they cannot. *See Blake v. Bronx Lebanon Hosp.,* No. 02 Civ. 3827(CBM), 2003 WL 21910867, at *5 (S.D.N.Y. Aug. 11, 2003) (doubting the propriety of a pattern or practice claim in a non-class action complaint); *Heap v. County of Schenectady,* 214 F.Supp.2d 263, 272 (N.D.N.Y.2002) (dismissing individual plaintiff's pattern or practice claim as improper); *Foster-Bey v. Henderson,* No. 3:98CV01097(EBB), 2000 WL 620331, at *1 n. 1 (D.Conn. Apr. 7, 2000) (" The Court is not convinced that a plaintiff may bring a ' pattern and practice' claim in a non-class action complaint." ); *Victory v. Hewlett-Packard Co.,* 34 F.Supp.2d 809, 821 (E.D.N.Y.1999) (concurring that a pattern or practice claim is limited to class actions); *In re W. Dist. Xerox Litig.,* 850 F.Supp. 1079, 1083 (W.D.N.Y.1994) (noting that pattern or practice claims generally occur in the context of class actions).

*5 It is not necessary for the Court to determine, in the current posture of this case, whether Plaintiffs may be able to use the statistical pattern or practice method of proving their claims. As previously noted, pattern or practice is merely a method of proving prohibited disparate treatment. Here, Plaintiffs' amended complaint already includes a cause of action for disparate treatment. (*See* Am. Compl., Fourth Cause of Action, " Disparate Treatment" .) None of the cases cited by the parties recognizes a cause of action for " pattern or practice" discrimination separate and distinct from a claim that an employer deliberately mistreated employees on racial or other prohibited grounds. The Second Cause of Action is thus, at best, duplicative, and will be dismissed without prejudice to the disparate treatment claim asserted in the Fourth Cause of Action.[FN3]

> FN3. Dismissal of the Second Cause of Action is warranted for the further reason that Plaintiffs have alleged no facts whatsoever that would support a claim of a widespread pattern or practice of discrimination in the FBI as a whole or in the NYFO specifically. Rather, their amended complaint merely brackets extensive allegations of wrongful conduct by one particular NYFO supervisor with general assertions of the existence of a pattern or practice of discrimination.

*Disparate Impact Claim*

The general introductory paragraphs of the Amended Complaint assert, among other things, that
the policies, practices and procedures of the NYFO, and those of the FBI generally, have operated to have a disparate impact on African-American and Hispanic Special Agents with regard to performance appraisal reports (' PAR's) [sic], the conduction [sic] of file reviews, the assignment of equipment, in-service and outside training opportunities, case assignments, duty assignments, availability and accountability practices, investigative support and awards, bonuses and other forms of official recognition.

(Am.Compl.¶ 4.) Plaintiffs reiterate this general assertion in paragraph 115 of the Amended Complaint in support of a Third Cause of Action for " Disparate Impact." As noted earlier, however, the intervening paragraphs of the Amended Complaint comprise a detailed series of accounts of disparate treatment of Plaintiffs by a particular New York Field Office supervisor.

Defendants argue that the Third Cause of Action should be dismissed because the Amended Complaint fails to identify any particular facially neutral policy that is alleged to have had a disparate impact on African-American and Hispanic SAs.

In order to establish a *prima facie* case of disparate impact, it is not enough for a plaintiff simply to allege that there is a " bottom line" racial imbalance in the workplace. *Connecticut v. Teal,* 457 U.S. 440, 450-51 (1982). Instead, a plaintiff must identify a facially neutral employment policy or practice of the employer that has a significant disparate impact on a protected class. *See Griggs v. Duke Power Co.,* 401 U.S. 424, 430-32 (1971); *Brown v. Coach Stores, Inc.,* 163 F.3d 706, 712 (2d Cir.1998); *Kulkarni v. City Univ. of New York,* No. 01 Civ. 10628(DLC), 2002 WL 1315596, at *1 (S.D.N.Y. June 14, 2002).

Plaintiffs failed to respond to Defendant's arguments concerning the Third Cause of Action. Having considered carefully the content of the Amended Complaint and the applicable law, the Court finds

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                         Page 5
Not Reported in F.Supp.2d, 2005 WL 2385844 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

that dismissal of the Third Cause of Action is warranted on account of Plaintiffs' failure to identify challenged policies and/or their allegedly disparate impact.

**\*6** In light of the foregoing conclusions regarding Plaintiffs' Second and Third Causes of Action, it is unnecessary for the Court to address Defendant's argument that the claims asserted in those Causes of Action should be dismissed for failure to exhaust administrative remedies.

## CONCLUSION

For the foregoing reasons, Defendant's motion pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the Second (" Pattern or Practice" ) and Third (" Disparate Impact" ) Causes of Action asserted in Plaintiffs' Amended Complaint is granted; *provided* that this dismissal is without prejudice to Plaintiffs' pursuit of the disparate treatment claims asserted in their Fourth Cause of Action.

The parties shall promptly meet with Judge Maas to discuss settlement and all outstanding pretrial matters. If the parties wish to proceed before Judge Maas for all purposes, they shall promptly so inform the undersigned and shall execute the requisite written consent form.

In light of the disposition of the pending motion to dismiss and the continued reference to Judge Maas for completion of pretrial matters, Plaintiffs' Motion to Expedite Proceedings to Trial (Docket Entry No. 51) is denied without prejudice.

SO ORDERED.


S.D.N.Y.,2005.
Tucker v. Gonzales
Not Reported in F.Supp.2d, 2005 WL 2385844 (S.D.N.Y.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.