UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
GERARD PLANT,                            :
                                         :          **MEMORANDUM AND ORDER**
                          Plaintiff,     :          **GRANTING DEFENDANT'S**
         -against-                       :          **MOTION FOR PARTIAL**
                                         :          **DISMISSAL OF THE**
DEUTSCHE BANK SECURITIES, INC.,          :          **COMPLAINT**
                                         :
                          Defendant.     :          07 Civ. 3498 (AKH)
------------------------------------------------------------- x

ALVIN K. HELLERSTEIN, U.S.D.J.:

            Plaintiff Gerard Plant ("Plant") complains of employment discrimination based on

age under the Age Discrimination in Employment Act ("ADEA") and New York State Human

Rights Law, alleging a series of discriminatory acts dating back to March 2001.  Defendant

Deutsche Bank Securities, Inc. ("Deutsche Bank") moves to dismiss as time-barred all of

Plaintiff's allegations, except for the allegation that his termination in January 2005 was

discriminatory.  For the reasons stated below, Defendant's motion is GRANTED.

## Background

            According to his complaint, Plant commenced employment with Deutsche Bank,

a securities, investment banking, and brokerage firm, on December 3, 1996.  Compl. ¶¶ 3, 7.  He

was discharged, at the age of 57, on January 19, 2005.  Compl. ¶ 5.  At all times during his

employment, he held the title of Vice President for Deutsche Bank, a supervisory and managerial

position in the firm.  Compl. ¶¶ 10, 11.  Until Deutsche Bank's allegedly discriminatory conduct

began, Plant supervised and managed Deutsche Bank's prime brokerage operations and customer

services.  Compl. ¶ 16.

            In March 2001, Plant's two direct supervisors asked him to attend a meeting,

which he attended.  Compl. ¶ 17.  The attendees discussed certain improvement plans for Plant's

areas of responsibility.  At some point during the meeting, however, Plant's age and years of experience in the industry were mentioned, prompting Plant's supervisors to express concern and dismay.  Compl. ¶¶ 18, 19.  Thereafter, Deutsche Bank excluded Plant from further involvement in future development and planning for the Bank's prime brokerage operations and customer services.  Compl. ¶¶ 20, 21.

In January 2002, one of Plant's direct supervisors notified Plant that his bonus for 2001 would be 50 percent less than the bonus Deutsche Bank paid him in 2000.  And in fact, Deutsche Bank paid Plant a bonus for 2001 that was reduced by over 50 percent as compared to the 2000 bonus.  Compl. ¶ 22.

In 2003, Deutsche Bank further curtailed Plant's job responsibilities.  In or about May 2003, the Bank transferred Plant's responsibilities for managing customer documentation functions, and one full-time employee reporting to Plant, to another group within the Bank.  The group receiving Plant's prior responsibilities and full-time employee was headed by a much younger employee.  Compl. ¶ 26.  Similarly, in or about September 2003, Deutsche Bank transferred Plant's responsibilities for prime broker documentation functions, and one full-time employee reporting to Plant, to another group within the Bank, which group was also headed by a much younger employee.  Compl. ¶ 27.

In March 2004, Deutsche Bank transferred most of Plant's remaining responsibilities away from him to other groups within the Bank, including groups headed by employees much younger than Plant.  Compl. ¶ 29.  After so many of Plant's job responsibilities had been eliminated, Plant's continued employment with the Bank was no longer tenable. Compl. ¶ 30.  Indeed, after March 2004, Plant's once broad authority had been reduced to

writing documentation relation to options commissions, an assignment that a recent college graduate with minimal experience assumed following Plant's termination.  Compl. ¶¶ 31, 34.

When Plant arrived at work on January 19, 2005, Deutsche Bank notified him that it had terminated his employment, and asked him to leave the premises.  Compl. ¶¶ 32, 33. Defendant informed him at that time, however, that his termination was not the result of unsatisfactory job performance.  Compl. ¶ 32.

Defendant terminated a number of other employees around the time of Plant's termination, including a disproportionate number of employees over 40 years of age.  Compl. ¶ 37.  Plant alleges that Deutsche Bank periodically conducts "reductions in force" in order to eliminate older employees and maintain a "youthful" work force.  Compl. ¶ 38.  In support of this claim, Plant alleges that Anshu Jain, a member of the Bank's senior management, has publicly espoused the Bank's age-discriminatory practices.  Disparaging any benefit of retaining older employees, Jain stated in an interview with the Wharton Journal News, "The whole 'grey hair premium' in this business is zero."  Jain also stated that "[m]y personal philosophy is that no matter how good an organization is, it has 5-10% of people that need to think about moving on. Replacing those people with bright talent coming out of business schools is just very value creating."  Compl. ¶ 39.

On June 20, 2007, Plant filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"), which issued a "right-to-sue" letter on January 29, 2007.  Plaintiff filed his complaint in this Court on May 2, 2007.  Deutsche Bank's motion for partial dismissal followed.

<u>**Discussion**</u>

**I.    Applicable Law**

An individual may not commence a claim under the ADEA until he has filed a charge alleging unlawful discrimination with the EEOC.  29 U.S.C. § 626(d).  A citizen of New York must file the charge "within 300 days after the alleged unlawful practice occurred, or within 30 days after receipt by the individual of notice of termination of proceedings under State law, whichever is earlier."  29 U.S.C. § 626(d)(2); <u>Tewksbury v. Ottaway Newspapers, Inc.</u>, 192 F.3d 322, 328–29 (2d Cir. 1999).  This requirement "functions as a statute of limitations in that discriminatory incidents not timely charged before the EEOC will be time-barred upon plaintiff's suit in the district court."  <u>Quinn v. Green Tree Credit Corp.</u>, 159 F.3d 759, 765 (2d Cir. 1998).  Claims arising under the New York State Human Rights Law are subject to a three-year statute of limitations.  <u>See</u> <u>id.</u> at 765.

For the purpose of determining whether a defendant's discriminatory conduct occurred within the statute of limitations period, the Supreme Court distinguishes between discrete acts of discrimination and continuing violations.  "A discrete act of discrimination is an act that in itself constitutes a separate actionable unlawful employment practice and that is temporally distinct."  <u>Ledbetter v. Goodyear Tire & Rubber Co.</u>, 127 S. Ct. 2162, 2175 (May 29, 2007) (internal quotations omitted).  "Discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges."  <u>National Railroad Passengers Corp. v. Morgan</u>, 536 U.S. 101, 113 (2002).  In this Circuit, discrete acts include "termination or resignation, job transfer, discontinuance of a job assignment, denial of a promotion or increased pay grade, or failure to compensate adequately."  <u>DeJesus v. Starr</u>

Technical Risks Agency, Inc., No. 03 Civ. 1298 (RJH), 2004 WL 2181403 (S.D.N.Y. 2004); see also Milani v. IBM, 322 F. Supp. 2d 434, 453 (S.D.N.Y. 2002) (same).

A continuing violation, by contrast, "typically comprises a succession of harassing acts, each of which may not be actionable on its own." Ledbetter, 127 S. Ct. at 2175 (describing hostile work environment claims). In such cases, the unlawful employment practice is permitting an employee to work in a discriminatory environment over a sustained period of time—"the actionable wrong is the environment, not the individual acts that, taken together, create the environment." Id.

The Second Circuit has recognized the application of the continuing violation doctrine in cases where plaintiffs could provide proof of specific or ongoing policies or practices of discrimination that caused their environment-based injuries. See Cornwell v. Robinson, 23 F.3d 694 (2d Cir. 1994). As "a general rule," however, "courts in the Second Circuit have viewed continuing violation arguments with disfavor." Curtis v. Airborne Freight Corp., 87 F. Supp. 2d 234, 244 (S.D.N.Y. 2000); DeJesus, 2004 WL 2181403 at *6 ("[T]he courts of this Circuit have generally been loath to apply [the doctrine] without a showing of compelling circumstances."). And to the extent that Second Circuit's "pattern or practice" brand of continuing violation doctrine survives Ledbetter and Morgan, it is not clear that a single plaintiff may bring such a claim. See Blake v. Bronx Lebanon Hosp. Ctr., No. 02 Civ. 3827 (CBM), 2003 WL 21910867 (S.D.N.Y. 2003) ("[T]he court doubts that a plaintiff can bring a 'pattern and practice" claim in a non-class action complaint.").

## II.    Analysis

Because Plant filed his EEOC charge on June 20, 2005, all ADEA claims that accrued before August 24, 2004 (300 days before Plant filed his EEOC charge), and all claims

arising under the New York State Human Rights Law that accrued before May 2, 2004 (three years before Plant filed his complaint in this Court), are time barred.

Plant agrees that "discrete claims" accruing before August 24, 2004 are time barred, but argues that his complaint does not assert "discrete claims" accruing before that date. Instead, he argues, the complaint establishes an actionable "continuing violation" of the ADEA, and accordingly, all claims of discrimination arising out of Deutsche Bank's ongoing policy of discrimination are timely. See Opp. Mem. 9–10 (citing Lambert v. Genesee Hosp., 10 F.3d 46, 53 (2d Cir. 1993); Quinn, supra). The question presented, therefore, is whether Plant's complaint pleads a continuing violation of the ADEA.

The discriminatory acts that Plant alleges are discrete, not continuous. He alleges that 1) Deutsche Bank reduced his bonus, Compl. ¶ 22; and 2) eliminated his job responsibilities, Compl. ¶¶ 20, 21, 26–31. The Bank's action to reduce Plant's bonus was clearly a discrete act under Ledbetter, which addressed the timeliness of plaintiff's disparate pay claims under Title VII. The bonus reduction, if motivated by discriminatory animus, was unlawful and actionable at the time it occurred, and thus cannot form part of a continuing violation claim. See Morgan, 536 U.S. at 113 ("Each discrete discriminatory act starts a new clock for filing charges alleging that act.").

Whether a series of employment actions that erode an employee's job responsibilities may constitute a "continuous violation" is not a question directly addressed by the Ledbetter or Morgan Court. The courts of this Circuit have found, however, that such actions are discrete, holding that job assignments, transfers, reorganizations, and the like are actionable, if at all, when they happen. See e.g., Gross v. NBC, 232 F. Supp. 2d 58, 68 (S.D.N.Y. 2002) ("The holding in Morgan is in accord with Second Circuit law which states that alleged failures

to compensate adequately, transfers, job assignments and promotions cannot form the basis for a continuing violation claim.").

I hold that a plaintiff cannot invoke the continuing violation doctrine by pleading that his employer gradually eliminated his job in series of small steps culminating in final termination. Plant has not alleged a hostile work environment claim. His invocation of the continuous violation doctrine does not identify the "violation" that is continuous. To the extent that Plant maintains that diminutions in job description constitute a long, continuing termination, his position conflicts with the Supreme Court's definition of "termination" as discrete and temporally distinct. Because a continuing violation theory premised on changes in job description is untenable under Ledbetter and Morgan, the continuing violation doctrine does not except Plant's claims from the 300-day EEOC charging period, or New York's three-year statute of limitations applicable to this case.

## Conclusion

For the foregoing reasons, defendant Deutsche Bank's motion for partial dismissal of the complaint is GRANTED insofar as plaintiff Plant may not recover for injuries arising out of events that occurred before August 24, 2004. However, to the extent pre-August 2004 information is useful to provide context and background, it may be offered, subject to the normal discipline provided by Fed. R. Evid. 401–03. See Morgan, 536 U.S. at 113. Plaintiff's request for leave to amend his complaint is DENIED as futile.

SO ORDERED.

Dated:      July __23__, 2007
           New York, New York

ALVIN K. HELLERSTEIN
United States District Judge